1 | Gayle I. Jenkins (SBN 168962)
gjenkins@winston.com
2 | **WINSTON & STRAWN LLP**
333 S. Grand Avenue
3 | Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
4 |

5 | Thomas M. Melsheimer (*pro hac vice*)
Steven H. Stodghill (*pro hac vice*)
Thomas B. Walsh, IV (*pro hac vice*)
6 | Rex A. Mann (*pro hac vice*)
tmelsheimer@winston.com
7 | sstodghill@winston.com
twalsh@winston.com
8 | rmann@winston.com
**WINSTON & STRAWN LLP**
9 | 2121 N. Pearl Street, Suite 900
Dallas, TX 75201
10 | Telephone: (214) 453-6500

11 | Attorneys for Defendant
COMERICA BANK
12 |

13 |                    **UNITED STATES DISTRICT COURT**
                   **CENTRAL DISTRICT OF CALIFORNIA**
14 |                        **WESTERN DISIVSION**

15 | *IN RE WOODBRIDGE*          | Case No. 2:18-cv-00103-DMG-MRW
*INVESTMENTS LITIGATION*  |
16 |                          | **DEFENDANT COMERICA BANK'S**
                          | **NOTICE OF MOTION AND MOTION**
17 |                          | **TO DISMISS PURSUANT TO FED. R.**
                          | **CIV. P. 12(b)(6) and 12(b)(1);**
18 |                          | **MEMORANDUM OF POINTS AND**
                          | **AUTHORITIES IN SUPPORT**
19 |
                          | [Filed concurrently with Request for
20 |                          | Judicial Notice; Declaration of Gayle I.
                          | Jenkins and [Proposed] Order]
21 |
                          | Hon.                Dolly M. Gee
22 |                          | Hearing Date:       January 24, 2020
                          | Time:               10:00 am
23 |                          | Place:              Courtroom 8C
                          | Complaint Filed:    September 19, 2019
24 |
25 |                          | <u>**REDACTED**</u>  **VERSION   OF   DOCUMENT**
                          | **PROPOSED TO BE FILED UNDER SEAL**
26 |
27 |
28 |

1   TO THE COURT, AND ALL PARTIES AND THEIR COUNSEL OF

2   RECORD:

3   PLEASE TAKE NOTICE that on January 24, 2020, at 10:00 am, or as soon

4   thereafter as the matter may be heard before the Honorable Dolly M. Gee in the United

5   States District Court for the Central District of California, First Street Courthouse,

6   located at 350 West 1st Street, Courtroom 8C, Los Angeles, California 90012,

7   Defendant Comerica Bank ("Comerica") will and hereby does move this Court,

8   pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), to dismiss this action

9   for failure to state a claim upon which relief can be granted.

10   This motion is based upon this Notice, Plaintiffs' Consolidated Class Action

11   Complaint, the Memorandum of Points and Authorities, the accompanying Request for

12   Judicial Notice and Declaration of Gayle I. Jenkins in Support of the Motion to Dismiss

13   filed concurrently herewith, the records on file with the Court, as well as any oral

14   argument the Court may permit at a hearing of this matter.

15   This motion is made following the conference of counsel of record pursuant to

16   Local Rule 7-3.

17   Dated: November 1, 2019                    Respectfully submitted,

18
                                               By:   *Gayle I. Jenkins*
19                                             **WINSTON & STRAWN LLP**
                                               Gayle I. Jenkins (SBN: 168962)
20                                             333 South Grand Avenue Suite 3800
                                               Los Angeles, CA 90071
21                                             Telephone: (213) 615-1700
                                               Email: gjenkins@winston.com
22
                                               Thomas M. Melsheimer (*pro hac vice*)
23                                             Thomas B. Walsh, IV (*pro hac vice*)
                                               Steven H. Stodghill (*pro  hac vice*)
24                                             Rex A. Mann (*pro hac vice*)
                                               2121 N. Pearl St. Suite 900
25                                             Dallas, TX 75201
                                               Telephone: (214) 453-6500
26                                             Email: tmelsheimer@winston.com
                                                         sstodghill@winston.com
27                                                       twalsh@winston.com
                                                         rmann@winston.com
28                                             *Counsel for Defendant Comerica Bank*

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................... 1

II. BACKGROUND ...................................................................................... 2

    A. Alleged Atypical Banking Procedures and "Red Flags" ....................... 3

    B. Plaintiffs Allege that Comerica Consistently Monitored the Accounts..... 3

    C. State and Federal Investigations of Shapiro and Woodbridge.................. 4

    D. Plaintiffs Allege That Comerica Failed to Report Suspicious Activity..... 5

    E. Plaintiffs Assert Four Claims Against Comerica....................................... 6

III. LEGAL STANDARD .............................................................................. 7

IV. ARGUMENT .......................................................................................... 7

    A. The Aiding and Abetting Claims (Counts 1 and 2) Should be
    Dismissed ................................................................................................ 7

        1. Plaintiffs Have Not Adequately Pled Actual Knowledge .............. 7

        2. "Red Flags" Are Not Sufficient to Plead Actual Knowledge........ 10

    B. The Negligence Claim Fails Because Comerica Owes No Duty to
    Plaintiffs ............................................................................................... 13

    C. Plaintiffs Fail to State a Claim for Violations of the California UCL ..... 15

        1. Casey Compels Dismissal of Plaintiffs' UCL Claim ................... 15

        2. Plaintiffs fail to allege Injuries Incurred "As a Result of"
        Comerica's Purportedly Unfair or Unlawful Conduct ................. 16

        3. The UCL Claim Lacks a Cognizable Legal Theory and there is
        an Insuperable Bar to Relief ......................................................... 19

    D. The BSA does not Provide a Private Right of Action and Preempts all
    State Law Claims to the Contrary .......................................................... 22

        1. There is No Private Cause of Action for Failing to File a SAR .... 23

        2. Plaintiffs' State Law Claims Are Preempted ............................... 24

i

1

E.      Plaintiffs Lack Standing ............................................................. 30

2

V.      CONCLUSION ............................................................................... 35

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.,*
  No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010),
  *aff'd*, 464 F. App'x 651 (9th Cir. 2011) .................................................................. 17

*In re Agape Litig.,*
  681 F. Supp. 2d 352 (E.D.N.Y. 2010) ..................................................................... 28

*In re AgriBioTech, Inc.,*
  319 B.R. 207 (D. Nev. 2004) ..................................................................................... 32

*AmSouth Bank v. Dale,*
  386 F.3d 763 (6th Cir. 2004) ..................................................................................... 23

*Arizona v. United States,*
  567 U.S. 387 (2012) ............................................................................................. 26, 27, 29

*Armstrong v. Consol. Pallet Leasing Inc.,*
  678 F. Supp. 2d 827 (N.D. Iowa 2009) ................................................................. 28

*ASARCO, LLC v. Union Pac. R. Co.,*
  765 F.3d 999 (9th Cir. 2014) ..................................................................................... 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................... 7, 13

*B.E.L.T., Inc. v. Wachovia Corp.,*
  403 F.3d 474 (7th Cir. 2005) ..................................................................................... 23

*Balistreri v. Pacifica Police Dept.,*
  901 F. 2d 696 (9th Cir. 1988) ..................................................................................... 22

*Barnett Bank of Marion Cty., N.A., v. Nelson,*
  517 U.S. 25 (1996) ......................................................................................................... 27

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................................... 7

*Bily v. Arthur Young & Co.,*
  3 Cal. 4th 370 (1992) .................................................................................................... 13

*Burrows v. Superior Court*,
  13 Cal. 3d 238 (1974) ......................................................................... 25

*Calvert v. Zions Bancorporation (In re Consolidated Meridian Funds)*,
  485 B.R. 604 (W.D. Wash. 2013) ...................................................... 32

*Caponio v. Boilermakers Local 549*,
  No. 16-CV-03919-VC, 2017 WL 1477133 (N.D. Cal. Apr. 25, 2017) ................. 26

*Carran v. Morgan*,
  No. 06-80608-CIV, 2007 WL 3520480 (S.D. Fla. 2007) ...................................... 24

*Carrico v. City & Cty. of San Francisco*,
  656 F.3d 1002 (9th Cir. 2011) ................................................................. 19

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal. App. 4th 1138 (2005) ........................................................ *passim*

*In re CBI Holding Co., Inc.*,
  529 F.3d 432 (2d Cir. 2008) .................................................................... 33

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
  438 F. Supp. 2d 1081 (N.D. Cal. 2005), *aff'd*, 263 F. Appx. 630 (9th
  Cir. 2008) ............................................................................................ 8

*Chazen v. Centennial Bank*,
  61 Cal. App. 4th 532 (1998) ........................................................... 11, 15

*Chicago Title Ins. Co. v. Superior Court*,
  174 Cal.App.3d 1142 (1985) ................................................................. 15

*Commerce Bank/Penn. v. First Union Nat'l Bank*,
  911 A.2d 133 (Pa. Super. Ct. 2006) ...................................................... 24

*Cotton v. PrivateBank & Tr. Co.*,
  235 F. Supp. 2d 809 (N.D. Ill. 2002) ............................................... 20, 21

*Daccache v. Quiros*,
  No. 16-21575-CIV, 2018 WL 2248409 (S.D. Fla. May 15, 2018) ......................... 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ............................................................ 7, 19

iv

*El Camino Res., Ltd. v. Huntington Nat'l Bank*,
722 F. Supp. 2d 875 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013) ................................................................................................................ 24

*In re Emoral, Inc.*,
740 F.3d 875 (3d Cir. 2014) .................................................................... 34

*Evans v. ZB, N.A.*,
779 F. App'x 443, 2019 WL 2577299 (9th Cir. June 24, 2019) ............ 11

*Fed. Sav. & Loan Ins. Corp. v. Musacchio*,
695 F. Supp. 1053 (N.D. Cal. 1988) ......................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*,
528 U.S. 167 (2000) ............................................................................... 19

*Geier v. Consol. Honda Motor Co., Inc.*,
529 U.S. 861 (2000) ............................................................................... 29

*Ghlachi v. U.S. Bank, N.A.*,
No. CV 14-6619 PSG (CWX), 2015 WL 12655411 (C.D. Cal. Apr. 29, 2015) ................................................................................................ 13

*Goonewardene v. ADP, LLC*,
6 Cal. 5th 817 (2019) ............................................................................. 13

*Grad v. Associated Bank N.A.*,
336 Wis.2d 474, 801 N.W.2d 349 (Wis. Ct. App. 2011) ....................... 24

*Grede v. Bank of N.Y. Mellon*,
598 F.3d 899 (7th Cir. 2010) ................................................................. 33

*Gregory v. Bank One Corp. Inc.*,
200 F. Supp. 2d 1000 (S.D. Ind. 2002) .................................................. 21

*Gutierrez v. Wells Fargo Bank, NA*,
704 F.3d 712 (9th Cir. 2012) ................................................................. 27

*Hall v. Sea World Entm't, Inc.*,
No. 3:15-CV-660-CAB-RBB, 2016 WL 4595948 (S.D. Cal. May 13, 2016) ..................................................................................................... 18

*Hall v. SeaWorld Entertainment, Inc.*,
747 F. App'x 449 (9th Cir. 2018) .................................................... 17, 18

*Hanninen v. Fedoravitch*,
  583 F. Supp. 2d 322 (D. Conn. 2008) ....................................................... 24

*Hawkins v. Kellogg Co.*,
  224 F. Supp. 3d 1002 (S.D. Cal. 2016) ............................................... 26, 27

*Hayes v. Wells Fargo Bank, N.A.*,
  No. 13CV1707 L BLM, 2014 WL 3014906 (S.D. Cal. July 3, 2014) ................... 26

*Heinert v. Bank of Am., N.A.*,
  No. 19-CV-6081L, 2019 WL 5287950 (W.D.N.Y. Oct. 18, 2019) ........................ 9

*Hennessy v. Infinity Ins. Co.*,
  358 F. Supp. 3d 1074 (C.D. Cal. 2019) ................................................... 22

*Henry v. Bank of Consol. Corp.*,
  No. C 09-628 CRB, 2010 WL 431969 (N.D. Cal. Feb. 2, 2010) ........................ 25

*Howard v. Superior Court*,
  2 Cal. App. 4th 745 (1992) .................................................................. 8

*Ileto v. Glock Inc.*,
  349 F.3d 1191 (9th Cir. 2003) ............................................................. 14

*Lamm v. State St. Bank & Tr.*,
  749 F.3d 938 (11th Cir. 2014) ............................................................... 9

*Lee v. Bankers Tr. Co.*,
  166 F.3d 540 (2d Cir. 1999) ....................................................... 20, 23, 26

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................. 9

*Logan v. JKV Real Estate Servs. (In re Bogdan)*,
  414 F.3d 507 (4th Cir. 2005) ........................................................... 33, 34

*Marchak v. JPMorgan Chase & Co.*,
  No. 15CV4297ILGMDG, 2016 WL 3911926 (E.D.N.Y. July 15, 2016) .................................................................................. 24

*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007) ........................................................................ 17

*Merritt v. Wells Fargo Bank, N.A.*,
No. SACV181960JVSJDEX, 2019 WL 1951608 (C.D. Cal. Mar. 15,
2019) ............................................................................................................ 14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013) ..................................................................... 27, 30

*Meyer v. One W. Bank, F.S.B.*,
91 F. Supp. 3d 1177 (C.D. Cal. 2015) ............................................................ 26

*Mitchell v. Brown*,
No. 2:14-CV-2993 MCE AC, 2015 WL 3993149 (E.D. Cal. June 30,
2015) ............................................................................................................ 22

*Old Canal Fin. Corp. v. Sarsenstone Corp. (In re Old Canal Fin. Corp.)*,
550 B.R. 519 (C.D. Cal. 2016) ...................................................................... 34

*Pietzak v. Microsoft Corp.*,
No. CV 15-5527-R, 2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ............... 19

*Puerto Rico v. Franklin California Tax-Free Trust*,
136 S.Ct. 1938 (2016) .................................................................................... 27

*Rosner v. Bank of China*,
No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008),
*aff'd*, 349 Fed. Appx. 637 (2d Cir. 2009) ......................................................... 9

*Sun 'n Sand, Inc. v. United California Bank*,
21 Cal.3d 671 (1978) ..................................................................................... 15

*Sanders v. Superior Court*,
27 Cal. App. 4th 832 (1994) ............................................................................. 8

*SEC v. Alpine Sec. Corp.*,
354 F. Supp. 3d 396 (S.D.N.Y. 2018) .............................................................. 6

*Segner v. Secs. Consol., Inc.*,
Civ. No. 10-01884, 2011 U.S. Dist. LEXIS 162817 (N.D. Tex. August
4, 2011) .......................................................................................................... 33

*In re SemCrude L.P.*
796 F.3d 310 (3d Cir. 2015) ........................................................................... 34

*Semi-Tech Litig., LLC v. Bankers Tr. Co.*,
   272 F.Supp.2d 319 (S.D.N.Y. 2003), *aff'd and* 450 F.3d 121, 123 (2d
   Cir. 2006) ................................................................................................... 33

*Sepehry-Fard v. MB Fin. Servs.*,
   No. 13-CV-02784-BLF, 2014 WL 2191994 (N.D. Cal. May 23, 2014) ................ 17

*Silvas v. E\*Trade Mortg. Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ................................................................... 27

*Smith v. Arthur Andersen LLP*,
   421 F.3d 989 (9th Cir. 2005) ..................................................................... 34

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
   49 Cal. App. 4th 472 (1st Dist. 1996) ................................................. 13, 14

*In re Southwest Supermarkets, L.L.C.*,
   315 B.R. 565 (Bankr. D. Ariz. 2004), *vacated in part on other
   grounds on reconsideration*, 376 B.R. 281 (Bankr. D. Ariz. 2007) ...................... 32

*Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*,
   No. 1:13 CV 2184, 2013 WL 6827945 (N.D. Ohio 2013) ................................... 28

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................... 7

*Standfacts Credit Servs. v. Experian Info. Sols., Inc.*,
   No. SACV04-0358DOCP JWX, 2006 WL 4941834 (C.D. Cal. Oct.
   12, 2006) ................................................................................................. 17

*Steinberg v. Kendig (In re Ben Franklin Retail Stores)*,
   225 B.R. 646 (Bankr. N.D. Ill. 1998) ........................................................ 33

*Stoutt v. Banco Popular de Puerto Rico*,
   158 F. Supp. 2d 167 (D. Puerto Rico 2001), *aff'd* 320 F.3d 26 (1st Cir.
   2003) ...................................................................................................... 28

*Trabulsi v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 817CV02088JLSSK, 2018 WL 6444897 (C.D. Cal. Nov. 16,
   2018) ...................................................................................................... 13

*Turner v. City and Cty. of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015) ..................................................................... 7

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
    233 Cal. App. 4th 1321 (2015) ................................................................. 16

*Union Bank of California v. Superior Court*,
    130 Cal. App. 4th 378 (2005) ................................................... 20, 21, 23

*Valley Bank of Nevada v. Superior Court*,
    15 Cal. 3d. 652 (1975) ............................................................................ 24

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
    No. 19-CV-02778-TSH, 2019 WL 3503109 (N.D. Cal. Aug. 1, 2019) ................. 24

*Weil v. Long Island Sav. Bank*,
    195 F. Supp. 2d 383 (E.D.N.Y. 2001) ...................................................... 21

*Wells Fargo Bank of Tex., N.A. v. James*,
    321 F.3d 488 (5th Cir. 2003) ................................................................... 27

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................... 7

*Williams v. California 1st Bank*,
    859 F.2d 664 (9th Cir. 1988) ................................................................... 34

*In re Woodbridge Group of Cos., LLC*,
    No. 17-12560 (KJC) (Bankr. D. Del. Aug. 22, 2018) ................................ 30

*Zazzali v. Eide Bailly LLP*,
    No. 1:12-CV-349-S-MJP, 2013 WL 6045978 (D. Ida. Nov. 14, 2013) ................ 32

*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (D. Del. 2012) ..................................................................... 33

*Zeppeiro v. Green Tree Servicing, LLC*,
    No. CV1401336MMMJCX, 2015 WL 12660398 (C.D. Cal. Apr. 15,
    2015), *aff'd*, 679 F. App'x 592 (9th Cir. 2017) ...................................... 18

*In re ZZZZ Best Securities Litig.*,
    No. CV 87-3574 RSWL, 1990 WL 132715 (C.D. Cal. July 23, 1990) ................ 8

**Statutes**

31 U.S.C. 5318(g) ............................................................................... 20, 25

31 U.S.C. § 5318(g) ................................................................................. 23

31 U.S.C. § 5318(g)(2)(A) ...................................................................... 22

31 U.S.C. § 5318(g)(3) ........................................................................... 28

31 U.S.C. § 5318(g)(3)(A) ................................................................ 25, 28

Cal. Bus. & Prof. Code § 17200 ............................................................... 6

Cal. Bus. & Prof. Code § 17204 ............................................................. 16

**Other Authorities**

12 C.F.R. § 21.11(k) ................................................................................ 23

12 C.F.R. § 208.62(c) ............................................................................... 6

12 C.F.R. § 208.62(j) .......................................................................... 20, 21

Fed. R. Bankr. § 541(a)(ii) ...................................................................... 30

Fed. R. Bankr. § 541(a)(iii) ..................................................................... 30

Fed. R. Civ. P. § 9(b) ............................................................................... 9

Fed. R. Civ. P. § 12(b)(1) .......................................................................... 7

Fed. R. Cvi. P. § 12(b)(6) ..................................................................... 1, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' Consolidated Class Action Complaint (the "Consol. Complaint")[1] should be dismissed. To properly plead aiding and abetting of fraud and breach of fiduciary duty (Counts 1 and 2), California law requires Plaintiffs to allege facts that, if proven, evidence that the defendant had actual knowledge of the fraud and breach of fiduciary duty at issue. Plaintiffs' Consolidated Complaint falls short of this requirement because it relies on allegations that Comerica investigated various Woodbridge account transactions—also characterized as "red flags" or atypical banking procedures—from which Comerica purportedly "knew" that Robert Shapiro ("Shapiro") and the Woodbridge entities he operated were running a Ponzi scheme. But such allegations are insufficient to plead aiding and abetting claims. Rather, California law is clear that there must be factual allegations of actual knowledge of the specific fraud or breach; nothing short of actual knowledge is sufficient.

Instead of pleading factual allegations of actual knowledge, Plaintiffs' allegations do exactly the opposite. Plaintiffs repeatedly allege that Comerica employees reviewed the flagged activity and determined it was not suspicious. Thus, Plaintiffs' specific factual allegations, which are assumed to be true at the Rule 12(b)(6) stage, compel the conclusion that Comerica did ***not*** have actual knowledge.

A close reading of Plaintiffs' allegations reveals that they all sound in negligence—*i.e.*, arguing what a party "should have" done is the hallmark of negligence—and Plaintiffs' genuine allegation is that Comerica "should have known" Woodbridge was a Ponzi scheme and done something about it. However, Plaintiffs' negligence claim (Count 3) is fatally flawed because Comerica does not owe a duty of care to non-customers such as Plaintiffs under California law. In the absence of such a duty owed by Comerica to Plaintiffs, Plaintiffs' negligence claim also fails.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Consolidated Complaint.

Without a viable aiding and abetting or negligence claim, Plaintiffs also attempt to assert one last claim under the California UCL as a "catch-all." (Count 4). But a UCL claim cannot be asserted against a bank when there was no actual knowledge of the fraud and no duty owed to the Plaintiffs, as is the case here.

In addition, all of Plaintiffs' claims are based on the allegation that Comerica should have reported suspicious activity to the appropriate authorities, and that the failure to do so caused them harm. However, Comerica is expressly prohibited from revealing whether or not it filed a Suspicious Activity Report (SAR) under federal law. Federal law also provides (1) that no private right of action can be asserted for failing to file a SAR, and (2) a "safe harbor" protecting Comerica from liability for reporting, or failing to report, the filing of a SAR (which it cannot disclose either way pursuant to federal law). For these reasons, federal law preempts Plaintiffs' state law claims.

Finally, Plaintiffs lack standing to assert the causes of action in the Consolidated Complaint. The Liquidation Trust has exclusive standing to prosecute all of the causes of action in the Consolidated Complaint, not Plaintiffs. Given that the Liquidation Trust has commenced more than 100 actions in the Delaware Bankruptcy Court, any action commenced by the only appropriate party with standing (the trustee), should be in that forum.

## II.   BACKGROUND

Plaintiffs' claims arise out of a Ponzi scheme that Shapiro orchestrated through various Woodbridge entities. Plaintiffs allege that Investors who were victimized by Shapiro invested funds without any knowledge or indication that "Woodbridge was not a legitimate investment concern" until Woodbridge declared for bankruptcy in December 2017. (Consol. Compl. ¶¶ 9-21.) Soon after the bankruptcy filing, there were multiple class actions filed against Comerica, which were ultimately consolidated in this Court and then stayed. [*See* Dkt. Nos. 31 and 52.] After the stay was lifted, Plaintiffs filed their Consolidated Complaint on September 19, 2019, but not until after "Plaintiffs received access to documents produced by Comerica in the Woodbridge

bankruptcy proceeding through a Rule 2004 Examination." (Consol. Compl. fn. 1.)

## A.   Alleged Atypical Banking Procedures and "Red Flags"

The gravamen of Plaintiffs' claims is that Comerica was aware of numerous atypical banking procedures or "red flags" relating to Shapiro and the Woodbridge entities and that Comerica therefore "knew" about the Ponzi scheme but did nothing to stop it. Plaintiffs allege that Comerica has "a range of sophisticated investigative and monitoring tools to monitor and detect indicia of fraud, illegal transactions, and other suspicious activities." (Consol. Compl. ¶ 118.) According to the Consolidated Complaint, Comerica also relied on several investigative database sources to investigate and research bank customers, and used other banking systems that flagged the activity described in the Consolidated Complaint. (*Id.* at ¶¶ 131, 136-138.)

Plaintiffs further allege that "Woodbridge's banking activity triggered *hundreds* of internal alerts on [Comerica's] sophisticated monitoring systems warning Comerica of suspicious activity in Woodbridge accounts" (Consol. Compl. ¶ 4, emphasis in original) and dedicate roughly 40 paragraphs to describing such activities. (*Id.* at ¶¶ 142-82.)

Plaintiffs also allege that other red flags existed separate from those that triggered Comerica's alert systems, such as Shapiro being the sole signatory for Woodbridge accounts and Shapiro insisting on hand-signing every check. (Consol. Compl. ¶ 108.)

## B.   Plaintiffs Allege that Comerica Consistently Monitored the Accounts

The Consolidated Complaint alleges that, while Comerica monitored the Woodbridge accounts and Shapiro's activities, Comerica determined that the activity was for business purposes or not otherwise suspicious. For example, Comerica employees determined that:

- ███████████████████████████████████████
  ████████████████ (Consol. Compl. ¶ 145.)



(Consol. Compl. ¶ 149.)

(Consol. Compl. ¶ 163.)

Accordingly, the Consolidated Complaint affirmatively alleges facts demonstrating that Comerica duly investigated the activity and did not have actual knowledge of the Ponzi scheme being orchestrated by Shapiro. Nowhere in the Consolidated Complaint is there any allegation to the contrary.[2]

Where Plaintiffs do allege purported "knowledge" by Comerica of the fraud or breach, in those few instances Plaintiffs simply make a conclusory allegation that Comerica "knew" of the fraud within the elements of their claims for relief in Counts 1-4. *See, e.g.,* ¶ 244 (summarily alleging in Count 1 for aiding and abetting fraud that Comerica "knew that Shapiro and Woodbridge perpetrated fraud on investors, including Plaintiffs and the class.").[3] However, critically, nowhere does the Consolidated Complaint allege any *factual allegations* of actual knowledge by Comerica of Shapiro's Ponzi scheme.

## C. State and Federal Investigations of Shapiro and Woodbridge

Plaintiffs allege that various state and federal regulators investigated Shapiro

---

[2] *See, e.g.,* Consol. Compl. ¶ 148 ; ¶ 150 ; ¶ 152 ; ¶ 157 ; ¶ 161 ; ¶ 164 ; ¶ 166 ; ¶ 168 ; ¶ 170 ; ¶ 176 ; and ¶ 179 .

[3] *See, e.g.,* Consol. Compl. ¶¶ 8, 143, 209, 229, 231, 244, 245, 246, 254, and 267 for similar conclusory allegations.

and Woodbridge during the time Woodbridge through Shapiro was banking at Comerica—or had instituted proceedings in some instances—and Comerica had knowledge of these investigations and proceedings. But those facts still fail to constitute allegations that those investigations caused Comerica to have actual knowledge of a Ponzi scheme.

For example, Plaintiffs allege that "on September 29, 2017, just days after Comerica received an SEC bulletin regarding a subpoena enforcement action against Woodbridge, Comerica personnel—including two vice presidents of AML compliance—emailed about negative news articles concerning Woodbridge." (Consol. Compl. ¶ 70.) Notwithstanding that Plaintiffs have misidentified what is being discussed, the Consolidated Complaint alleges that a Comerica employee concluded that "I do not think the news feeds provide us with enough evidence to confirm that our customer is involved in a criminal enterprise." (*Id.*) Similar allegations are made with respect to ████████████████████████████████████. A Comerica analyst concluded that ████████████████████████████████ ███████████████ and another analyst concluded that ████████████████ ████████████████████████████████ (Consol. Compl. ¶ 152.) Thus, none of the alleged facts in the Consolidated Complaint demonstrate actual knowledge by Comerica of a Ponzi scheme.

### D.    Plaintiffs Allege That Comerica Failed to Report Suspicious Activity

Plaintiffs also allege that Comerica failed to fully investigate and report the activity to the appropriate authorities. (Consol. Compl. ¶¶ 142, 229, 268.) Plaintiffs' Consolidated Complaint details at length the various laws and regulations governing banks, including the Bank Secrecy Act (BSA), and that "Comerica had to . . . report [Woodbridge's] anomalous or suspicious behavior to the government." (Consol. Compl. ¶¶ 34-44, 72.) According to Plaintiffs, Shapiro's activities therefore implicated the BSA and Comerica should have reported Woodbridge's behavior to the

1    government. (*E.g.*, Consol. Compl. ¶¶ 36-44, 58-183, 266-270.)[4]

2         **E.     Plaintiffs Assert Four Claims Against Comerica**

3         There are four claims for relief asserted against Comerica. The first is aiding and

4    abetting fraud. The Consolidated Complaint alleges in conclusory fashion that

5    Comerica "knew that Shapiro and Woodbridge perpetrated fraud on investors"

6    (Consol. Compl. ¶ 244), and that Comerica "knowingly and substantially assisted

7    Shapiro and Woodbridge in unlawfully defrauding Plaintiffs and the class." (*Id.* at ¶

8    245.)

9         The second claim is aiding and abetting breach of fiduciary duty. Plaintiffs

10   summarily conclude that Comerica "knew that Woodbridge and Shapiro owed

11   fiduciary duties to investors", and "substantially assisted Shapiro's breaches of

12   fiduciary duty with knowledge that Shapiro was breaching those duties." (Consol.

13   Compl. ¶¶ 253-254.)

14        The third claim is negligence. The Consolidated Complaint asserts that

15   Comerica "owed a duty to Plaintiffs and class members to take reasonable care with

16   regard to the maintenance and use of investor funds on deposit at Comerica." (Consol.

17   Compl. ¶ 259.)

18        Lastly, the fourth claim alleges violations of the Unfair Competition Law (UCL),

19   Cal. Bus. & Prof. Code § 17200 *et seq.* This claim is premised on violations of

20   "applicable Bank Secrecy Act and anti-money laundering regulations" (Consol.

21   Compl. ¶ 266), that Comerica allegedly failed to take "appropriate and necessary steps

22

23   ─────────────────

     [4] The BSA's major reporting requirement is a SAR. *See SEC v. Alpine Sec. Corp.*, 354

24   F. Supp. 3d 396, 405 (S.D.N.Y. 2018). Under the regulations promulgated by the

     Federal Reserve Board (FRB), a member bank is obligated to file a SAR, for example,

25   whenever it has a reasonable suspicion that the subjects of the SAR have engaged in

     activities that may constitute violation of criminal law involving insider abuse,

26   violations aggregating $5,000 or more when a suspect can be identified, and

     transactions aggregating $5,000 or more that involve potential money laundering or

27   that violate the BSA. 12 C.F.R. § 208.62(c).

28

to protect investors," including failing to "immediately report the suspicious account transactions and other atypical activities associated with Woodbridge's Comerica accounts." (*Id.* at ¶ 268.)

## III.   LEGAL STANDARD

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). The Court need not accept as true allegations that contradict documents cited in the complaint or matters subject to judicial notice, or allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Issues of standing pertain to a federal court's subject-matter jurisdiction under Article III, and are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Without standing, a litigant cannot "maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

## IV.   ARGUMENT

### A.   The Aiding and Abetting Claims (Counts 1 and 2) Should be Dismissed

#### 1.   Plaintiffs Have Not Adequately Pled Actual Knowledge

Plaintiffs' aiding and abetting claims both should be dismissed for failure to state a claim. Under California law, "[l]iability may . . . be imposed on one who aids and

abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) (quoting *Sanders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994)). Plaintiffs' claims fail under prong (a) because the Consolidated Complaint lacks any factual allegations that Comerica had actual knowledge. To the contrary, the Consolidated Complaint evidences that Comerica had no actual knowledge of Shapiro's fraud. As to prong (b), Plaintiffs' claims fail because Comerica owed no duty to Plaintiffs.

Under the first prong of California's standard for aiding and abetting (prong (a)), "[k]nowledge is the crucial element," and Plaintiffs have failed to plead adequate facts to show actual knowledge. *See Casey*, 127 Cal. App. 4th at 1145. A "general allegation [that] banks knew the [bad actors] were involved in 'wrongful or illegal conduct' does not constitute sufficient pleading that the banks had actual knowledge the [bad actors] were misappropriating funds from [plaintiff]." *Casey*, 127 Cal. App. 4th at 1152. Significantly, allegations that the defendant banks violated "banking regulations" or their "own internal policies and procedures" was insufficient to plead actual knowledge in *Casey*. *Id.* at 1142. Pleading and proving the actual knowledge element is very difficult, given that it "necessarily requires a defendant to reach a *conscious* decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992) (emphasis added); *see Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1086 (N.D. Cal. 2005) (rejecting allegations of "atypical banking procedures" as insufficient for actual knowledge, as a plaintiff "cannot rely on inferences drawn from sloppy work by [the bank].")*, aff'd*, 263 F. Appx. 630 (9th Cir. 2008); *In re ZZZZ Best Securities Litig.*, No. CV 87-3574 RSWL, 1990 WL 132715, at *24 (C.D. Cal.

July 23, 1990) (holding in a related context that "[t]hese paragraphs, at most, allege that the defendant was reckless in overlooking 'red flags' and suspicious circumstances,'" and "these allegations do not support an argument that Freshman had actual knowledge of the fraudulent nature of the other defendants' representations").

Similarly, in cases involving so-called "red flags," numerous courts in other jurisdictions have determined that "red flags" alone are insufficient to allege actual knowledge for an aiding and abetting claim. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014) (recognizing it is not sufficient to allege that "a bank disregarded 'red flags' such as 'atypical activities' on a customer's account"); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) ("actual knowledge is required to impose liability on an aider and abettor"); *Heinert v. Bank of Am., N.A.*, No. 19-CV-6081L, 2019 WL 5287950, at *3 (W.D.N.Y. Oct. 18, 2019) (recognizing that "a bank's negligent failure to identify warning signs of fraudulent activity, such as atypical transactions – even where such signs converge to form a veritable 'forest of red flags' – is insufficient to impute actual knowledge of ongoing fraud"); *Daccache v. Quiros*, No. 16-21575-CIV, 2018 WL 2248409, at *12 (S.D. Fla. May 15, 2018) (holding that the "commingling of . . . funds and transfers" are "red flags," and "[r]ed flags do not amount to actual knowledge"); *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008) (stating that "red flags" or knowledge of "atypical activities" do not establish awareness of wrongdoing absent independent duty), *aff'd*, 349 Fed. Appx. 637, 639 (2d Cir. 2009) (a complaint cannot be maintained based on allegations that a bank "should have known" of its customer's misdeeds).

Because Plaintiffs' aiding and abetting claims constitute allegations of fraud, the strict pleading requirements of Federal Rule of Civil Procedure 9(b) apply, and Plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See also, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1058 (N.D. Cal. 1988) ("Generally, [Rule 9(b)] does not extend to allegations of breach of duty. However, when the conduct underlying the breach of

fiduciary duty is also alleged to constitute fraud, the requirement does apply."). Because Plaintiffs' aiding and abetting claims rest solely on allegations of knowledge of banking activity that the Consolidated Complaint explicitly acknowledges was reviewed and deemed not to be indicia of suspicious activity, and case law consistently confirms that knowledge of red flags alone does not constitute "actual knowledge" of wrongdoing by the bad actor, Plaintiffs have not pled the necessary element of actual knowledge.

### 2.     "Red Flags" Are Not Sufficient to Plead Actual Knowledge

The atypical banking activities and red flags alleged in the Consolidated Complaint are insufficient as a matter of law to plead that Comerica had actual knowledge of the Ponzi scheme or fraud by Shapiro or Woodbridge. The core of the entire Consolidated Complaint is that Comerica was alerted to mere atypical banking activities or red flags—and purportedly failed to report such activity. The Consolidated Complaint heavily relies on the existence of "red flags," using the term no less than fifteen times. (*See* Consol. Compl. ¶¶ 43, 78, 88, 92, 96, 101, 110, 115, 139, 145, 240, 245, and 259.) However, the courts in *Casey*, *Chance World Trading*, and many others make clear that these allegations are not sufficient to allege the crucial element of actual knowledge by Comerica of the underlying wrong (either fraud or breach of fiduciary duty).

In *Casey*, the plaintiff alleged, among other things, that various banks aided and abetted a sham company's fraudulent scheme by:

allowing them to open accounts with invalid tax identification numbers, which accounts were then used to drain funds from the Estate to the accounts of individual directors, officers, their families and affiliated companies; allowing large sums of cash, often in excess of $250,000 at a time and aggregating some $6 million, to be removed from [the banks'] cash vaults (in unmarked duffel bags); violating banking regulations and the [banks'] own internal policies and procedures; allowing obviously

forged negotiable instruments to be paid; and, ignoring monetary restrictions ('not to exceed' limits) appearing on the face of individual checks by paying sums in excess of such limits.

*Casey*, 127 Cal. App. 4th at 1142. Like here, the *Casey* complaint also included conclusory allegations that "[t]he banks knew the DFJ Fiduciaries were 'involved in a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money.'" *Id.* at 1149.

The opinion in *Casey* confirms at least two legal principles that are highly relevant here: (1) it is not sufficient for the plaintiff to "essentially allege[] the banks knew *something* fishy was going on," *id.* at 1149 (emphasis in original), and (2) the plaintiff in an aiding and abetting claim must plead facts showing the defendant "had ***actual knowledge of the primary violation*** in which [it] purportedly participated"—as opposed to actual knowledge of suspicious or even improper conduct. *Id.* at 1148 (emphasis added). The court in *Casey* found that while the plaintiff alleged the banks "knew that the DFJ Fiduciaries were engaged in wrongful or illegal conduct . . . in breach of their fiduciary duties to the Estate," this was not sufficient because "the complaint must allege the defendant's actual knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable." *Id.* at 1152. Allegations of the bank's knowledge of other red flags, including "violat[ions] [of] banking regulations and the [banks'] own internal policies and procedures," were found insufficient to plead actual knowledge. *Id.* at 1142. The court held that "the banks' alleged knowledge of the DFJ Fiduciaries' suspicious account activities—even money laundering—*without more*, does not give rise to tort liability for the banks." *Id.* at 1151 (emphasis in original).[5]

---

[5] Comerica anticipates that Plaintiffs will rely on *Evans v. ZB, N.A.*, 779 F. App'x 443, 2019 WL 2577299 (9th Cir. June 24, 2019). *Evans* is inapposite. In *Evans*, the bank "solicited its own clients to invest [in the fraudulent scheme], instructed the investors to not interfere with the repayment process IMG [i.e., the fraudster] had set up, and arranged for any late fees to be covered by IMG 'to fully convince the two investors

1    Pursuant to *Casey* and its progeny, Plaintiffs have not adequately pled actual

2    knowledge. As indicated in *Casey*, the starting point is to identify the specific "primary

3    violation" at issue, and then whether Plaintiffs have pled facts that, if proven, evidence

4    Comerica's actual knowledge of that specific primary violation. Here, for both the

5    aiding and abetting fraud and fiduciary duty claims, the Consolidated Complaint

6    identifies that Shapiro and Woodbridge were running a Ponzi scheme. But, as in *Casey*,

7    Plaintiffs do not plead facts showing Comerica had actual knowledge of that Ponzi

8    scheme. Rather, the Consolidated Complaint simply pleads that Comerica was aware

9    of various red flags and even potential violations of banking regulations (*e.g.*, Consol.

10   Compl. ¶¶ 58-183, 245, 252-254), which facts are patently insufficient under *Casey*.

11   The Consolidated Complaint also pleads that Comerica was aware of cease-and-desist

12   orders and related proceedings from state or federal regulators, but, fatally, Plaintiffs

13   do not (and cannot truthfully) plead that these proceedings included Ponzi scheme

14   allegations—only allegations such as selling unregistered securities. (*Id.* at ¶¶ 184-

15   214.) These allegations are therefore insufficient to show actual knowledge by

16   Comerica of the Ponzi scheme at issue.

17    The Consolidated Complaint does, of course, make conclusory allegations like

18   "Comerica was aware of its role in the Woodbridge Ponzi scheme and acted knowingly

19   in assisting Shapiro and Woodbridge." (Consol. Compl. ¶ 246.) But these conclusory

20   allegations are unsupported by factual allegations, and as such, are the type of

21   "[t]hreadbare recitals of the elements of a cause of action, supported by mere

22   conclusory statements" that courts regularly reject in response to a motion to dismiss.

23   *Ashcroft, supra*, 556 U.S. at 678.

24    In short, like *Casey*, Plaintiffs have not pled sufficient facts to show actual

25

26   they should not meddle with the loans secured by their own homes.'" *Id.* at *2.  Unlike
27   *Evans*, however, here there is no allegation by Plaintiffs of solicitation of investors by
     Comerica or that Comerica employees instructed investors regarding management of
28   their investment.

knowledge. Importantly, despite very detailed allegations, the Consolidated Complaint does not point to any facts of actual knowledge and thus the Consolidated Complaint has not adequately pled actual knowledge to support Plaintiffs' aiding and abetting claims.

Finally, Plaintiffs' aiding and abetting claims also fail under prong (b) because Comerica owed no duty to Plaintiffs as demonstrated in Section IV(B) immediately below.

**B.    The Negligence Claim Fails Because Comerica Owes No Duty to Plaintiffs**

The existence of a duty of care is determined as a matter of law. *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 837 (2019); *Bily v. Arthur Young & Co*., 3 Cal. 4th 370, 397 (1992). Generally, under California law, there is no duty owed by a bank to noncustomers. Rather, only when "extraordinary and specific facts" are present does a bank "owe a duty of care to [] noncustomer[s]." *Trabulsi v. Wells Fargo Bank, Nat'l Ass'n*, No. 817CV02088JLSSK, 2018 WL 6444897, at *5 (C.D. Cal. Nov. 16, 2018) (citing *Ghlachi v. U.S. Bank, N.A.*, No. CV 14-6619 PSG (CWX), 2015 WL 12655411, at *9 (C.D. Cal. Apr. 29, 2015)) (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 479 (1st Dist. 1996)). Indeed, the absence of such a duty serves California's public policy of protecting financial privacy because "[i]f . . . banks had a duty to reveal suspicions about their customers, they would violate their customers' right to privacy, not to mention be forced to act as the guarantor of checks written by the depositors." *Casey*, 127 Cal. App. 4th at 1149. In fact, the *Casey* court expressly noted that ". . . under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." *Id.*

The only narrow exception to the general rule is limited to "extraordinary" and "specific" circumstances—usually involving indicia that the person attempting to negotiate a bank instrument is not the payee—which circumstances do not exist here.

In *Software Design*, the appellate court reviewed whether "banks and brokerage firms owe[] a duty of care to [non-customers] to investigate the entity opening the account and to thereafter supervise and monitor account transactions such as withdrawals and transfers." *Software Design*, 49 Cal. App. 4th at 478. The court found no such duty to noncustomers of a bank absent "extraordinary" circumstances. *Id.* at 479. In analyzing the type of specific facts that rose to the level of extraordinary circumstances, the court observed that "[t]he danger signals [] in these cases all stemmed from the particular circumstances of the checks, endorsements or depositors, where the person attempting to negotiate the check is not the payee." *Id.* at 480-481. *See also Merritt v. Wells Fargo Bank, N.A.*, No. SACV181960JVSJDEX, 2019 WL 1951608, at *7-8 (C.D. Cal. Mar. 15, 2019) (dismissing negligence claim after finding the bank owed no duty of care to a prospective customer absent an existing contractual relationship).

In the present case, the Consolidated Complaint acknowledges that Woodbridge, not Plaintiffs, is Comerica's customer and fails to allege that that checks presented for deposit bore some objective sign of fraud. This is not a case where Woodbridge presented forged checks for deposit; Plaintiffs admit that they paid their funds to Woodbridge. As such, the Consolidated Complaint alleges no extraordinary facts to support the existence of a duty to noncustomers similar to those present in the aforementioned cases.

Plaintiffs' allegations are thus subject to the general rule that "under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." *Casey*, 127 Cal. App. 4th at 1149. However, a negligence claim requires that Plaintiffs be owed a duty by Comerica. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) ("In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."). Because there is no duty owed to nondepositors such as Plaintiffs, the Consolidated Complaint fails to state a negligence claim.

**C.    Plaintiffs Fail to State a Claim for Violations of the California UCL**

Plaintiffs have failed to state a UCL violation (i) for the same reasons as the negligence and aiding and abetting claims discussed above; (ii) because Plaintiffs have not and cannot feasibly claim that they were injured as a result of Comerica's alleged failure to follow banking regulations; and (iii) because federal law prohibits disclosure of the currently unpled facts that are necessary to support Plaintiffs' claim.

**1.    *Casey* Compels Dismissal of Plaintiffs' UCL Claim**

In *Casey*, after recognizing the bank owed no duty to nondepositors and holding that the banks lacked actual knowledge of the fraud, the court in *Casey* specifically rejected the UCL claim, stating:

> The Trustee alleged the banks' conduct in allowing the DFJ Fiduciaries to open accounts in the names of sham entities, and in permitting the DFJ Fiduciaries to engage in the various forms of suspicious account activity previously detailed here, constituted "unlawful, unfair, or fraudulent business practices within the meaning of California Business [and] Professions Code [section] 17200. . . ." The Trustee does not argue the banks' conduct was fraudulent, and we have already concluded, *ante*, that the banks' conduct was not unlawful. The viability of this claim, then, depends on whether the conduct constituted an "unfair" practice.
>
> In the previous section of this opinion, we discussed the case law strictly limiting the duties a bank owes to nondepositors in connection with a customer's account activities. (*Chazen, supra*, 61 Cal. App. 4th at pp. 541, 545, 71 Cal. Rptr. 2d 462; *Chicago Title Ins. Co. v. Superior Court, supra*, 174 Cal.App.3d [1142, 1159 (1985)], 220 Cal. Rptr. 507; *Sun 'n Sand, Inc. v. United California Bank, supra*, 21 Cal.3d [671, 695 (1978)], 148 Cal. Rptr. 329, 582 P.2d 920). We also specifically held that on the facts alleged here, the banks lacked the specific knowledge that would have made them liable for aiding and abetting the DFJ Fiduciaries'

wrongful conduct. In light of that holding, and the general limits on bank duties to nondepositors, we conclude the banks' alleged conduct cannot constitute the basis for an unfair business practices claim. Consequently, the court properly sustained the demurrer to this cause of action as well.

*Casey*, 127 Cal. App. 4th at 1153-54.

And so it is here. Plaintiffs do not allege any "fraudulent business act or practice," so only the "unlawful" and "unfair" prongs are at issue.[6] As in *Casey*, the absence of actual knowledge renders the allegations of aiding and abetting deficient, and thus not sufficient to state a claim for unlawful conduct. Accordingly, consistent with *Casey*, the Court here should find that none of the alleged activities of Comerica are unlawful—dismissing the aiding and abetting claims and the negligence claim. Moreover, like in *Casey*, because Plaintiffs have failed to plead factual allegations to show that Comerica had actual knowledge of the Ponzi scheme and given the lack of any duty owed to nondepositors such as Plaintiffs, the Court should also reject Plaintiffs' claim under the "unfair" prong of the UCL. As such, the Court should dismiss the UCL claim.

### 2. Plaintiffs fail to allege Injuries Incurred "As a Result of" Comerica's Purportedly Unfair or Unlawful Conduct

Similar to Article III standing, to have standing to pursue a UCL claim, a plaintiff must have "suffered injury in fact and ha[ve] lost money or property ***as a result*** of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added); see also *Two Jinn, Inc. v. Gov't Payment Serv., Inc.,* 233 Cal. App. 4th 1321, 1333 (2015) ("[T]o pursue a UCL claim, the plaintiff must show that the practices that it characterizes as unlawful ***caused*** it to suffer actual economic injury.") (emphasis

---

[6] The Consolidated Complaint ambiguously claims that Comerica "violated applicable Bank Secrecy Act and anti-money laundering regulations" (Consol. Compl. ¶ 266), yet never specifies which regulations were violated and how, thereby failing to adequately plead the "unlawful" prong of the UCL. Nevertheless, the allegations of purported violations of the Bank Secrecy Act are discussed *infra* in Section IV(C)(2).

added); *Standfacts Credit Servs. v. Experian Info. Sols., Inc.*, No. SACV04-0358DOCP JWX, 2006 WL 4941834, at *2 (C.D. Cal. Oct. 12, 2006) ("a person must satisfy a statutory standing requirement in addition to Article III standing to bring a representative UCL claim."). In other words, "[e]stablishing that a defendant violated a law only accomplishes half of a plaintiff's burden in a UCL unlawful prong action." *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *7 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011). A plaintiff is then "required to prove that [she was] injured '*as a result of*' [Defendant's] law-violating conduct." *Id.* (emphasis added); *see also Sepehry-Fard v. MB Fin. Servs.*, No. 13-CV-02784-BLF, 2014 WL 2191994, at *6 (N.D. Cal. May 23, 2014) (dismissing plaintiff's UCL claim under the "unlawful prong" because "Plaintiff has not pled any economic injury, nor has he pled any injury that is clearly attributable to Defendant's alleged violation of the [statute]").

That the kingdom might be lost "all for the want of a horseshoe nail," does not make the blacksmith liable for loss of the kingdom; redressability is a different matter. *Massachusetts v. E.P.A.*, 549 U.S. 497, 546 (2007). Here, Plaintiffs only make a conclusory connection that Comerica failed "to take appropriate and necessary steps to protect investors" and that Plaintiffs "lost money or property, as a direct and proximate result of Comerica's unlawful and unfair conduct." (Consol. Compl. ¶¶ 268, 270.) This is patently insufficient to state a claim under the UCL as Plaintiffs have failed to factually allege how Comerica's purported conduct *caused* Plaintiffs' losses.

*Hall v. SeaWorld Entertainment, Inc.*, 747 F. App'x 449 (9th Cir. 2018) is instructive. In *Hall*, the plaintiffs alleged that SeaWorld did not disclose to its customers certain facts about its treatment of orcas in violation of the UCL. *Id.* at 451. As the basis for their theory of liability under the UCL's "unlawful" prong, the plaintiffs alleged that SeaWorld violated one of California's animal cruelty statutes. *Id.* The plaintiffs alleged that they were inured because had they known about the alleged mistreatment of orcas, they would not have purchased tickets to a SeaWorld park. *Id.*

at 452. The district court reasoned that the "[p]laintiffs' purported damages were caused by *the failure to disclose*, not the alleged violation of the statute." *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2016 WL 4595948, at *5 n.1 (S.D. Cal. May 13, 2016) (emphasis added).[7] The Ninth Circuit affirmed the district court's dismissal with prejudice, concluding that "nothing in the SAC suggests that SeaWorld's violation of [the statute] 'caused' Plaintiffs' economic injury. . . . This lack of causal connection between the claimed legal violation and Plaintiffs' economic injury means that Plaintiffs cannot state a UCL claim based on SeaWorld's alleged violation of [the statute]." *Hall*, 747 Fed. App'x at 452. Similarly, here, Plaintiffs' damages as pled in the Consolidated Complaint were allegedly caused by Comerica's purported failure to make the investors aware of Shapiro's conduct and not by the alleged violation of the Bank Secrecy Act. *See also Zeppeiro v. Green Tree Servicing, LLC*, No. CV1401336MMMJCX, 2015 WL 12660398, at *9 (C.D. Cal. Apr. 15, 2015), *aff'd*, 679 F. App'x 592 (9th Cir. 2017) (dismissing UCL claim with prejudice where plaintiff's allegations "suffice[d] to allege a violation of the statute and a potentially unlawful practice under the UCL," the plaintiff nonetheless "fail[ed] to allege facts indicating that he suffered any redressable injury as a result of the violation.").

In short, where the entirety of Plaintiffs' UCL claim is premised on purported non-compliance with banking laws and/or regulations, Plaintiffs have utterly failed to identify any "redressable injury *as a result of* the violation." *Zeppeiro, supra*, 2015 WL 12660398 at *9 (emphasis added). Plaintiffs have only conclusorily pled that "Plaintiffs and the class suffered injury in fact, and lost money or property, as a direct and proximate result of Comerica's unlawful and unfair conduct." (Consol. Compl. ¶ 270.) Plaintiffs, however, do not allege any facts to support this bald conclusion, let

---

[7] The court held that the plaintiffs' UCL unfair prong failed on the same ground. *See Hall*, 2016 WL 4595948, at *5 n.2 ("For the same reason, Plaintiffs lack standing to bring a UCL claim under the unfairness prong based on violation of public policy concerning treatment of the whales. Such an alleged public policy violation did not cause or result in any injury to Plaintiffs.")

alone demonstrate how any statutory violations themselves somehow caused injury Plaintiffs. Without that, their allegation fails. *See Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) (a "conclusory allegation is insufficient to establish standing"); *see also Pietzak v. Microsoft Corp.*, No. CV 15-5527-R, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015) ("[s]imply stating one suffered financial loss and lost profits, without more, is nothing more than 'conjecture,' 'speculative,' and 'hypothetical'—the exact type of allegations that fail to establish harm for the purposes of standing.") (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). Here, Plaintiffs' inability to plead a plausible injury **resulting** from Comerica's purported banking law violations dooms this claim. Simply put, it was Shapiro's fraud and not Comerica's purported banking law violations that caused Plaintiffs' injuries.

### 3. The UCL Claim Lacks a Cognizable Legal Theory and there is an Insuperable Bar to Relief

With respect to the "unlawful" prong of the UCL claim, Plaintiffs state that "Comerica violated applicable Bank Secrecy Act and anti-money laundering regulations. . . ." (Consol. Compl. ¶ 266.) With respect to the "unfair" prong of the UCL claim, Plaintiffs plead that Comerica's conduct violates the UCL "by reason of its unscrupulous, oppressive, and substantially injurious actions and inaction" and additionally failed to take various corrective actions. (*Id.* at ¶ 267).[8] These are the only allegations, which are conclusory themselves, to which Comerica has any notice—and thus these are the only allegations that need be addressed. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact" but are not "required to accept as true allegations that

---

[8]  Plaintiffs also plead that Comerica "[k]nowingly facilitated Shapiro's misappropriation and misuse of investor funds" (*id.*), yet that conclusory allegation is unsupported by any facts that would support the conclusion of actual knowledge as required by California law.

1   contradict exhibits attached to the Complaint or matters properly subject to judicial

2   notice, or allegations that are merely conclusory, unwarranted deductions of fact, or

3   unreasonable inferences.").

4         Plaintiffs' allegations that Comerica violated the Bank Secrecy Act are

5   inadequately pled because Plaintiffs have no competent facts or good faith bases to

6   make such an assertion. SARs contain extremely sensitive information, and their

7   confidentiality is codified under federal law:

8         SARs are confidential. Any member bank subpoenaed or otherwise

9         requested to disclose a SAR or information contained in a SAR shall

10        decline to produce the SAR or to provide any information that would

11        disclose that a SAR has been prepared or filed citing this section,

12        applicable law (e.g., 31 U.S.C. 5318(g)), or both, and notify the Board.

13  12 C.F.R. § 208.62(j). Indeed, the existence of a SAR is so confidential that a bank

14  may not disclose the SAR in litigation—even if it would be helpful to the bank. *Lee v.*

15  *Bankers Tr. Co.*, 166 F.3d 540, 544 (2d Cir. 1999). Courts explain the justification for

16  keeping SARs confidential as follows:

17        Release of [a] SAR could compromise an ongoing law enforcement

18        investigation, tip off a criminal wishing to evade detection, or reveal the

19        methods by which banks are able to detect suspicious activity.

20        Furthermore, [a] bank[ ] may be reluctant to prepare [a] SAR if it believes

21        that its cooperation may cause its customers to retaliate. Moreover, the

22        disclosure of [a] SAR may harm the privacy interests of innocent people

23        whose names may be contained therein.

24  *Union Bank of California v. Superior Court*, 130 Cal. App. 4th 378, 392–93 (2005)

25  (quoting *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002)).

26        Because these laws and federal regulations require SARs to remain confidential,

27  Plaintiffs have no reasonable or good faith basis to allege, for example, that Comerica

28  "fraudulently concealed the scheme by failing to report it." (Consol. Compl. ¶ 229.)

Nonetheless, knowing that Comerica is prevented from disclosing any steps taken in that regard (and Comerica is not stating whether it did or did not take any such steps), Plaintiffs have alleged in this lawsuit that Comerica failed to report Shapiro's activity. But SARs are highly confidential and cannot be disclosed. 12 C.F.R. § 208.62(j).

Courts are in agreement that the SARs themselves, in addition to the fact of whether any SAR has been filed, are protected from discovery in litigation. *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 814 (N.D. Ill. 2002) (citing *Weil v. Long Island Sav. Bank*, 195 F. Supp. 2d 383, 389 (E.D.N.Y. 2001)). In addition, "the prohibition against disclosing a SAR protects from discovery not just the SAR and its contents, but also information that would disclose preparation of a SAR." *Union Bank of Cal. v. Superior Court*, 130 Cal. App. 4th at 390. SARs are so protected that, as one court has described:

> [T]he Court is not authorized to order or to permit Bank One to make any disclosure, sealed or unsealed, of any information which is privileged under the Act or the Rule, whether in the form of a copy of an SAR or other report submitted in support of an affirmative defense or in the form of a description of privileged information in the pleading of an affirmative defense. Quite the opposite: under the clear, unambiguous terms of the Act and the Rule, courts have an obligation to prevent disclosures of privileged information.

*Gregory v. Bank One Corp. Inc.*, 200 F. Supp. 2d 1000, 1003 (S.D. Ind. 2002)

Yet, here, the thrust of Plaintiffs' allegations is that Comerica is required to comply with regulations such as the Bank Secrecy Act by reporting certain account activity—and because Comerica allegedly failed to report Woodbridge, then Comerica must not be following those regulations. (*E.g.* Consol. Compl. ¶¶ 34-43, 122, 266-267.) Plaintiffs even resort to conclusory assertions that "[t]here are reasonably available alternatives that would have furthered Comerica's business interests, ***such as immediately reporting the suspicious account transactions and other atypical***

*activities*. . . .” (Consol. Compl. ¶ 268, emphasis added.) But Plaintiffs have no factual basis (or even good faith basis) to allege that Comerica failed to appropriately report the account transactions at issue and will never be able to prove what did or did not occur because Comerica is prohibited by federal law from disclosing, and thus Plaintiffs from learning, whether SARs were filed.[9] As a result, the theory on which Plaintiffs' UCL claim rests—that Comerica violated the BSA by failing to report—is not a cognizable legal theory because federal law prohibits Plaintiffs from ever learning whether a SAR was filed. “Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.” *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1988); *Hennessy v. Infinity Ins. Co.,* 358 F. Supp. 3d 1074, 1078 (C.D. Cal. 2019).

Similarly, there is also an insuperable bar to relief under the UCL claim because federal law prohibits disclosure of whether a SAR has been filed. 31 U.S.C. § 5318(g)(2)(A). In situations where there is an “‘obvious’ and ‘insuperable’ bar to securing relief,” the court must dismiss the complaint. *Mitchell v. Brown*, No. 2:14-CV-2993 MCE AC, 2015 WL 3993149, at *1 (E.D. Cal. June 30, 2015) (citing *ASARCO, LLC v. Union Pac. R. Co*., 765 F.3d 999, 1004 (9th Cir. 2014).

Plaintiffs' UCL claim should therefore be dismissed for these additional reasons.

**D.    The BSA does not Provide a Private Right of Action and Preempts all State Law Claims to the Contrary**

During the Rule 7-3 Conference, Plaintiffs agreed that there is no private right of action under the BSA. However, despite that acknowledgement, all four state law-based claims are premised on harm allegedly caused by Comerica purportedly failing to take any action despite being alerted to numerous banking irregularities relating to

---

[9] Similarly, Plaintiffs have no factual basis for the allegation that Comerica “[f]ailed to implement and adhere to mandatory Bank Secrecy Act and anti-money laundering protocols” (Consol. Compl. ¶ 267) because such protocols would necessarily involve filing a SAR.

the Woodbridge accounts at Comerica. But the report Comerica would file in such instance,[10] a SAR, cannot be disclosed under federal law, and there is no private right of action for failing to file a SAR. Moreover, there is a federal "safe harbor" protecting Comerica's right to file a SAR with the federal authorities and not disclose the filing of a SAR to anyone involved. Plaintiffs' state law claims should therefore be dismissed as preempted.

### 1.     There is No Private Cause of Action for Failing to File a SAR

As discussed above, SARs are so cloaked in secrecy by federal law that a bank is prohibited from disclosing their existence in litigation, or even information about the preparation of a SAR. *Union Bank of Cal. v. Superior Court*, 130 Cal. App. 4th at 390. "The federal statute, 31 U.S.C. § 5318(g), as implemented by regulation, 12 C.F.R. § 21.11(k), 'creates an unqualified discovery and evidentiary privilege that courts have held cannot be waived. [Citations.].'" *Id.* In other words, even if the filing of a SAR might be helpful to a bank's case, the bank cannot voluntarily choose to disclose it. *See Lee v. Bankers Tr. Co.*, 166 F.3d at 544 ("[E]ven in a suit for damages based on disclosures allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all.").

Courts also consistently hold that there is no private cause of action that exists under the Bank Secrecy Act (BSA), and particularly no private cause of action that exists for failing to file a SAR. *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 476 (7th Cir. 2005) (regulation requiring banks to notify Treasury Department of known or suspected criminal violation does not create private action for damages); *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) (the BSA does not create a private right of action); *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-CV-

---

[10] Given the confidentiality of SARs filings, nothing in this motion should be read as stating Comerica did, or did not, file SARs in relation to Woodbridge's activities. Comerica is merely discussing the laws and regulations concerning SARs in light of the allegations made by Plaintiffs' Consolidated Complaint.

02778-TSH, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) (holding that "courts
are unanimous in holding that there is no private right of action under the BSA or
Patriot Act"); *Marchak v. JPMorgan Chase & Co.*, No. 15CV4297ILGMDG, 2016
WL 3911926, at *3 (E.D.N.Y. July 15, 2016) ("The BSA does not authorize a private
right of action."); *Grad v. Associated Bank N.A.*, 336 Wis.2d 474, 801 N.W.2d 349,
(Wis. Ct. App. 2011) (no private right of action created by BSA); *El Camino Res., Ltd.
v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010) (BSA does not
create private cause of action)*, aff'd,* 712 F.3d 917, 919 (6th Cir. 2013); *Hanninen v.
Fedoravitch*, 583 F.Supp.2d 322, 326 (D. Conn. 2008) (holding that neither the Patriot
Act nor the BSA authorizes a private right of action); *Carran v. Morgan,* No. 06-
80608-CIV, 2007 WL 3520480, at *5 (S.D. Fla. 2007) ("Of course, there is no private
right action for failure to file a suspicious activity report."); *Commerce Bank/Penn. v.
First Union Nat'l Bank,* 911 A.2d 133, 140 (Pa. Super. Ct. 2006) (holding that "a
bank's failure to issue an SAR does not create a private right of action"). Accordingly,
Comerica cannot be subject to liability for failing to comply with the BSA or Patriot
Act, which are the regulations relied upon by Plaintiffs.

### 2.    Plaintiffs' State Law Claims Are Preempted

Plaintiffs' state law claims are rooted in Comerica's alleged failed to report or
alert Plaintiffs or the public as to suspicious activities reflected in Woodbridge's
account transactions. Such state law claims, as alleged, are preempted by federal
banking law because they are in direct conflict with federal law that prohibits
disclosure of SARs and precludes a private right of action for failing to file a SAR.[11]

[11] Even if the claims were not preempted by federal law, Comerica could not disclose
its customers' activities to others, including Plaintiffs, in the absence of legal process
requiring such disclosure to Plaintiffs. California law recognizes that the inalienable
"right of privacy extends to one's confidential financial affairs," *Valley Bank of Nevada
v. Superior Court*, 15 Cal. 3d. 652, 656 (1975), and that "[a] bank customer's
reasonable expectation is that, absent compulsion by legal process, the matters he
reveals to the bank will be utilized by the bank only for internal banking purposes."
*Burrows v. Superior Court*, 13 Cal. 3d 238, 243 (1974).

Although the Consolidated Complaint carefully avoids the words "suspicious activity report," it is clear that the actual factual premise is that Comerica failed to file a SAR in light of Woodbridge's account activity. In any event, the safe harbor provision in the BSA covers *any* report of suspicious or unlawful activity by the bank, not just a SAR. 31 U.S.C. § 5318(g)(3)(A) (West) (no liability for a financial institution where "disclosure of any possible violation of law or regulation . . . or . . . a disclosure pursuant to this subsection *or any other authority*… *shall not be liable to any person under any law*") (emphasis added); *Henry v. Bank of Consol. Corp.*, No. C 09-628 CRB, 2010 WL 431969, at *4 (N.D. Cal. Feb. 2, 2010) ("The immunization provision clearly applies both to 'disclosure[s] pursuant to this subsection' (e.g., a SAR) and to any 'voluntary disclosure of any possible violation of law.' 31 U.S.C. 5318(g). The latter clause is far broader than the former, and reaches disclosures that have nothing to do with SARs."). Indeed, the Consolidated Complaint refers to "suspicious" activity or related issues over twenty times. (*See, e.g.*, Consol. Compl. ¶¶ 4, 38, 70, 71, 72, 88, 104, 114, 118, 142, 145, 268, and numerous headers.) Central to the Consolidated Complaint is the Bank Secrecy Act (which creates the SAR requirement) and its related regulatory framework. (*See, e.g. id.* at ¶¶ 36-44, 111, 114, 117, 266 & 267.) Despite the fact that Plaintiffs could not possibly know whether Comerica reported given the confidentiality of SARs, the Consolidated Complaint alleges that Comerica failed to report suspicious activities. (*Id.* at ¶¶ 142 & 229.) Moreover, the UCL claim explicitly states that Comerica violated the Bank Secrecy Act and Comerica should have "immediately report[ed] the suspicious account transactions and other atypical activities associated with Woodbridge's Comerica accounts." (*Id.* at ¶¶ 266 & 268.)

If allowed to proceed, Plaintiffs' state law claims based on Comerica's alleged failure to report are in conflict with the execution of federal law and are therefore preempted. Comerica cannot admit or deny whether it filed a SAR pursuant to federal law. As such, for example, when the Complaint pleads that "Comerica . . . never . . . reported [Shapiro's] activity outside the bank" (Consol. Compl. ¶ 142) or "Comerica,

1  aware of the illegal Woodbridge scheme and its injurious effects, fraudulently

2  concealed the scheme by failing to report it. . . ." (*id.* at ¶ 229), Comerica is prohibited

3  by federal law from answering those allegations. The Second Circuit illustrated this

4  conflict when it dismissed, on other grounds, a claim alleging that a bank was liable

5  for defamation based on information allegedly in a SAR:

6       Under plaintiff's theory, he can allege, on information and belief, that a

7       bank filed an SAR containing allegedly defamatory statements that were

8       not made in good faith. If the bank sought summary judgment, it would

9       then have to establish that the statements in the SAR were made in good

10      faith, but it would be prohibited by law both from disclosing the filing or

11      the contents of an SAR. ***It flies in the face of common sense to assert***

12      ***that Congress sought to impale financial institutions on the horns of***

13      ***such a dilemma.***

14  *Lee*, 166 F.3d at 544 (emphasis added). So too here—it flies in the face of common

15  sense that Congress would allow Plaintiffs to accuse a bank of failing to report

16  suspicious activity through state law claims and then preclude the bank from defending

17  itself by disclosing that it filed a SAR (if it did).

18      Under the Supremacy Clause of the Constitution, federal law can preempt and

19  displace state law, including the causes of action pled by the plaintiffs here. *Arizona v.*

20  *United States*, 567 U.S. 387, 399 (2012) ("Congress has the power to preempt state

21  law."); *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1014 (S.D. Cal. 2016).[12] There

22  are three types of preemption: (1) express preemption, (2) field preemption, and

---

[12] *See also Caponio v. Boilermakers Local 549*, No. 16-CV-03919-VC, 2017 WL
1477133, at *4 (N.D. Cal. Apr. 25, 2017) ("Because the state law claims for failure to
prevent discrimination, retaliation, and aiding and abetting are preempted by ERISA,
the parties' dispute about whether they state claims for relief is moot."); *Hayes v. Wells
Fargo Bank, N.A.*, No. 13CV1707 L BLM, 2014 WL 3014906, at *5 (S.D. Cal. July 3,
2014) (holding that HOLA preempted plaintiff's UCL §17200 claims); *Meyer v. One
W. Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1182 (C.D. Cal. 2015) (holding that HOLA
preempted state law claims including aiding and abetting breach of fiduciary duty).

(3) conflict preemption. *Hawkins*, 224 F. Supp. 3d at 1014. A state law "directly conflicts" with federal law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399; *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013) (preemption exists when "state law directly conflicts with the structure and purpose of a federal statute."). Express preemption exists when Congress plainly indicated its intent to preempt state law. *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S.Ct. 1938, 1946 (2016). Conflict preemption recognizes that federal law ordinarily preempts contrary state law. *See Barnett Bank of Marion Cty., N.A., v. Nelson*, 517 U.S. 25, 32 (1996) (discussing powers granted to a national bank under federal law). Although federal jurisprudence recognizes a presumption against preemption, "[b]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable [in the banking context]." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). The conflict test considers whether the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1004 (citations omitted). Where a state law interferes with a power which banks are authorized to exercise, or places irresistible pressure on the subject of the regulation to violate federal law, "the state [law] irreconcilably conflicts with the federal statute and is preempted by operation of the Supremacy Clause." *Wells Fargo Bank of Tex., N.A. v. James*, 321 F.3d 488, 491-92 (5th Cir. 2003). Moreover, federal regulations by a regulating agency may also preempt state law claims. *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 725 (9th Cir. 2012). Allowing Plaintiffs to premise any of their claims on the alleged failure to comply federal reporting requirements conflicts with federal law regarding SARs, and thus any such attempt is preempted.

Here, there is express and conflict preemption. With respect to liability for SAR-related activity, federal law contains the following "safe harbor" provision:

1    *Any financial institution* that makes a voluntary disclosure of any

2    possible violation of law or regulation to a government agency or makes

3    a disclosure pursuant to this subsection or any other authority, and any

4    director, officer, employee, or agent of such institution who makes, or

5    requires another to make any such disclosure, *shall not be liable to any*

6    *person under any law* or regulation of the United States, *any*

7    *constitution, law, or regulation of any State* or political subdivision of

8    any State, or under any contract or other legally enforceable agreement

9    (including any arbitration agreement), for such disclosure or *for any*

10   *failure to provide notice of such disclosure to the person who is the*

11   *subject of such disclosure or any other person identified in the*

12   *disclosure*.

13   31 U.S.C. § 5318(g)(3)(A) (emphasis added). Such preemption expressly preempts

14   state laws. *See Stoutt v. Banco Popular de Puerto Rico*, 158 F. Supp. 2d 167, 176 (D.

15   Puerto Rico 2001), *aff'd* 320 F.3d 26 (1st Cir. 2003) (stating that "the 'safe harbor'

16   provision of the Annunzio Wylie Act, 31 U.S.C. § 5318(g)(3) . . . explicitly preempts

17   state law claims filed against financial institutions complying with its requirements . .

18   . [and] a court can not [sic] entertain state law claims which have been explicitly

19   preempted. . . .").

20        Pursuant to the Bank Secrecy Act, Comerica cannot be liable, pursuant to federal

21   law, for any failure to notify anyone involved that it filed a SAR (assuming, *arguendo*,

22   that a SAR was filed, and Comerica is not stating whether it did or did not file a SAR)

23   or any other disclosure of suspicious or unlawful activity. *See also Spitzer Mgmt., Inc.*

24   *v. Interactive Brokers, LLC,* No. 1:13 CV 2184, 2013 WL 6827945, *2 (N.D. Ohio

25   2013) (neither Patriot Act or BSA create a private cause of action); *accord, Armstrong*

26   *v. Consol. Pallet Leasing Inc.,* 678 F. Supp. 2d 827, 874-75 (N.D. Iowa 2009); *In re*

27   *Agape Litig.,* 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the Bank Secrecy

28   Act does not create a private right of action, the Court can perceive no sound reason to

recognize a duty of care that is predicated upon the statute's monitoring requirements.").

Plaintiffs' claims seek to hold Comerica liable under state law for failing to comply with the BSA. Plaintiffs' Count 1 for aiding and abetting fraud alleges that Comerica "concealed from investors that Woodbridge was operating as a Ponzi scheme" (Consol. Compl. ¶ 243), yet Comerica is statutorily insulated from liability for failing to tell involved parties about any SAR it filed (if it did) that alerted the federal regulators about the Ponzi scheme. Plaintiffs' Count 2 for aiding and abetting a breach of fiduciary duty complains of "Comerica's actions and inaction" (*id.* at ¶ 254) in allowing Shapiro to breach his fiduciary duties, yet Comerica is protected from failing to notify involved parties about any SAR it had filed (if it did) that disclosed Shapiro's breach of fiduciary duties through the Ponzi scheme. Plaintiffs' Count 3 for negligence similarly complains that Comerica "[f]ail[ed] to prevent or take appropriate action in response to Shapiro and Woodbridge's use of funds from new investors to pay sums owed to earlier investors," (*id.* at ¶ 259) but Comerica is likewise protected from liability for following the law with respect to keeping silent as to any filing of a SAR (if it did) to alert the federal regulators of the Ponzi scheme. Plaintiffs' final claim (Count 4) based on the UCL alleges that Comerica failed to "immediately report[] the suspicious account transactions (*id.* at ¶ 268), but banks such as Comerica are covered by the safe harbor from failing to notify involved parties of any SARs the banks may have filed. To the extent that state law would recognize a cause of action for failing to file a SAR, those laws are "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in establishing the safe harbor in the BSA. *Arizona*, 567 U.S. at 399; *Geier v. Consol. Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000) (preempting state law causes of action that "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *see also In re MTBE*, 725 F.3d at 97 (preempting state law that that "directly conflicts with the structure and purpose" of federal law). Thus, all of Plaintiffs' state law claims

1  should be dismissed as preempted.

2        **E.    Plaintiffs Lack Standing**

3        As a separate and independent reason for dismissal, the Court should find that

4  Plaintiffs lack standing. Pursuant to a confirmed plan of reorganization and

5  confirmation order of the Delaware Bankruptcy Court, which is no longer subject to

6  appeal or review, the exclusive right to assert such causes of action is vested in a post-

7  confirmation trust.[13] Given that the Liquidation Trust was appointed by and is being

8  administered by the Delaware Bankruptcy Court, and assuming the Liquidation Trust

9  determines to assert the causes of action in the Consolidated Complaint in this Court,

10  this action should be transferred to that court, where the post-confirmation trust has

11  already commenced more than 100 actions. Jenkins Decl., Ex. C.[14]

12        On October 26, 2018, the Delaware Bankruptcy Court entered the Confirmation

13  Order confirming the Plan. Among other things, the Plan provided for the creation of

14  the Liquidation Trust. Jenkins Decl., Ex. A at § 3.11.2(e). Like most plans of

15  reorganization, the Plan defines (i) "Estates" to include all assets of the Debtors

16  pursuant to Bankruptcy Code section 541(a), (ii) "Estate Assets" to include all "Causes

17  of Action" of the Estates, and (iii) "Causes of Action" to include "[a]ny and all claims,

18  rights, actions, causes of action." *Id.,* Ex. A at §§ 1.12, 1.54, 1.55. The Confirmation

19  Order provides that all Causes of Action may only be prosecuted by the Liquidation

20

21  [13] Copies of the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge

22  Group of Companies, LLC and Its Affiliated Debtors (the "<u>Plan</u>") (Dkt. No. 2397) and the order confirming the Plan (the "<u>Confirmation Order</u>") (Dkt. No. 2903), filed

23  publicly in the action captioned *In re Woodbridge Group of Cos., LLC*, No. 17-12560

24  (KJC) (Bankr. D. Del. Aug. 22, 2018), are attached as Exhibits A and B to the Declaration of Gayle I. Jenkins dated November 1, 2019 (the "<u>Jenkins Decl.</u>").

25  [14] Exhibit C is a chart (prepared by counsel) reflecting more than 100 actions

26  commenced by the post-confirmation Woodbridge Liquidation Trust in the Delaware Bankruptcy Court, each of which is a public proceeding in the Delaware Bankruptcy

27  Court. The first page of each complaint filed in the Delaware Bankruptcy Court is

28  annexed to the chart.

Trust:

> The Debtors and the Liquidation Trust expressly reserve ***all rights to prosecute any and all*** Avoidance Actions, ***Causes of Action***, or Contributed Claims ***against any Person*** other than the Released Parties, in accordance with the Plan.

Jenkins Decl., Ex. B at ¶ 16 (emphasis added).

According to the Plan, all "Causes of Action" and "Contributed Claims" of claimants are "Liquidation Trust Actions." Jenkins Decl., Ex. A at §§ 1.28, 1.76. According to the Liquidation Trust, the Liquidation Trust holds a beneficial interest of approximately 60% of this action based on the claims that were contributed to the Liquidation Trust by former Noteholders and Unitholders. Jenkins Decl., Ex. D at Item 8 p. 43.[15] Similar to the Confirmation Order, the Plan provides that *only* the Liquidation Trust can prosecute Causes of Action, including, without limitation, the Contributed Claims:

> The Liquidation Trust, as a successor in interest to the Debtors, the Estates, and the Contributing Claimants, may, and will have the ***exclusive right***, power, and interest ***on behalf of itself, the Debtors, the Estates, and the Contributing Claimants*** to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw ***any and all Liquidation Trust Actions***.

Jenkins Decl., Ex. A at § 5.4.15 (emphasis added).

The Consolidated Complaint acknowledges that "the Woodbridge Liquidation Trust was formed to pursue, hold and administer the liquidation trust assets" and that the "assets of the Trust also include claims held by investors who elected to contribute to the Trust all causes of action relating to the Woodbridge entities, including the

---

[15] Exhibit D is a true and correct copy of the Registration Statement dated October 25, 2019 filed by the Woodbridge Liquidation Trust with the Securities and Exchange Commission pursuant to Section 12(g) of the Securities Exchange Act.

1    causes of action asserted against Comerica in this complaint." (Consol. Compl. ¶¶ 221,

2    223.) In an effort to circumvent the proscriptions in the Plan and Confirmation Order

3    that decree that only the Liquidation Trust can prosecute any claims against Comerica,

4    the Consolidated Complaint alleges that the "Liquidation Trust is a member of the

5    proposed class in this action." (*Id.* at ¶ 224.) However as detailed below, such an

6    allegation, while novel, does not serve to re-vest the causes of action from the

7    Liquidation Trust to Plaintiffs.

8        Because the Plan and Confirmation Order ***exclusively*** assigned ***all*** causes of

9    action to the Liquidation Trust, the Liquidation Trust is the only entity that can pursue

10   these actions. The Plan and Confirmation Order are no longer subject to review or

11   appeal, are binding on the Plaintiffs and cannot be collaterally attacked in this Court.

12   As a result, the Plaintiffs lack standing to pursue the claims asserted in the Consolidated

13   Complaint. In this Circuit, the appointment of a private trustee pursuant to a plan of

14   reorganization and confirmation that grants exclusive standing to assert all causes of

15   action, including, without limitation, those causes of action of creditors, is binding and

16   must be respected. *Zazzali v. Eide Bailly LLP*, No. 1:12-CV-349-S-MJP, 2013 WL

17   6045978, *2 (D. Ida. Nov. 14, 2013) ("once there is a confirmed plan the liquidating

18   trustee is bound by the terms of the new contract and contract principles apply" and

19   post-confirmation trustee has standing to pursue assigned claims pursuant to plan);

20   *Calvert v. Zions Bancorporation (In re Consolidated Meridian Funds)*, 485 B.R. 604,

21   611 (W.D. Wash. 2013) (holding that a post-confirmation trustee is given authority

22   pursuant to a plan and confirmation order to prosecute all causes of action of creditors

23   related to a Ponzi scheme against a bank); *In re AgriBioTech, Inc.*, 319 B.R. 207, 214

24   (D. Nev. 2004) (affirming right of trustee to assert causes of action of creditors that

25   had assigned the right to bring the claims against a bank in a Ponzi scheme and

26   distribute any proceeds to creditors pursuant to a plan); *In re Southwest Supermarkets,*

27   *L.L.C.),* 315 B.R. 565, 569-70 (Bankr. D. Ariz. 2004), *vacated in part on other grounds*

28   *on reconsideration*, 376 B.R. 281 (Bankr. D. Ariz. 2007) (upholding right of trustee to

assert causes of action where there has been a general assignment of claims to trustee and where the net benefits from causes of action would be turned over to the assignors).

Courts in other Circuits have also upheld the exclusive right of a trustee, pursuant to a confirmed plan of reorganization, to assert causes of action of creditors. *See Grede v. Bank of N.Y. Mellon,* 598 F.3d 899, 902 (7th Cir. 2010) (trustee may assert causes of action of creditors where "the terms of the plan of reorganization (and of the trust instrument) govern the permissible duties of a trustee ***after*** bankruptcy") (emphasis in original); *In re CBI Holding Co., Inc.*, 529 F.3d 432, 459 (2d Cir. 2008) ("[A] trustee may assert claims assigned to it by a bankrupt's creditors for the benefit of the estate, because those claims can become property of the estate under § 541(a)(7)); *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 272 F.Supp.2d 319, 323-24 (S.D.N.Y. 2003) (holding that post confirmation bankruptcy trustee has standing to bring claims assigned by creditors under confirmed bankruptcy plan and that a trustee should not be "stripped of legal effect because the assignee is a creature of bankruptcy"), *aff'd and adopted*, 450 F.3d 121, 123 (2d Cir. 2006) *Logan v. JKV Real Estate Servs.* (*In re Bogdan*), 414 F.3d 507, 513 (4th Cir. 2005) (upholding right of trustee to assert causes of action where trustee had unconditional assignments from creditors to prosecute claims of creditors, as such assignments constituted property of the debtor's estate); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 510 (D. Del. 2012) (finding that post-confirmation trustee could prosecute causes of actions of creditors in a Ponzi Scheme against third parties); *Segner v. Secs. Consol., Inc.*, Civ. No. 10-01884, 2011 U.S. Dist. LEXIS 162817, *24 (N.D. Tex. August 4, 2011) ("Defendants have pointed to no provision in the Bankruptcy Code or any convincing authority that would bar the Liquidating Trustee from bringing properly assigned claims."); *Steinberg v. Kendig (In re Ben Franklin Retail Stores),* 225 B.R. 646, 651 (Bankr. N.D. Ill. 1998) (where chapter 7 trustee had obtained assignments from creditors, holding that "[a]n assignment to a trustee in that capacity is an assignment to

the estate.").[16]

Accordingly, because Plaintiffs lack standing, the Consolidated Complaint should be dismissed.[17] Should the Liquidation Trust determine to assert these causes of action in this Court, that action should be transferred to the Delaware District Court for referral to the Delaware Bankruptcy Court.[18]

Finally, unless the causes of action in the Consolidated Complaint are asserted by the Liquidation Trust, there is the possibility that there will be inconsistent results and recoveries for creditors. In *Bogden*, the Fourth Circuit noted that the Bankruptcy Court's administration of the trustee "will help ensure that trustees forego actions not in the best interests of the bankruptcy estate." *Bogden*, 414 F.3d at 514.[19]

---

[16] In addition, claims based on aiding and abetting a breach of fiduciary duty are estate claims that do not belong to creditors; only the trustee on behalf of the estate has standing to pursue such claims. *See Old Canal Fin. Corp. v. Sarsenstone Corp. (In re Old Canal Fin. Corp.),* 550 B.R. 519, 530 (C.D. Cal. 2016) ("breach of duties owed to the debtor company qualified as injuries to the company" that "conferred standing upon the trustee"); *see also Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1003-1006 (9th Cir. 2005) (only a trustee has standing to assert claims for breach of fiduciary duty); *see also In re SemCrude L.P.* 796 F.3d 310, 317-19, 319-22 (3d Cir. 2015) (fraud and breach of fiduciary duty claims are property of the estate). Here, the claims, as pled, are clearly general and relate to the contractual relationship that existed between Comerica and the Woodbridge entities. As a result, such claims are property of the Liquidation Trust, as the successor to the Debtors. *See In re Emoral, Inc.*, 740 F.3d 875, 881 (3d Cir. 2014) ("[a]fter a company files for bankruptcy, 'creditors lack standing to assert claims that are property of the estate.'") (quotations and citations omitted).

[17] To the extent the Court holds that Plaintiffs have standing to assert the claims in the Consolidated Complaint, Comerica reserves all of its rights with respect to class certification issues and defenses.

[18] With respect to jurisdiction, the Plan provides that the Delaware Bankruptcy Court retains jurisdiction, including, in relevant part, to "recover all Estate Assets." Jenkins Decl., Ex. A at § 10.1. Similarly, with respect to jurisdiction, the Confirmation Order provides that the Delaware Bankruptcy Court "shall retain jurisdiction and judicial power over all matters arising out of, or related to, these Cases and the Plan to the fullest extent permitted by law…." *Id.,* Ex. B at ¶ 55.

[19] The facts here are in sharp contrast from those in *Williams v. California 1st Bank*,

---

1

## V.   CONCLUSION

2       For the reasons set forth above, Comerica respectfully requests that the

3  Consolidated Complaint be dismissed without leave to amend. Substantial document

4  discovery has already occurred, and this is the Plaintiffs' second time to assert causes

5  of action against Comerica. Accordingly, the Consolidated Complaint should be

6  dismissed with prejudice.

7  Dated: November 1, 2019                    Respectfully submitted,

8

9                                    By:   *Gayle I. Jenkins*
                                     **WINSTON & STRAWN LLP**
10                                   Gayle I. Jenkins (SBN 168962)
                                     333 South Grand Avenue Suite 3800
11                                   Los Angeles, CA 90071
                                     Telephone: (213) 615-1700
12                                   Email: gjenkins@winston.com

13

14                                   Thomas M. Melsheimer (*pro hac vice*)
                                     Steven H. Stodghill (*pro hac vice*)
15                                   Thomas B. Walsh, IV (*pro hac vice*)
                                     Rex A. Mann (*pro hac vice*)
16                                   2121 N. Pearl St. Suite 900
                                     Dallas, TX 75201
17                                   Telephone: (214) 453-6500
                                     Email: tmelsheimer@winston.com
18
                                            sstodghill@winston.com
19                                          twalsh@winston.com
                                            rmann@winston.com
20

21

22                                   *Counsel for Defendant Comerica Bank*

23

24

25  859 F.2d 664 (9th Cir. 1988), where a chapter 7 trustee brought state and federal

26  securities claims against a bank in connection with a Ponzi scheme. While the Ninth
    Circuit affirmed dismissal of the chapter 7 trustee's action, that decision is completely
27  distinguishable from the case before this Court because here there is a confirmed Plan
    assigning the causes of action asserted in this case to the Liquidation Trust.
28