Gayle I. Jenkins (SBN 168962)
gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

Thomas M. Melsheimer (*pro hac vice*)
Steven H. Stodghill (*pro hac vice*)
Thomas B. Walsh, IV (*pro hac vice*)
Rex A. Mann (*pro hac vice*)
tmelsheimer@winston.com
sstodghill@winston.com
twalsh@winston.com
rmann@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500

Attorneys for Defendant
COMERICA BANK

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| *IN RE WOODBRIDGE INVESTMENTS LITIGATION* | Case No. 2:18-cv-00103-DMG-MRW<br><br>**DEFENDANT COMERICA BANK'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*[Filed concurrently with Declaration of Gayle I. Jenkins and Declaration of Christopher James]*<br><br>Hearing Date:  June 25, 2021<br>Time:  10:00 a.m.<br>Place:  Courtroom 8C<br>Judge:  Hon. Dolly M. Gee<br><br>Complaint Filed:  September 19, 2019 |

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND ..............................................................................................2

III.  ARGUMENT ...................................................................................................4

     A.   Choice-of-law issues preclude class certification. .....................................4

          1.   The claims are governed by the laws of the states where Plaintiffs live, received information, made decisions, and suffered harm. ....................................................................................4

          2.   The differences in state law are significant. ...................................6

     B.   Plaintiffs' claims raise a host of individual issues. ................................10

          1.   Plaintiffs' fraud claim presents individual issues of reliance........10

          2.   The existence and breach of fiduciary duties and duties to disclose also present individual issues...........................................14

          3.   Plaintiffs cannot establish the causation element of their claims on a class-wide basis.....................................................................18

     C.   The Court should decline to certify the putative class because the named Plaintiffs are atypical of the proposed class and will inadequately represent the members of the putative class......................21

     D.   Plaintiffs cannot meet the superiority requirement, given the size of the named Plaintiffs' individual claims. ...................................................23

     E.   The proposed class is not reasonably ascertainable................................24

IV.  CONCLUSION .............................................................................................25

i

DEFENDANT COMERICA BANK'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 2:19-CV-3439-DMG-KS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Inc. Co. v. Countrywide Fin. Corp.*,
  824 F. Supp. 2d 1164 (C.D. Cal. 2011) .................................................. 7

*In re Bally Total Fitness of Greater N.Y., Inc.*,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ........................................................................................................ 23

*Barboza v. Ford Consumer Fin. Co.*,
  CIV.A. 94-12352-GAO, 1998 WL 148832 (D. Mass. Jan. 30, 1998) ................... 15

*Berrien v. New Raintree Resorts Int'l*,
  LLC, 276 F.R.D. 355 (N.D. Cal. 2011) .............................................. 21

*In re Blockbuster Inc.*,
  441 B.R. 239 (Bankr. S.D.N.Y. 2011) ................................................ 23

*Branch Banking & Tr. Co. v. Lighthouse Fin. Corp.*,
  2005 WL 1995410 (N.C. Super. July 13, 2005) .................................... 7

*Casey v. U.S. Bank Nat'l Assn.*,
  127 Cal. App. 4th 1138 (2005) ......................................................... 18

*Chang v. JPMorgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017) .......................................................... 8

*Chiarella v. United States*,
  445 U.S. 222 (1980) ......................................................................... 17

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  68 Cal. App. 4th 445 (1998) ............................................................. 15

*Cole v. Gene by Gene, Ltd.*,
  322 F.R.D. 500 (D. Ala. 2017) ......................................................... 24

*Conde v. Sensa*,
  2018 WL 4297056 (S.D. Cal. Sep. 10, 2018) ...................................... 5

*In Re Daisy Sys. Corp.*,
    97 F.3d 1171 (9th Cir. 1996) ......................................................................... 15

*Dechert v. Cadle Co.*,
    333 F.3d 8014 (7th Cir. 2003) ....................................................................... 23

*Destiny Tool v. SGS Tools Co.*,
    344 F. App'x 320 (9th Cir. 2009) .................................................................... 4

*Dunham Tr. Co. v. Wells Fargo Bank, N.A.*,
    2019 WL 489095 (D. Nev. Feb. 7, 2019) ........................................................ 7

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
    722 F. Supp. 2d 875 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir.
    2013) ................................................................................................................ 9

*In re Ephedra Prods. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) ........................................................................... 23

*In re First Alliance Mortgage*,
    471 F.3d 977 (9th Cir. 2006) ......................................................................... 11

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ................................................................................... 14

*Fox-Quamme v. Health Net Health Plan of Or., Inc.*,
    2017 U.S. Dist. LEXIS 35964 (D. Or. March 9, 2017) .................................. 24

*Furr v. T.D. Bank, N.A. (In re Rollaguard Sec., LLC)*,
    591 B.R. 895 (Bankr. S.D. Fla. 2018) ............................................................. 8

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) ........................................................... 7

*Giron v. Hong Kong & Shanghai Bank Co.*,
    2017 U.S. Dist. LEXIS 189087 (C.D. Cal. Nov. 15, 2017) ...................... 18, 19

*Goodworth Holdings, Inc. v. Suh*,
    99 F. App'x 806 (9th Cir. 2004) ..................................................................... 15

*Grayson v. Anderson*,
    816 F.3d 262 (4th Cir. 2016) ........................................................................... 7

*Griffith v. Javitch, Block & Rathbone, LLP*,
　358 B.R. 338 (S.D. Ohio 2007) ................................................................... 23

*Guzman v. Bridgepoint Educ., Inc.*,
　305 F.R.D. 594 (S.D. Cal. 2015) .................................................................. 5

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ..................................................................... 21

*Hanon v. Dataproducts Corp.*,
　976 F.2d 497 (9th Cir. 1992) ....................................................................... 21

*Hardisty v. Moore*,
　2011 WL 6888634 (S.D. Cal. Dec. 21, 2011) .............................................. 9

*In re Hitachi Tele. Optical Block Cases*,
　2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ....................................................... 7

*Honig v. Kornfeld*,
　339 F. Supp. 3d 1323 (S.D. Fla. 2018) ......................................................... 8

*Jenkins v. NCAA*,
　311 F.R.D. 532 (N.D. Cal. 2015) ................................................................ 21

*Kaser v. Swann*,
　141 F.R.D. 337 (M.D. Fla. 1991) ............................................................... 15

*Kearney v. Salomon Smith Barney, Inc.*,
　39 Cal. 4th 95 (2006) .................................................................................... 4

*Koss Corp. v. Park Bank*,
　922 N.W.2d 20 (Wis. 2019) ......................................................................... 7

*Kyko Glob., Inc. v. Bhongir*,
　2020 WL 5816728 (N.D. Cal. Sept. 30, 2020) ........................................... 10

*L. v. Priority Tr. Servs. of N.C.*,
　610 F. Supp. 2d 528 (W.D.N.C. 2009) ......................................................... 7

*Lane v. Wells Fargo Bank, N.A.*,
　2013 WL 3187410 (N.D. Cal. June 21, 2013) .............................................. 4

*LiMandri v. Judkins*,
　52 Cal. App. 4th 326 (1997) ....................................................................... 17

*Lorenz v. E. W. Bancorp, Inc.*,
  2016 WL 199392 (C.D. Cal. Jan. 14, 2016) ..................................................... 16, 17

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ....................................................... 5, 6, 8, 10

*Metge v. Baehler*,
  762 F.2d 621 (8th Cir.1985) .................................................................... 18

*MHC Inv. Co. v. Racom Corp.*,
  209 F.R.D. 431 (S.D. Iowa 2002) ............................................................ 17

*In re MRU Holdings Secs. Litig.*,
  769 F. Supp. 2d 500 (S.D.N.Y. 2011) ..................................................... 17

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ....................................................... 15, 16

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................... 15, 18, 20

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
  157 Cal. App. 4th 835 (2007), *as modified* (Dec. 26, 2007) ................................. 13

*Opelle v. Kneubuhl*,
  2019 WL 410805 (C.D. Cal. Feb. 1, 2019) ..................................................... 4

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
  2016 WL 5920345 (C.D. Cal. June 23, 2016) ................................................ 11

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004) ................................................................. 10

*Reddington Invs. Inc. v. Sec. Pac. Corp.*,
  5 F.3d 539 (9th Cir. 1993) ................................................................... 13

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
  2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ............................................... 9

*Rothwell v. Chubb Life Ins. Co. of Am.*,
  191 F.R.D. 25 (D.N.H. 1998) ................................................................ 15

*Sawyer v. Bill Me Later, Inc.*,
  2010 WL 11492736 (C.D. Cal. Dec. 14, 2010) ............................................. 5

*Shahinian v. Kimberly-Clark Corp.*,
  2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) ...................................................... 9

*Stevens v. Woodstock, Inc.*,
  372 F. Supp. 654 (N.D. Ill. 1974) ................................................................... 18

*Stoudt v. E.F. Hutton & Co.*,
  121 F.R.D. 36 (S.D.N.Y. 1988) ..................................................................... 24

*Stratton v. Am. Med. Sec., Inc.*,
  266 F.R.D. 340 (D. Ariz. 2009) .................................................................... 15

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................... 10

*WA Sw. 2, LLC v. First Am. Title Ins. Co.*,
  240 Cal. App. 4th 148 (2015) ...................................................................... 14

*Wiand v. Wells Fargo Bank, N.A.*,
  938 F. Supp. 2d 1238 (M.D. Fl. 2013) .............................................................. 8

*Wood v. Motorola Mobility, Inc.*,
  No. C-11-04409-YGR, 2012 WL 892166 (N.D. Cal. Mar. 14, 2012) ............. 15, 17

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  MDL No. 2924, 20-MD-2924, 2020 WL 7866674 (S.D. Fla. Dec. 31,
  2020) ................................................................................................... 10

*Zinn v. Ex-Cell-O Corp.*,
  148 Cal. App. 2d 56 (1957) ........................................................................... 5

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ....................................................................... 4

**Statutes**

Cal. Civ. Proc. Code § 338(d) ....................................................................... 9

Fla. Stat. § 95.11(3)(j) ................................................................................. 9

Va. Code Ann. § 8.01–243(A) ....................................................................... 9

**Other Authorities**

CPLR 213 ................................................................................................ 10

Fed. R. Civ. P. 23 ................................................................... 10, 24

Fed. R. Civ. P. 23(a) ................................................................... 21

Fed. R. Civ. P. 23(a)(4) ............................................................. 4, 21

Fed. R. Civ. P. 23(b)(3) ...................................................... 10, 11, 21

vii

DEFENDANT COMERICA BANK'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 2:19-CV-3439-DMG-KS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court should not certify this case as a class action.  If this case proceeds at all, Plaintiffs can and should litigate their claims individually.

To begin with, Plaintiffs seek certification of a nationwide class, and resolving their claims would require this Court to apply the law of multiple jurisdictions.  In a case based on misrepresentations or omissions, California courts apply the law of the state where the plaintiff received and relied on the communications and suffered its injury—a result that here would point to the law of nearly 50 separate states.  Courts routinely deny class certification because of choice-of-law issues like these.

Further, the claims will inevitably require proof about each Plaintiff individually.  Plaintiffs cannot prove deception, reliance, or a duty to disclose on a class-wide basis because they received different combinations of information from different financial advisors at different times, with differing degrees of sophistication and knowledge.  And because no underlying tortfeasor owed investors a fiduciary duty just because they invested in Woodbridge, Plaintiffs will have to establish facts on an investor-by-investor basis that give rise to such a duty.  The individual proof on these issues will overwhelm any common issues in this case and would make a class action entirely unmanageable.  Courts frequently deny class certification on exactly this basis.

In addition, the scope of the class—including investors over an undifferentiated five-year period, with a single entity representing 59% of the claims—will inevitably give rise to conflicts of interest, problems of adequacy and typicality, and manageability issues.  Plaintiffs' claims all require proof that Comerica acted with actual knowledge of the underlying torts.  They cannot show that this knowledge existed at the outset of the class period; instead, they point to a series of events *during* the class period from which they contend Comerica acquired that knowledge over time.  The evidence for each investor's claim thus depends on when the investor made its investment in relation to the alleged "red flags" over time.  The purported red-flag evidence looks markedly

different, for example, for Plaintiff Hull (who invested in promissory notes and in a Woodbridge LLC in 2014) than for Plaintiff Shirley (who invested in promissory notes alone in 2017).   These differences create individual issues and will inevitably give rise to intra-class conflicts.

Finally, a class action is not a superior method to resolve Plaintiffs' claims.  All but one of the named Plaintiffs invested six-figure amounts in Woodbridge.  There is no reason why they could not litigate their claims without a class action.  That is exactly what they should be required to do.

## II.   BACKGROUND

Plaintiffs' "Statement of the Facts" glosses over the significant differences among Plaintiffs' circumstances.  It is also an argumentative, misplaced foray into the alleged merits of Plaintiffs' claims and is largely irrelevant to the question whether the Court should grant any part of Plaintiffs' motion.

Plaintiffs invested in various Woodbridge entities at different times, in different amounts, and through different investment vehicles:[1]

| Plaintiff | Home State | Dates of Investment | Total Amount | Financial Advisor | Information Relied On |
|---|---|---|---|---|---|
| Mark Baker | FL | 1/26/2015<br>2/16/2016<br>2/18/2016<br>2/25/2016<br>3/14/2016<br>4/28/2016<br>7/21/2016<br>8/2/2016<br>12/5/2016<br>12/9/2016<br>12/16/2016<br>3/10/2017 | $529,500 | Costa (FL) | Baker invested based on advice of radio-show host he spoke with after listening to host's show. |

[1] The information in the table for each Plaintiff comes from the Plaintiff's response to Comerica's Interrogatory Number 3, attached as Exhibit A to the Declaration of Gayle I. Jenkins ("Jenkins Decl.") filed concurrently herewith.

| Jay Beynon/Jay Beynon Trust | CA | 11/14/2017 | $500,000 | Ray Kay/Pamela Wells (CA) | Beynon invested based on advice of financial advisors advertised on the radio. |
|---|---|---|---|---|---|
| Alan & Marlene Gordon | FL | 8/19/2016 9/22/2016 9/30/2016 11/9/2016 10/2/2017 | $300,000 | Kornfelds (FL) | The Gordons invested based on advice a financial advisor advertised in local newspaper provided at a luncheon and subsequent meetings. |
| Joseph Hull | PA | 7/8/2014 8/28/2014 11/11/2014 7/7/2015 9/20/2016 | $650,000 | Kandravi (PA) | Hull invested based on the advice of financial advisor with whom he had a longstanding relationship. |
| Lloyd and Nancy Landman | NV | 3/26/2015 2/1/2016 | $50,000 | Nichols (MA) | The Landmans invested based on the advice of a financial advisor. |
| Lilly Shirley | TN | 8/9/2017[2] 8/16/2017 10/18/2017 | $529,510 | Costello (VA) | Shirley invested based on financial advice from her niece. |

Plaintiffs assert that the allegedly suspicious conduct—the purported "red flags" that they contend gave Comerica knowledge of the underlying alleged torts—spanned from 2012 to 2017, the entire class period. Dkt. No. 151, ¶ 81. But if some combination of these alleged "red flags" are in fact enough to prove knowledge on Comerica's part,

---

[2] Dkt. No. 170–8, ¶ 3.

that proof will suffice only for investors who bought *after* those red flags.  As discussed below, these and other facts give rise to a host of individual issues.

## III.   ARGUMENT

The Court should deny Plaintiffs' motion because (a) choice-of-law issues would make this case wholly unmanageable as a class action, (b) questions not susceptible to class-wide determination pervade this case and prevent Plaintiffs from showing predominance, commonality, typicality, and manageability; (c) conflicts of interest among putative class members will prevent Plaintiffs from meeting Rule 23(a)(4)'s adequacy requirement and will also make this case unmanageable as a class action; and (d) a class action would not be superior to other means of resolving Plaintiffs' and putative class members' claims.

### A.   Choice-of-law issues preclude class certification.

The first hurdle to class certification in this case is choice of law.  "[C]ourts routinely deny class certification because plaintiffs' claims would require application of the substantive law of multiple states."  *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410, at *4 (N.D. Cal. June 21, 2013) (citations omitted).  Especially "[w]here the applicable law derives from the law of the 50 states . . . , differences in state law will compound the disparities among class members from the different states."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal alterations, quotation marks, and citation omitted).

### 1.   The claims are governed by the laws of the states where Plaintiffs live, received information, made decisions, and suffered harm.

"In a tort action, California courts apply the governmental interest analysis."  *Destiny Tool v. SGS Tools Co.*, 344 F. App'x 320, 321 (9th Cir. 2009) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006)).  This analysis applies to aiding-and-abetting claims, fraud claims, and claims for breach of fiduciary duty when they dovetail with allegations of fraud.  *See Opelle v. Kneubuhl*, 2019 WL

410805, at *4 (C.D. Cal. Feb. 1, 2019) (governmental interest approach for breach of fiduciary duty); *Sawyer v. Bill Me Later, Inc.*, 2010 WL 11492736, at *6 (C.D. Cal. Dec. 14, 2010) (governmental interest approach for aiding and abetting).

In conducting this analysis, "California recognizes that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (citations omitted). For a claim based on deception, "the 'place of the wrong' occurs where the potential class members sustain their loss." *Conde v. Sensa*, 2018 WL 4297056, at *13 (S.D. Cal. Sep. 10, 2018).[3]

The potential class members here received any information, made their decisions, and sustained any losses in their home states. For example, Plaintiff Shirley invested in Woodbridge based solely on a conversation she had with her niece that occurred in Shirley's home in Tennessee, and she reviewed and signed her Woodbridge investment agreements at her home in Tennessee. Jenkins Decl., Ex. B, Shirley Dep. Tr. at 29:6–8, 58:8–16, 59:17–22, 75:2–5, 78:21–25, 86:3–6. And Plaintiff Gordon invested after seeing an advertisement for "first position mortgages" in a Florida newspaper and attending a luncheon in Boca Raton. Jenkins Decl., Ex. C, A. Gordon Dep. Tr. at 42:15–43:1.

Plaintiffs of course attempt to focus on Woodbridge and Shapiro—the creators of the alleged Ponzi scheme—because they were in California. And Plaintiffs cite case law suggesting that applying California law may be appropriate if "the defendant engaged in a substantial amount of business in California." Dkt. No. 175, at 17–18.

---

[3] *Accord Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 617 (S.D. Cal. 2015) (claims for fraudulent misrepresentation governed by the law where the loss was sustained); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) (for tort involving misrepresentation, place of the wrong is where the misrepresentations occurred, "[n]o matter where the intention to misrepresent was formed, nor the acts which were misrepresented took place").

But neither Woodbridge nor Shapiro is a party to this case.  Comerica is the Defendant, and Plaintiffs overstate the significance of Comerica's ties with California.

Comerica is based in Texas, not California.  Dkt. No. 151, at 5.  Plaintiffs attempt to seize on a handful of interactions in a local Comerica branch.  But Plaintiffs' arguments regarding Comerica's alleged "knowledge" of the fraud rest on actions of Comerica anti-money laundering and subpoena-processing personnel located in Michigan.  Jenkins Decl., Ex. E, Boynton Dep. Tr. at 12:10–13:19.

Moreover, of the named Plaintiffs, only Lloyd Landman and Alan Gordon had direct contact with a Woodbridge employee, and those contacts were minimal.  For Alan Gordon, they were limited to a phone discussion in which an employee said Woodbridge had been in business for 35 years.  Jenkins Decl., Ex. C, A. Gordon Dep. Tr. at 60:14–20, 61:5–8.  As for Lloyd Landman—the only named Plaintiff to have direct contact with Shapiro—Shapiro simply said he should contact a third-party financial advisor, on whose advice Lloyd Landman then relied.  Jenkins Decl., Ex. F, L. Landman Dep. Tr. at 46:22–24.  Any other discussions, advice, and information Plaintiffs relied on—including both the alleged misrepresentations and the alleged omissions—involved brokers and financial advisors across the country.

In short, the most significant governmental interest lies in the states where the investors live, received information, made decisions, and suffered harm.  As in *Mazza*, "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce."  666 F.3d at 593.

### 2.      The differences in state law are significant.

The differences among the various states' laws are deeply significant in this case; the states' laws are not "the same in functional content," as Plaintiffs suggest.  Dkt. No. 175 at 19.  Plaintiffs do not dispute that aiding-and-abetting law varies among the fifty states.[4]  Plaintiffs admit that at least seven states do not recognize civil aiding and

---

[4] For purposes of class certification, Plaintiffs' opening brief focuses solely on the aiding and abetting claims, ignoring the statutory claim entirely.  We assume, therefore,

abetting at all.   Dkt. No. 175 at 19; Dkt. No. 170-2, Plaintiffs' 44-Jurisdiction Appendix.[5] A "true conflict" exists when one state allows a claim and the other does not.  *See Allstate Inc. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1170 (C.D. Cal. 2011) (holding a "true conflict of law exist[ed]" where California law did not allow an employee to aid and abet an employer, but New York law did).

In addition, Plaintiffs' 44-Jurisdiction Appendix is unreliable.  North Carolina has *not* definitively recognized aiding and abetting for either fraud or breach of fiduciary duty.  *See L. v. Priority Tr. Servs. of N.C.*, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009) (fiduciary duty); *Branch Banking & Tr. Co. v. Lighthouse Fin. Corp.*, 2005 WL 1995410, at *8 (N.C. Super. July 13, 2005) (fraud).  And although South Carolina recognizes aiding and abetting breach of fiduciary duty, it does not recognize aiding and abetting fraud.  *See Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016).  Cases suggest also that neither Wisconsin nor Nevada would allow such claims to proceed against Comerica based on Plaintiffs' purported evidence.  *See Dunham Tr. Co. v. Wells Fargo Bank, N.A.,* 2019 WL 489095, at *3 (D. Nev. Feb. 7, 2019) ("A search of Nevada law, however, does not reveal a valid cause of action for 'aiding and abetting fiduciary fraud.'"); *Koss Corp. v. Park Bank*, 922 N.W.2d 20, 31 (Wis. 2019) (rejecting claim that bank had obligation "to piece together various transactions by a fiduciary, but rather it is permitted to engage in the presumption that the fiduciary is acting in accord with the fiduciary's lawful authority for each transaction").

---

that Plaintiffs have abandoned any attempt to certify a class on the statutory claim.  Nor could that claim possibly support class certification; courts consistently recognize that "there are material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states." *In re Hitachi Tele. Optical Block Cases*, 2011 WL 9403 at *6 (S.D. Cal. Jan. 3, 2011); *accord Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100–1102 (C.D. Cal. 2012).

[5] Buried in a footnote in Plaintiffs' motion (n.14) is an "alternate proposal" to exclude investors from certain states from the class.  It is unclear whether this request completely jettisons the claims of the putative class members from those seven states or seeks subclasses for those states.  Plaintiffs should not be permitted to cure this issue on reply.

7

DEFENDANT COMERICA BANK'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 2:19-CV-3439-DMG-KS

Moreover, among the states that recognize civil aiding and abetting, substantial variation exists.  In a recent case brought by investors who are (presumably) members of the putative class against some of the financial advisors who introduced them to Woodbridge, a Florida court found that red flags failed to establish actual knowledge and that the investors' "attempt to lower this knowledge standard to 'recklessness'"— through red flags—"is contrary to Florida law." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018).  Under Florida law, even if an alleged red flag "may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge' of wrongdoing.'" *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244–45 (M.D. Fl. 2013) (citation omitted).  The differences in the knowledge standard for aiding and abetting is material to this case just like the differences in scienter that the Ninth Circuit found material in *Mazza*.  *See* 666 F.3d at 591–92.

Even if "ordinary business transactions" could satisfy the substantial assistance element in California, the same is *not* true in Florida.  In Florida, "[s]ubstantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (citation omitted).  "[M]ere inaction" will constitute substantial assistance "only if the defendant owes a fiduciary duty directly to the plaintiff." *Id.*  Importantly, "in the context of aiding and abetting claims against banks, Florida law does not require banks to investigate their customers' transactions." *Furr v. T.D. Bank, N.A. (In re Rollaguard Sec., LLC),* 591 B.R. 895, 922–23 (Bankr. S.D. Fla. 2018) (citations omitted).  Plaintiffs' reliance on alleged "commingling" with the Woodbridge accounts would not give rise to liability. *Wiand*, 938 F. Supp. 2d at 1248 ("Commingling of funds, even where the bank knows that the customer holds the funds in a fiduciary or trust capacity, is not necessarily prohibited and is insufficient to allege knowledge of an underlying fraud.").

Although California allows liability based on a "substantial factor" version of causation, in other states such as Michigan, "[a] plaintiff must demonstrate that its injury was a direct and reasonably foreseeable result of the conduct." *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 910 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013) (internal citations omitted).  Although Plaintiffs suggest that a "multistate" class proceeding may be efficient based on "identical elements of actual knowledge and substantial assistance," the requirements to satisfy these elements vary significantly from state to state.

Finally, the law differs materially in terms of the elements of the alleged underlying torts, which Plaintiffs also must prove.  *See Hardisty v. Moore*, 2011 WL 6888634, at *2 (S.D. Cal. Dec. 21, 2011) ("[T]o state a claim for aiding and abetting liability under both state and federal law, a plaintiff must first plead the existence of an independent primary wrong.") (citation omitted).  In their appendix, Plaintiffs do not attempt to demonstrate uniformity in the elements of the underlying torts of fraud and breach of fiduciary duty.  Nor could they.  *See Shahinian v. Kimberly-Clark Corp.*, 2016 WL 11722907, at *18 (C.D. Cal. Nov. 14, 2016) (Gee, J.) ("the applicable standard of proof [for fraud] varies quite a bit, with some states applying a preponderance of the evidence standard, and others a clear and convincing standard… [a]s for fraud by concealment or omission, the Court finds significant differences as to what constitutes a defendant's duty to disclose."); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *2 (C.D. Cal. Nov. 13, 2008) ("Under Alabama law, … the tort of fraudulent deceit 'results from either a willful or reckless misrepresentation or suppression of material facts with an intent to mislead.'…Yet under Arizona and Mississippi law, knowledge of the misrepresentation's falsity or ignorance of its truth is required.") (citations omitted)).  Even the statutes of limitation are different and would cut off the claims at different points during the class period.[6]  And to the extent

---

[6] *Compare* Va. Code Ann. § 8.01–243(A) (two years for fraud claims) *with* Cal. Civ. Proc. Code § 338(d) (three years) *and* Fla. Stat. § 95.11(3)(j) (four years); *see also* N.Y.

DEFENDANT COMERICA BANK'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 2:19-CV-3439-DMG-KS

a state employs the discovery rule or equitable tolling, those doctrines will inevitably raise investor-by-investor issues.  Finally, a certified class based on state law claims require a class representative from each state.  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 20-MD-2924, 2020 WL 7866674, at *17 (S.D. Fla. Dec. 31, 2020) ("The Court concludes that a named plaintiff lacks standing to assert claims on behalf of putative class members whose claims arise under other states' laws.").

These kinds of state-law conflicts are enough by themselves to preclude certification of a nationwide class under Rule 23(b)(3).

### B.      Plaintiffs' claims raise a host of individual issues.

Individual issues arise in this case both from Plaintiffs' burden to prove the alleged underlying torts and from the causation element of Plaintiffs' aiding-and-abetting claims.  Like the choice-of-law issues above, these individualized inquiries prevent Plaintiffs from meeting Rule 23's predominance, commonality, and typicality requirements and would make a class action unmanageable.

### 1.      Plaintiffs' fraud claim presents individual issues of reliance.

To succeed on their claims, Plaintiffs must establish the elements of fraud, and reliance is an "essential element."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  "[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they were addressed."  Fed. R. Civ. P. 23, adv. comm. notes to 1966 Ams., subd. (b)(3).   Indeed, although claimants in some pure omissions cases enjoy a presumption of reliance, the Ninth Circuit has held that fraud claims based on a mix of affirmative misrepresentations and omissions are entitled to no such presumption.  *Mazza*, 666 F.3d at 596; *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004) ("[T]heir claims are best characterized as either affirmative misrepresentations or

---

McKinney's CPLR 213 (six-years for breach of fiduciary duty claims based on fraud); *Kyko Glob., Inc. v. Bhongir*, 2020 WL 5816728, at *2 (N.D. Cal. Sept. 30, 2020) (three years for breach of fiduciary claim based on fraud).

"mixed claims"—claims that, in any event, would not be entitled to the presumption."). Because of the individualized nature of the reliance element, fraud claims can be tried on a class-wide basis only in rare cases, where there is a standardized set of misrepresentations made in the same way to every member of the class, such as the uniform, script-based representations in *In re First Alliance Mortgage*, 471 F.3d 977, 991–92 (9th Cir. 2006), an aiding and abetting case.   But in a more common misrepresentation case, this Court has held that "[b]ecause issues of reliance and materiality require individualized inquiry[,] … class certification is inappropriate for failure to meet the predominance requirement of Rule 23(b)(3)." *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc*., 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016) (Gee, J.).

Here, Plaintiffs made their investments based on a wide range of materials and information, delivered by an array of financial advisors and others, with nothing standardized at all.   Unlike in *First Alliance*, there was no script.   Plaintiffs admit that Woodbridge used "a network of hundreds of external sales agents to solicit investments from the public through television, radio, and newspaper advertising, cold calling, social media, websites, seminars and in-person presentations." Dkt. No. 151, Compl., ¶ 47. Because only one Plaintiff produced a Woodbridge brochure, there is no evidence of common written materials received by the eight Plaintiffs—much less any evidence that putative class members relied on uniform or similar alleged misrepresentations (or omissions).   Jenkins Decl., Ex. G, Beynon Dep. Tr. at 184:1–8.  In fact, Plaintiff Shirley testified that she never reviewed any written materials about the Woodbridge investments at all.   Jenkins Decl., Ex. B, Shirley Depo. Tr. at 100:7–18.  She relied exclusively on oral advice from her niece, Vickie Costello, in deciding to invest.  *Id*. at 75:2–5, 78:21–25.  And other Plaintiffs testified that they relied on oral representations from financial advisors about Woodbridge.   Jenkins Decl., Ex. A, Baker's Resp. to Interrog. No. 3; Gordon's' Resp. to Interrog. No. 3; Hull's Resp. to Interrog. No. 3; Landmans' Resp. to Interrog. No. 3.

1    Given the different information each investor received, it is no surprise that the

2    investors do not have a uniform view about what Woodbridge represented (or failed to

3    disclose) about its business.  Plaintiffs seek certification based on the notion that every

4    investor was told that "Woodbridge promised to *lend the money raised from investors*

5    for a short term, and for only about two-thirds of the value of the real estate securing

6    the transaction, such that the 'properties that secure the mortgages are worth

7    considerably more than the loans themselves at closing.'"  Dkt. No. 175 at 2:25–3:2

8    (emphasis added).  But Woodbridge investors have asserted elsewhere that Woodbridge

9    was in the business of "flipping" properties—which Plaintiffs have not claimed was

10   inconsistent with the money flow occurring in the Woodbridge accounts at Comerica.[7]

11   Plaintiff Shirley believed the same thing in this case.  Jenkins Decl., Ex. 2, Shirley Dep.

12   Tr. at 114–18.  Additionally, although Plaintiffs contend that no investor knew that

13   Woodbridge affiliates owned any of the investment properties, Plaintiffs Alan Gordon

14   and the Landmans—and potentially more putative class members—received written

15   notice that the properties in which they invested were "owned by WMIF affiliates"

16   before they invested.  Dkt. No. Mot. at 2:25–3:2; Jenkins Decl., Ex. H, M. Gordon Depo.

17   Tr. at 130–132; Ex. F, L. Landman Depo. Tr. at 43–46.

18        What Plaintiffs heard about the interest rates their investments would provide

19   also highlights the variance among the representations each Plaintiff received.  Plaintiff

20   Shirley received a 6% interest rate for meeting what she was told was the minimum

21   investment amount of $25,000.  Jenkins Decl., Ex. B, Shirley Dep. Tr. at 96–97.  But

22   Jay Beynon invested $500,000 because his financial advisor said he had to invest that

23   much to benefit from a 6% interest rate.  Jenkins Decl., Ex. G, Beynon Dep. Tr. at

24   _____

25   [7] *See* Jenkins Decl., Ex. K, Case 17-12560-JKS, *Abbott et al. v. Woodbridge*, Dkt. No.
     2739, Compl., ¶¶ 20–21 (action brought by hundreds of investors alleging that

26   Woodbridge "bought, improved and sold high-end luxury homes and owned and
     operated full-service real estate brokerages, a private investment company, and real

27   estate lending operations" and that Woodbridge would "both (a) purchase and improve
     existing homes and (b) purchase undeveloped land and build new homes thereon").

28

229:15–19.  Another advisor testified under oath that the advisor determined the rate based on how much they wanted to "share" with their customers.  Jenkins Decl., Ex. L, No. 19-20178-CR-ALTONGA, *United States v. Roseman*, Dkt. No. 264, Mot. Recon. at 53.  Given the dramatic differences in the information they received, Plaintiffs will not be able to litigate reliance on a class-wide basis.

Individualized inquiries also arise from the differing circumstances in which Plaintiffs experienced the alleged misrepresentations.  Plaintiff Hull had a longstanding business relationship with the advisor who convinced him to invest in Woodbridge. Jenkins Decl., Ex. I, Hull Dep. Tr. at 55–56.   Plaintiff Shirley invested based on advice from her niece.  Jenkins Decl., Ex. A, Shirley Resp. to Interrog. No. 3.  Plaintiff Beynon invested based on the advice of a radio personality.  Jenkins Decl., Ex. G, Beynon Dep. Tr. at 151–52.  Other Plaintiffs invested after contacting advisors they learned about from newspaper and radio ads.  Jenkins Decl., Ex. A, Baker Resp. to Interrog. No. 3; Gordon Resp. to Interrog. No. 3.  Moreover, minimal due diligence by Plaintiff Beynon would have revealed that his financial advisor had been barred from selling securities. Jenkins Decl., Ex. G, Beynon Dep. Tr. at 192:25–194:1.  And another of his financial advisors (and those used by the Gordons) had regulatory enforcement actions against them.  Jenkins Decl., Ex. G, Beynon Dep. Tr. at 197–200; Ex. C, A. Gordan Dep. Tr. at 106–07.

The reliance inquiry must also account for the investors' varying degrees of knowledge and sophistication.[8] For example, Plaintiff Beynon is a sophisticated investor with more than 30 years of investment experience.  Jenkins Decl., Ex. G, Beynon Dep. Tr. at 140.  He was drawn to Woodbridge because of "Ray Kay's" local

---

[8] *See Reddington Invs. Inc. v. Sec. Pac. Corp.*, 5 F.3d 539 (9th Cir. 1993) ("Justifiable reliance is determined in light of the plaintiff's intelligence and experience.") (internal citations omitted); *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 864 (2007), *as modified* (Dec. 26, 2007) ("The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience.")

radio ad, referring him to financial advisors Pamela Wilson and Ray Kay. *Id.* at 151–52, 183–84. Beynon met with Wilson and Kay three times, and they gave him a brochure that discussed Woodbridge. *Id.* at 183–84, 263–64. But although Beynon invested half a million dollars, he conducted no independent investigation or inquiry into Wilson, Kay, or Woodbridge. *Id.* at 202–04. Had he investigated, he would have discovered multiple regulatory notices involving Woodbridge. *Id.* at 192–96, 319–21. And had Beynon investigated Kay, he would have discovered that Kay was operating under a new name—presumably to avoid detection given an order from the SEC barring him from selling securities. *Id.* at 190.

At the other end of the spectrum is Plaintiff Shirley. She was an inexperienced investor who invested based solely on the advice of her niece, who happened to be an investment advisor. Jenkins Decl., Ex. A, Shirley Resp. to Interrog. No. 3. Although Shirley also invested in 2017, the reasonableness of her reliance may be different from Beynon's in light of the differences in their experience and sophistication. These differences illustrate the material variations in putative class members' circumstances and highlights the individualized inquiries the reliance element will require in this case.

As noted above, these individualized inquiries will also impact the statute of limitations—and, specifically, application of the discovery rule and equitable tolling—because those issues turn on an individual's knowledge and reasonable diligence. *See WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 156–57 (2015) (stating that, to invoke the discovery rule, a claimant must plead "'the inability to have made earlier discovery despite reasonable diligence'") (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)). Just as Plaintiffs cannot establish the reasonableness of reliance on a class-wide basis, they cannot establish a lack of actual or constructive knowledge as to all putative class members whose claims requiring tolling. These individual issues also preclude class certification.

### 2. The existence and breach of fiduciary duties and duties to disclose also present individual issues.

To prevail on their claim that Comerica aided and abetted a breach of fiduciary duty, Plaintiffs must prove "the existence of a fiduciary duty, its breach, and damages resulting therefrom." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1137 (C.D. Cal. 2003) (citing *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998)). The existence of a fiduciary relationship "is a question of fact, to be resolved by examining the facts and circumstances of a particular case." *Goodworth Holdings, Inc. v. Suh*, 99 F. App'x 806, 808 (9th Cir. 2004) (citing *In Re Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996)). And to the extent Plaintiffs contend that the fraud underlying their aiding-and-abetting-fraud claim was a fraud by omission, Plaintiffs must prove the existence of a duty to disclose. *Wood v. Motorola Mobility, Inc.*, No. C-11-04409-YGR, 2012 WL 892166, at *9 (N.D. Cal. Mar. 14, 2012). This too creates individual issues.

**First**, demonstrating that Woodbridge or Shapiro owed a fiduciary duty to investors will require proof specific to each investor individually. Many courts, including at least one case from this District, have declined to certify fiduciary-duty claims because individual inquiries were required to establish the duty owed to each putative class member.[9] In *Negrete*, for example, the defendants allegedly "intentionally target[ed] seniors for the sale of the annuities in question because seniors are especially vulnerable to deceptive marketing practices." 238 F.R.D. at 486. The plaintiffs alleged that the defendants "assumed fiduciary duties to members of the class by undertaking to act as a financial planners [*sic*]." *Id.* at 486–87. Seeking to try their fiduciary-duty claims as a class action, the plaintiffs argued that "proof of breach and causation are based upon Allianz's uniform omissions of several material facts and its

---

[9] *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 496 (C.D. Cal. 2006) (declining to certify class action because plaintiffs failed to demonstrate a fiduciary duty on a class-wide basis); *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 352 (D. Ariz. 2009); *Rothwell v. Chubb Life Ins. Co. of Am.*, 191 F.R.D. 25, 32 (D.N.H. 1998); *Kaser v. Swann*, 141 F.R.D. 337, 341 (M.D. Fla. 1991); *Barboza v. Ford Consumer Fin. Co.*, CIV.A. 94-12352-GAO, 1998 WL 148832, at *4 (D. Mass. Jan. 30, 1998).

failure to establish policies or procedures to fulfill its fiduciary obligations." *Id.* at 496. The court rejected the plaintiffs' arguments and denied certification on the fiduciary duty claim, explaining that

> unlike the claims which are predicated on common, standardized sales materials, plaintiffs have failed to demonstrate a class-wide means by which Allianz, its FMO and agents can prove that they [*sic*][10] foster[ed] a relationship of trust and confidence with the putative class members or purported to act as [their] financial planners. Accordingly, plaintiffs' breach of fiduciary duty claims necessarily require an examination of the in-person oral representations made to each class member.

*Id.* (alterations in original) (internal quotation marks and citations omitted).

Class certification is inappropriate here for the same reasons. As in *Negrete*, Plaintiffs in this case allege that a decentralized network of advisors sold Woodbridge investments to elderly people through misrepresentations and omissions about the nature of the investments. But as in *Negrete*, Plaintiffs here will have to show for each putative class member how Shapiro or Woodbridge "foster[ed] a relationship of trust and confidence with the putative class members." *Id.* at 486 (alteration in original) (internal quotation marks omitted). Having invested in Woodbridge through third-party advisors, Plaintiffs here sit in the same position with respect to Woodbridge and Shapiro as did the plaintiffs in *Negrete* with respect to the defendant and tortfeasor Allianz. Thus, Plaintiffs' underlying breach-of-fiduciary-duty claims "necessarily require an examination of the in-person oral representations made to each class member" by the third parties who convinced Plaintiffs to invest in Woodbridge.[11]  *See id.* at 496. As

---

[10] Comerica assumes the court must have added "can prove that they" by mistake. The clause should likely read "plaintiffs have failed to demonstrate a class-wide means by which Allianz, its FMO and agents foster[ed] a relationship of trust and confidence with the putative class members or purported to act as [their] financial planners."

[11] Rather than confronting the difficulty of establishing a "relationship of trust and confidence" where putative class members had no direct dealings with the tortfeasors, Plaintiffs simply wave it away by asserting that Shapiro's receipt of the investors' funds gave rise to a fiduciary duty to invest the money "as promised." Pls.' Mot. at 21, *citing Lorenz v. E. W. Bancorp, Inc.*, 2016 WL 199392, at *10 (C.D. Cal. Jan. 14, 2016). But in *Lorenz*, the plaintiffs did not use third-party intermediaries but instead dealt directly

discussed in section III.B.1 above, those representations varied.  Thus, individualized inquiries preclude certification of Plaintiffs' claim that Comerica aided and abetted a breach of fiduciary duty.

**Second**, individual issues also arise from Plaintiffs' obligation to prove that Shapiro or Woodbridge owed each investor a duty to disclose.  The existence of a duty to disclose material facts is an indispensable element of a claim for fraud by omission under California law.  *Wood*, 2012 WL 892166, at *8; *cf. Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").  Absent some relationship between the parties to support such a duty, the failure to disclose material facts is not actionable fraud.  *Wood*, 2012 WL 892166, at *9; *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).[12]  Here, because the putative class members made their investments through third-party advisors, the existence and nature of their relationships (if any) with Shapiro and Woodbridge cannot simply be assumed but must be established on an investor-by-investor basis. These individualized issues preclude certification of Plaintiffs' claim that Comerica aided and abetted fraud.

**Third**, individualized inquiries also arise from the breach element of the fiduciary-duty cause of action.  Plaintiffs contend that Shapiro breached his fiduciary duties to investors through "false offering materials, and by misappropriating,

---

with the tortfeasor and relied on the same statements on its websites. *See id.* at *1–*2. Plaintiffs point to no authority for recognizing a fiduciary relationship in circumstances akin to those here.

[12] For example, Shapiro and Woodbridge's failure to disclose that they were operating a Ponzi scheme does not, by itself, give rise to a fraud by omission. *See LiMandri*, 52 Cal. App. 4th at 338 ("We are aware of no authority supporting the imposition of additional liability on an intentional tortfeasor for failing to disclose his or her tortious intent before committing a tort."); *In re MRU Holdings Secs. Litig.*, 769 F. Supp. 2d 500, 515 (S.D.N.Y. 2011) (noting that it is "'rather circular' to say that . . . Defendants 'committed fraud by concealing their intent to commit fraud'") (quoting *MHC Inv. Co. v. Racom Corp.*, 209 F.R.D. 431, 434 (S.D. Iowa 2002))).

commingling, and otherwise misusing investor funds, and otherwise acting as alleged."
Dkt. No. 151, ¶ 251.  To the extent Plaintiffs' claim relies on false offering materials,
individualized issues preclude certification because, as discussed above, Plaintiffs
invested based on varying representations from third parties rather than uniform
"offering materials."

Furthermore, the Court cannot simply assume that all putative class members'
funds were in fact misappropriated, commingled, or misused.  To establish a breach on
that basis, Plaintiffs will have to make that showing for each putative class member, as
the putative class member would have to show in an individual action.  *See Stevens v.
Woodstock, Inc.*, 372 F. Supp. 654, 657 (N.D. Ill. 1974) (declining to certify fraud and
securities claims against brokers because "the wrongs alleged to have occurred . . ., *i.e.*,
commingling, unauthorized trading, allocations of profits and loss, and churning of
accounts" presented individualized issues unsuitable for class treatment).    These
individualized inquiries preclude certification of Plaintiffs' claim that Comerica aided
and abetted a breach of fiduciary duty.

### 3.    Plaintiffs cannot establish the causation element of their claims on a class-wide basis.

In California, aiding and abetting an intentional tort requires that the defendant
"*knows* the other's conduct constitutes a breach of duty and gives substantial assistance
or encouragement to the other to so act."  *Giron v. Hong Kong & Shanghai Bank Co.*,
2017 U.S. Dist. LEXIS 189087, at *21 (C.D. Cal. Nov. 15, 2017) (emphasis added)
(quoting *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1144 (2005)).
"[C]ausation is [also] an essential element of an aiding and abetting claim, i.e., plaintiff
must show that the aider and abettor *provided assistance* that was a *substantial factor*
in *causing the harm* suffered."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d
1101, 1135 (C.D. Cal. 2003) (emphasis added) (citing *Metge v. Baehler*, 762 F.2d 621,
624 (8th Cir.1985)).  Thus, for a plaintiff to show aiding and abetting, the plaintiff must
show that, *after* gaining actual knowledge of a tortfeasor's wrongful conduct, the

18

defendant substantially assisted a tortfeasor in committing a tort and that the assistance caused the injury resulting from the tort.

Plaintiffs' argument that Comerica had the requisite knowledge hinges on a number of alleged "red flags" that arose at different times during the class period.  For example, as "evidence of Comerica's knowledge," Plaintiffs point out that "[a]s early as January 2015, Comerica began receiving subpoenas from federal or state regulators concerning Woodbridge or Shapiro."  Dkt. No. 175 at 21.  Plaintiffs also note that "Comerica subsequently learned in November 2016 that the SEC was investigating Woodbridge" and that "[i]n August 2017, Comerica was served with the first of a series of . . . subpoenas . . . ."  *Id.* at 10.  Plaintiffs have not indicated when in time these purported "red flags" add up to show actual knowledge, whether 2015, 2016, or 2017.  Indeed, even as of August 22, 2017—when the SEC had access to much more information than Comerica—the SEC investigator conducting examinations under oath stated to a witness: "I don't want you to assume anything negative from our investigation. We haven't decided anything."  Jenkins Decl. Ex. M.

As a result, Plaintiffs cannot demonstrate a single actual knowledge date that would allow them to satisfy the causation element of their aiding-and-abetting-fraud claims on a class-wide basis.  The injury Plaintiffs claim to have suffered from the underlying alleged fraud is the investment they made in reliance on the alleged misrepresentations and omissions.  Dkt. No. 151, ¶ 19; Dkt. No. 175 at 24.  Thus, to show that Comerica aided and abetted fraud, a putative class member would have to show Comerica's actual knowledge arose before that class member invested in Woodbridge, such that Comerica's alleged substantial assistance could have caused the class member to invest. [13]  James Decl., ¶ 42.  Plaintiffs cannot make this showing on a

---

[13] To aid the Court's analysis, Comerica has provided the declaration of its expert Christopher James, who gives a number of hypothetical examples showing how a variation in the date of actual knowledge makes a considerable difference as to whether any particular plaintiff can succeed in proving liability.  James Decl., ¶¶ 43–48.

class-wide basis because the putative class members invested at different times.

The same problem precludes Plaintiffs from establishing the causation element of their aiding-and-abetting-breach-of-fiduciary-duty claim for the entire putative class. The injury Plaintiffs claim to have suffered from the underlying alleged breach of fiduciary duty is the alleged diversion of their invested funds to an improper purpose. Dkt. No. 151, ¶ 251; Dkt. No. 175 at 21.  Again, to show that Comerica aided and abetted the breach, a putative class member would have to show that Comerica's knowledge arose before the class member's invested funds were diverted to an improper purpose.  Declaration of Christopher James, ¶ 42.  Plaintiffs cannot make this showing either on a class-wide basis because different class members' invested funds were improperly diverted at different times.

To the extent Plaintiffs argue that Comerica is responsible for the entirety of the putative class's injury regardless of when Comerica's alleged actual knowledge arose, Plaintiffs are incorrect.  Comerica's liability, if proven, is not automatically co-extensive with the entirety of the Woodbridge scheme.  This is not a conspiracy case. "Unlike a conspirator, an aider and abettor does not 'adopt as his or her own' the tort of the primary violator." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003) (noting that "to prove a conspiracy claim, [a claimant] need not adduce proof that the purported conspirator did anything that caused or contributed to the harm") (emphasis omitted)).  "[C]ausation is an essential element of an aiding and abetting claim." *Id.*  Plaintiffs must establish that the substantial assistance Comerica provided after gaining actual knowledge caused *each and every* putative class member's injury. *Id.*

Whether and to what extent any putative class member was harmed by Comerica's alleged misconduct depends on whether they invested before or after the date on which Comerica purportedly acquired any "actual knowledge" and should have acted.  James Decl., ¶ 42.  If the class member invested *before* Comerica allegedly acquired "actual knowledge," then his or her potential injury would not be tied to

Comerica's alleged misconduct. *Id.* Once that investment occurred, there was nothing Comerica could have done to prevent the loss; if Woodbridge was, in fact, a Ponzi scheme—as Plaintiffs allege—then there was never enough money to pay all of the investors back. *Id.* at ¶¶ 42, 46. As a result, nothing Comerica could have done at that point would have enabled the class members to avoid their losses. *Id.* at ¶ 42.

For all these reasons, individual issues stand in the way of class certification, as they prevent Plaintiffs from satisfying several of the requirements of Rules 23(a) and (b)(3). This Court should deny the motion on that basis.

**C.    The Court should decline to certify the putative class because the named Plaintiffs are atypical of the proposed class and will inadequately represent the members of the putative class.**

Class representatives must fairly and adequately protect the interests of the putative class. Fed. R. Civ. P. 23(a)(4). Conflicts of interest among class members can keep plaintiffs from meeting 23(a)(4)'s adequacy requirement. *Jenkins v. NCAA*, 311 F.R.D. 532, 540 (N.D. Cal. 2015); *Berrien v. New Raintree Resorts Int'l*, LLC, 276 F.R.D. 355, 359 (N.D. Cal. 2011). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, the same problem that gives rise to individual issues of causation also create inevitable conflicts of interest among putative class members. As discussed above in Section III.B.3, each Plaintiff must show that Comerica's alleged actual knowledge of the underlying torts arose before the Plaintiff invested in Woodbridge or before the alleged breach of fiduciary duty. But because Plaintiffs contend Comerica's knowledge

of the alleged red flags accumulated over time, under Plaintiffs' theory, Plaintiffs have a higher probability of attempting to show that Comerica gained actual knowledge of the alleged underlying fraud at a later point in time rather than an earlier point in time. Plaintiffs who invested later will therefore argue that Comerica's purported actual knowledge arose at the latest possible point before the time they invested because doing so will allow such Plaintiffs to argue that the most alleged red flags were present—and thus increase the odds of potentially winning on liability.

The hypothetical scenarios discussed in the James Declaration illustrate this conflict.   James Decl., ¶¶ 45–47.   Plaintiff Hull will want to argue for an actual-knowledge date before his 2014 investments to be able to satisfy the causation requirement.   But Plaintiff Beynon will want to show that actual knowledge arose as late as possible before his 2017 investment to while maximizing the amount of purported red-flag evidence available to him.   But Mr. Beynon's position would prevent Mr. Hull from prevailing, and Mr. Hull's position reduces Mr. Beynon's chances of success under Plaintiffs' theory by reducing the amount of alleged red-flag evidence available.   This conflict further undermines Plaintiffs' ability to adequately represent the proposed class and shows that Plaintiffs' claims are atypical.

There is also another source of conflict, as well as unmanageability:  the presence of the Liquidation Trustee in this case. Although the trustee does not himself meet the class definition—and thus cannot himself be a member of the class—he has asserted that he controls 59% of the claims of Woodbridge investors by way of assignment. Dkt. No. 172, ¶ 27.  Presumably, the trustee does not know what the assignors were told about their investments, how they learned about Woodbridge, and what, if any, investigation the assignors conducted before investing—all of which would be necessary for the assignors to establish liability.

Moreover, the trustee's presence cedes considerable control of this case to a singular, unaccountable third party who has not met and cannot meet the requirements of adequacy and typicality.  To be sure, the trustee has agreed to be represented by class

counsel.  Still, however, the trustee appears to be heavily influencing the litigation by having its retained counsel, Levine Kellogg, seek appointment to the Executive Committee for the class, even though Levine Kellogg previously represented no named Plaintiff.   Dkt. No. 175 at 1:17–198, 15:10–11.   Moreover, Levine Kellogg has conducted 11 of the 16 depositions of Comerica's personnel.   Jenkins Decl., ¶ 2. Respectfully, these facts evidence that the trust and its attorneys are substantially influencing the direction of this litigation.

Adding the trust as a class representative is no solution because the trustee is not a member of the class and cannot serve as a class representative. *Cf. Dechert v. Cadle Co.*, 333 F.3d 801, 803–04 (7th Cir. 2003) (vacating district court's class certification order appointing a Chapter 7 trustee as the class representative in a Fair Debt Collection Practices Action); *Griffith v. Javitch, Block & Rathbone, LLP*, 358 B.R. 338, 341–42 (S.D. Ohio 2007) ("[A] Chapter 7 trustee is not an adequate representative for a class of non-debtors, even if the class includes the debtor."). The presence of the trustee makes this case uniquely ill-suited for class certification.

### D.    Plaintiffs cannot meet the superiority requirement, given the size of the named Plaintiffs' individual claims.

A class action would be an inferior means of resolving the present claims because, in addition to the manageability issues discussed above, the members of the putative class all could have filed claims in the Woodbridge bankruptcy proceeding, and the named Plaintiffs' claims are large enough to proceed without a class action, either in individual suits or in a collective one.

"[S]uperiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."[14]   Here, because putative class

---

[14] *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005); *see In re Blockbuster Inc.*, 441 B.R. 239, 242 (Bankr. S.D.N.Y. 2011).  As a result, there is no need to resort to a class action. *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R.

members could have sought relief in the Woodbridge bankruptcy proceeding, Plaintiffs cannot show that a class action is superior under Rule 23.

Moreover, this is not a case in which the monetary value of claims would deter Plaintiffs from seeking relief through individual lawsuits.  Indeed, except for the Landmans, who invested $50,000 in Woodbridge, Plaintiffs each invested well over $100,000 in Woodbridge. Dkt. No. 151 ¶¶ 9–16. Thus, the Court should deny Plaintiffs' Motion because a class action is not superior to other means of adjudicating Plaintiffs' claims, such as individual actions. *See Cole v. Gene by Gene, Ltd.*, 322 F.R.D. 500, 508 (D. Ala. 2017) (finding an individual claim for $100,000 "weigh[ed] strongly against class certification"); *Stoudt v. E.F. Hutton & Co.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988) (finding superiority was defeated where the plaintiff "possesse[d] sufficient wealth to benefit from a tax shelter and [sought] recovery in the amount of 'at least' $60,000").

The high monetary value of individual claims here is even more troublesome when considering the numerous individualized inquiries that pervade Plaintiffs' claims and the intraclass conflicts of interest, which make a class action extremely difficult to manage.  *See Fox-Quamme v. Health Net Health Plan of Or., Inc.*, 2017 U.S. Dist. LEXIS 35964, at *29 (D. Or. March 9, 2017) (finding class action to be inferior because of individualized questions).  A class action is not a superior means of resolving the claims here.

### E.     The proposed class is not reasonably ascertainable.

The proposed class definition makes the membership of the class not reasonably ascertainable.  Unlike in a traditional investor class action—where the only defining characteristic is when members bought and sold their investments—the class definition here incorporates both an investment date and the requirement that the class member *not* have "recovered the principal they invested in Woodbridge." Dkt. No. 175 at 13:3–

616, 622 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ("Though class treatment may be beneficial with other civil actions in consolidating the adjudication of common issues, this advantage disappears in the context of a bankruptcy.").

9.  But Plaintiffs have not proposed any simple, administrable manner for the Court itself to identify who meets the latter category.  Instead, they are entirely dependent on the Liquidation Trustee to identify who meets that definition.  *See* Dkt. No. 172, Goldberg Decl., ¶¶ 27, 30 and Ex. E.  At his deposition, the trustee could not recall what instructions he gave to his professionals that enabled him to assert that the class has 7,940 members, did not know which of the investors in Exhibit E (which lists 244 more investors) were not included in the 7,940 estimate, did not know if the identified 7,940 investors included investors whose claims the trust is disputing or disallowing  or those whose return of principal had been clawed back by the Debtor in preference actions. Jenkins Decl., Ex. J, Goldberg Dep. Tr. 126:7–13, 110:2–112:14; 120:12–121:14; 141:4–14; 170:19–173:18; 173:19–25.  The trustee also could not deny that nothing in the class definition excluded the class members' financial advisors who invested in Woodbridge, even though the trustee has sued hundreds of such advisors for fraud and has labeled their claims as illegitimate.  *Id.* at 111:24–112:14; *see also* Jenkins Decl., Ex. N (Ferne and Barry Kornfeld Proof of Claim), Ex. O (*Goldberg v. Kornfeld* Comp., ¶ 59, and Ninth Claim for Fraud), Ex. 16 (*Goldberg v. Kornfeld* Judgment).

This  flaw  in  the  class  definition  cannot  be  fixed,  nor  the  conflicts  and ascertainability  problems  it  creates,  ignored.   Indeed,  it  is  likely  that  some  class members  will  find  themselves  litigating  alongside  the  very  financial  advisors  who misled them in the first place.  This problem too is fatal to Plaintiffs' motion.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated:  May 14, 2021

Respectfully submitted,

**WINSTON & STRAWN LLP**

By:  _/s/ Gayle I. Jenkins_
Gayle I. Jenkins (SBN 168962)
333 South Grand Avenue Suite 3800
Los Angeles, CA 90071
Telephone: (213) 615-1700
Email: gjenkins@winston.com

Thomas B. Walsh, IV (_pro hac vice_)
2121 N. Pearl St. Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Email: twalsh@winston.com

_Counsel for Defendant Comerica Bank_

## <u>CERTIFICATE OF SERVICE</u>

I, Gayle I. Jenkins, hereby certify that on May 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document upon confirmation of e-filing.

  _/s/ Gayle I. Jenkins_
Gayle I. Jenkins

DEFENDANT COMERICA BANK'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 2:19-CV-3439-DMG-KS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28