Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Trevor T. Tan (State Bar No. 281045)
Makenna Cox (State Bar No. 326068)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dgirard@girardsharp.com
jelias@girardsharp.com
ttan@girardsharp.com
mcox@girardsharp.com

Interim Lead Class Counsel

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| IN RE WOODBRIDGE INVESTMENTS LITIGATION | Case No. 2:18-CV-00103-DMG (MRWx) |
| | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| | REDACTED VERSION FILED UNDER SEAL PURSUANT TO ORDERS OF OCTOBER 1 AND DECEMBER 5, 2019, AND APRIL 23, 2021 [DOC. # 89, 118, 174] |
| | Date: June 25, 2021 Time: 10:00 a.m. Courtroom: 8C, Eighth Floor Judge: Honorable Dolly M. Gee |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT...............................................................................................2

     A.    The Requirements of Rule 23(b)(3) Are Met. ..................................2

          1.    Comerica Has Not Met its Burden of Showing That Foreign Law Governs These Investor Claims. ........................................2

          2.    Reliance and Causation Present Common Issues. ...................10

              a.    Reliance Can Be Presumed Under the Circumstances. ......................................................10

              b.    Causation Does Not Present Individualized Issues. .......15

          3.    Comerica's Statute of Limitations Defense Does Not Defeat Certification. .............................................................18

          4.    The Claim for Aiding and Abetting Breach of Fiduciary Duty Will Not Require Individualized Inquiries. ...................19

          5.    Individual Damage Calculations Do Not Defeat Predominance.............................................................................21

          6.    Bankruptcy Court Is Not a Suitable Alternative Forum for Resolving the Investors' Claims Against Comerica, and the Amount of Their Losses Does Not Affect the Superiority of Class Treatment.........................................................................21

     B.    The Requirements of Rule 23(a) Are Met. .........................................23

          1.    Plaintiffs' Claims Are Typical of the Class and They Will Adequately Protect the Class's Interests. ...............................23

          2.    Class Membership Can Be Readily Determined Based on the Liquidation Trust's Records. .............................................25

III.  CONCLUSION ..........................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*
  731 F.3d 952 (9th Cir. 2013) ........................................................19

*ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.*
  957 F. Supp. 1308 (S.D.N.Y. 1997)................................................17

*Alger v. FCA US LLC*
  334 F.R.D. 415 (E.D. Cal. 2020) ...................................................8

*Allen v. Hyland's Inc.*
  300 F.R.D. 643 (C.D. Cal. 2014) ............................................ 3, 4, 5

*Beery v. State Bar*
  43 Cal. 3d 802 (1987)....................................................................19

*Bentley v. United of Omaha Life Ins. Co.*
  2018 WL 3357458 (C.D. Cal. May 1, 2018)..................................22

*Bohn v. Pharmavite, LLC*
  2012 WL 8898669 (C.D. Cal. May 16, 2012)..................................3

*Boyd v. Bank of Am. Corp.*
  300 F.R.D. 431 (C.D. Cal. 2014) ...................................................23

*Branch Banking & Tr. Co. v. Lighthouse Fin. Corp.*
  2005 WL 1995410 (N.C. Super. July 13, 2005) ..............................6

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017) ............................................... 21, 25

*Bruno v. Eckhart Corp.*
  280 F.R.D. 540 (C.D. Cal. 2012) ....................................................9

*Cabot E. Broward 2 LLC v. Cabot*
  2018 WL 2006762 (S.D. Fla. Mar. 21, 2018) ......................... 2, 21

*CadleRock Joint Venture, L.P. v. Royal Indem. Co.*
  2012 WL 511570 (N.D. Ohio Feb. 15, 2012).................................10

*Caldera v. Am. Med. Collection Agency*
  320 F.R.D. 513 (C.D. Cal. 2017)...................................................19

*Chang v. JPMorgan Chase Bank, N.A.*
   845 F.3d 1087 (11th Cir. 2017) .................................................................7, 8

*Chang v. Wells Fargo Bank, N.A.*
   2020 WL 1694360 (N.D. Cal. Apr. 7, 2020) ...............................................20

*Chavez v. Blue Sky Nat. Beverage Co.*
   268 F.R.D. 365 (N.D. Cal. 2010) ..................................................................3

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
   68 Cal. App. 4th 445 (1998) ........................................................................19

*Ciuffitelli v. Deloitte & Touche LLP*
   2019 WL 1441634 (D. Or. Mar. 19, 2019)
   *report & rec. adopted*, 2019 WL 2288432 (D. Or. May 29, 2019) ..............18

*Clay v. CytoSport, Inc.*
   2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) .................................................3

*Clothesrigger, Inc. v. GTE Corp.*
   191 Cal. App. 3d 605 (1987) .........................................................................4

*Cole v. Asurion Corp.*
   267 F.R.D. 322 (C.D. Cal. 2010) ........................................................... 11, 21

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*
   502 F.3d 91 (2d Cir. 2007) ...........................................................................24

*Daniel v. Ford Motor Co.*
   2016 WL 8077932 (E.D. Cal. Sept. 23, 2016) ......................................... 15, 16

*Dechert v. Cadle Co.*
   333 F.3d 801 (7th Cir. 2003) ........................................................................24

*Dow Chem. Co. v. Mahlum*
   114 Nev. 1468
   970 P.2d 98 (1998) .........................................................................................6

*Dow Chem. Co. v. Mahlum*, 115 Nev. 13
   973 P.2d 842 (1999) .......................................................................................6

*Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*
   2019 WL 489095 (D. Nev. Feb. 7, 2019) ......................................................6

iii

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

*Eidson v. Medtronic, Inc.*
   40 F. Supp. 3d 1202 (N.D. Cal. 2014) ............................................................14

*El Camino Res., LTD. v. Huntington Nat'l Bank*
   722 F. Supp. 2d 875 (W.D. Mich. 2010) ...........................................................8

*Engalla v. Permanente Med. Grp., Inc.*
   15 Cal. 4th 951 (1997) ...................................................................................11

*Evans v. ZB, N.A.*
   779 F. App'x 443 (9th Cir. 2019) ....................................................................20

*Facciola v. Greenberg Traurig LLP*
   281 F.R.D. 363 (D. Ariz. 2012) ......................................................................18

*Falco v. Nissan N. Am. Inc.*
   2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) ............................................ 15, 18

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*
   326 F.R.D. 592 (N.D. Cal. 2018) ....................................................................10

*Flack v. Nutribullet, L.L.C.*
   2019 WL 1596652 (C.D. Cal. Apr. 12, 2019) ...................................................3

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*
   2015 WL 4776932 (C.D. Cal. May 27, 2015) .................................................23

*GES, Inc. v. Corbitt*
   117 Nev. 265
   21 P.3d 11 (2001) .............................................................................................6

*Getty v. Harmon*
   1998 WL 919368 (W.D. Wash. Oct. 23, 1998) ..............................................12

*Giron v. Hong Kong & Shanghai Bank Co.*
   2016 WL 6662726 (C.D. Cal. June 29, 2016) ................................................20

*Gonzales v. Lloyds TSB Bank*
   2007 WL 9711433 (C.D. Cal. May 2, 2007) ........................... 2, 12, 14, 18, 20, 21, 22

*Heckmann v. Ahmanson*
   168 Cal. App. 3d 119 (1985) ..........................................................................18

*Hurtado v. Super. Ct.*
   11 Cal. 3d 574 (1974) .......................................................................................3

iv

*Ileto v. Glock Inc.*
    349 F.3d 1191 (9th Cir. 2003)..........................................................................8

*In re Arizona Theranos, Inc., Litig.*
    2020 WL 5435299 (D. Ariz. Mar. 6, 2020)...................................................21

*In re Checking Acct. Overdraft Litig.*
    275 F.R.D. 666 (S.D. Fla. 2011) .....................................................................4

*In re Daisy Sys. Corp.*
    97 F.3d 1171 (9th Cir. 1996) .........................................................................19

*In re Ephedra Prod. Liab. Litig.*
    329 B.R. 1 (S.D.N.Y. 2005) ...........................................................................22

*In re First Alliance Mortg. Co.*
    471 F.3d 977 (9th Cir. 2006) ........................................................... 7, 14, 17

*In re Glumetza Antitrust Litig.*
    336 F.R.D. 468 (N.D. Cal. 2020) ...................................................................24

*In re Heritage Bond Litigation*
    2004 WL 1638201 (C.D. Cal. July 12, 2004)................................................11

*In re Korean Ramen Antitrust Litig.*
    2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ...................................................4

*In re Lenovo Adware Litig.*
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .......................................... 15, 16

*In re MacBook Keyboard Litig.*
    2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) .................................................15

*In re MF Glob. Holdings Ltd. Inv. Litig.*
    2015 WL 4610874 (S.D.N.Y. July 20, 2015) ................................................24

*In re Online DVD-Rental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015)..........................................................................24

*In re Rohnert Park Auto Parts, Inc.*
    113 B.R. 610 (B.A.P. 9th Cir. 1990)...............................................................22

*In re Wash. Mut. Mortg.-Backed Sec. Litig.*
    276 F.R.D. 658 (W.D. Wash. 2011).................................................................23

v

*In re Woodbridge Invs. Litig.*
   2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ......................................................7

*In re Zillow Grp., Inc. Sec. Litig.*
   2020 WL 6318692 (W.D. Wash. Oct. 28, 2020) ...............................................23

*Jenson v. Fiserv Tr. Co.*
   256 F. App'x 924 (9th Cir. 2007) ........................................... 2, 12, 18, 20

*Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real
   Estate Corp.*
   281 F.R.D. 422 (C.D. Cal. 2012) ........................................... 2, 18, 19

*Jordan v. Paul Fin., LLC*
   285 F.R.D. 435 (N.D. Cal. 2012)......................................................24

*Katz v. China Century Dragon Media, Inc.*
   287 F.R.D. 575 (C.D. Cal. 2012) ......................................................18

*Kearney v. Salomon Smith Barney, Inc.*
   39 Cal. 4th 95 (2006) ......................................................4

*Koss Corp. v. Park Bank*
   385 Wis. 2d 261 (2019) ......................................................6

*Ladore v. Ecolab, Inc.*
   2012 WL 12861141 (C.D. Cal. Apr. 11, 2012)..................................23

*Lee v. Certainteed Corp.*
   123 F. Supp. 3d 780 (E.D.N.C. 2015) ......................................................6

*LiMandri v. Judkins*
   52 Cal. App. 4th 326 (1997) ......................................................12

*LL B Sheet 1, LLC v. Loskutoff*
   362 F. Supp. 3d 804 (N.D. Cal. 2019).................................................15

*Lopez v. The Hillshire Brands Co.*
   41 Cal. App. 5th 679 (2019)
   *reh'g denied* (Nov. 21, 2019) ......................................................8

*Lorenz v. E. W. Bancorp, Inc.*
   2016 WL 199392 (C.D. Cal. Jan. 14, 2016) ......................................20

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

*Martinez v. Knight Transp., Inc.*
  2018 WL 6308110 (E.D. Cal. Dec. 3, 2018) ..................................................4

*Mazza v. American Honda Motor Co., Inc.*
  666 F.3d 581 (9th Cir. 2012) ......................................................... 3, 4, 12

*McArdle v. AT&T Mobility LLC*
  2018 WL 6803743 (N.D. Cal. Aug. 13, 2018) .............................................12

*McMillan By & Through McMillan v. Mahoney*
  99 N.C. App. 448
  393 S.E.2d 298 (1990) ...................................................................................6

*Meijer, Inc. v. Abbott Lab'ys*
  2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ............................................24

*Meister v. Mensinger*
  230 Cal. App. 4th 381 (2014) .....................................................................21

*Melendres v. Arpaio*
  784 F.3d 1254 (9th Cir. 2015) ......................................................................5

*Mirkin v. Wasserman*
  5 Cal. 4th 1082 (1993)................................................................................14

*Mitchell v. Gonzales*
  54 Cal. 3d 1041 (1991) .................................................................................8

*Molock v. Whole Foods Mkt., Inc.*
  297 F. Supp. 3d 114 (D.D.C. 2018)
  *aff'd*, 952 F.3d 293 (D.C. Cir. 2020) ..........................................................5

*Navarrete v. Meyer*
  237 Cal. App. 4th 1276 (2015) ...................................................................18

*Negrete v. Allianz Life Ins. Co. of N. Am.*
  238 F.R.D. 482 (C.D. Cal. 2006)................................................................20

*Neilson v. Union Bank of California, N.A.*
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) .....................................................17

*Norris-Wilson v. Delta-T Grp., Inc.*
  270 F.R.D. 596 (S.D. Cal. 2010).................................................................22

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

*Novoa v. GEO Grp., Inc.*
   2019 WL 7195331 (C.D. Cal. Nov. 26, 2019) ..........................................................22

*OCM Opportunities Principal Fund, L.P. v. CIBC World Markets Corp.*
   157 Cal. App. 4th 835 (2007) ..........................................................................14

*Onions Etc., Inc. v. Z & S Fresh, Inc.*
   603 F. App'x 567 (9th Cir. 2015) ....................................................................14

*Penrose v. Buffalo Trace Distillery, Inc.*
   2018 WL 705054 (E.D. Mo. Feb. 5, 2018) ............................................................5

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985) ......................................................................................3

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*
   2016 WL 5920345 (C.D. Cal. June 23, 2016) ......................................................13

*Poulos v. Caesars World, Inc.*
   379 F.3d 654 (9th Cir. 2004) ..........................................................................12

*Pro-Pac, Inc. v. WOW Logistics Co.*
   721 F.3d 781 (7th Cir. 2013) ............................................................................6

*Rilley v. MoneyMutual, LLC*
   329 F.R.D. 211 (D. Minn. 2019) ........................................................................2

*Robinson v. Unilever United States, Inc.*
   2018 WL 6136139 (C.D. Cal. June 25, 2018) ........................................................5

*Sawyer v. Bill Me Later, Inc.*
   2010 WL 11492736 (C.D. Cal. Dec. 14, 2010) ......................................................5

*Schuh v. HCA Holdings, Inc.*
   2014 WL 4716231 (M.D. Tenn. Sept. 22, 2014) ..................................................23

*SEC v. Riel*
   282 F. Supp. 3d 499 (N.D.N.Y. 2017) ..............................................................11

*Seeger v. Odell*
   18 Cal. 2d 409 (1941) ....................................................................................14

*Sevilla v. Aaron's, Inc.*
   2019 WL 2879874 (C.D. Cal. Mar. 25, 2019) ....................................................25

viii

*Shahinian v. Kimberly-Clark Corporation*
   2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) ...........................................5

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*
   554 U.S. 269 (2008) .........................................................................24

*Stevens v. Woodstock, Inc.*
   372 F. Supp. 654 (N.D. Ill. 1974) ......................................................20

*Stokes v. Henson*
   217 Cal. App. 3d 187 (1990) .............................................................13

*Takiguchi v. MRI Int'l, Inc.*
   2016 WL 1091090 (D. Nev. Mar. 21, 2016).......................................... 2, 14

*True Health Chiropractic, Inc. v. McKesson Corp.*
   896 F.3d 923 (9th Cir. 2018) ............................................................19

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*
   2017 WL 2655678 (C.D. Cal. June 15, 2017)......................................24

*Walco Invs., Inc. v. Thenen*
   168 F.R.D. 315 (S.D. Fla. 1996)........................................................11

*Wash. Mut. Bank v. Super. Ct.*
   24 Cal. 4th 906 (2001) ......................................................................3

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*
   917 So. 2d 368 (Fla. Dist. Ct. App. 2005)............................................7

**Other Authorities**

2 Newberg on Class Actions § 4:67 (5th ed. 2014)......................................22

Draft Restatement (Third) of Conflict of Law § 2.08(1) ............................. 9, 10

Newberg on Class Actions § 3.58 (5th ed. 2011)........................................24

Restatement (Second) of Conflict of Laws § 11 .........................................9

Restatement (Second) of Conflict of Laws § 188(2)(e)................................9

Restatement (Second) of Torts § 876 .....................................................6

*Symeon Symeonides*, The Third Conflicts Restatement's First Draft on Tort Conflicts
   92 Tulane L. Rev. 1 (2017)................................................................10

ix

## I.    **INTRODUCTION**

Plaintiffs' claims against Comerica for aiding and abetting Robert H. Shapiro's Woodbridge investment fraud will turn on common proof and generate common answers to common questions. Plaintiffs' proof that Comerica knowingly assumed its place at the vortex of the Woodbridge fraud will not vary from one investor to the next. Comerica received, from 2015 to 2017, ███████████ subpoenas from regulators and law enforcement agencies for Woodbridge records and repeated orders mandating that Woodbridge cease and desist from violating state securities laws. The SEC's forensic accountant found all the information needed to show the fraud in Comerica's banking records. In 2011, a year before the Ponzi scheme began, Comerica employees reviewed a report detailing dozens of liens and judgments against Shapiro, identifying an earlier real estate scam where he admitted to diverting investor funds. Once the Woodbridge Ponzi scheme got underway, Comerica's automated systems triggered over 100 fraud alerts that notified bank personnel of highly suspicious activity in the Woodbridge accounts. The bank commingled investor money and looked the other way as Shapiro diverted hundreds of millions of dollars to vaguely denominated attorney trust accounts and lavish personal expenditures. Comerica recognized Shapiro as a "High End client," preserving a lucrative relationship by ████████████████████, indulging requests to "move funds around" and set up a "sweep account" to prevent overdrafts, even after Comerica knew Woodbridge was under ██████████ investigation.

Comerica's efforts to identify individual issues are unavailing. First, common questions of law predominate. Comerica does not dispute that California aiding and abetting law is co-extensive with that of numerous other states. Comerica references only a handful of states and points to only minor, non-outcome determinative differences. Second, Comerica's focus on when class members invested is misplaced. Plaintiffs will argue Comerica had actual knowledge from the outset. If the jury fixes liability at some point after the start of the class period, Comerica will be liable for later investments only. And contrary to the opinions of Comerica's expert Christopher James,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

who offers "hypothetical examples" untethered to authority (Opp'n at 19 n.13),[1] the Court can presume no investor would have invested had they known what Comerica knew about Woodbridge. Comerica has offered no evidence to the contrary. The investment records held by the Liquidation Trustee, Michael I. Goldberg will identify class members and prove their damages if Comerica is found liable. Mr. Goldberg's interests as certain investors' assignee in recovering their losses are identical to those of every other investor.

   As Plaintiffs have submitted admissible evidence satisfying each element of Rule 23, the Court should certify the proposed investor class.

## II.   ARGUMENT

### A.   The Requirements of Rule 23(b)(3) Are Met.

   In addition to presenting substantial evidence demonstrating that their aiding and abetting claims are subject to common proof (Mot. at 20-24), Plaintiffs have identified decisions certifying aiding and abetting claims in analogous contexts. *See Jenson v. Fiserv Tr. Co.*, 256 F. App'x 924, 926 (9th Cir. 2007); *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 434 (C.D. Cal. 2012); *Gonzales v. Lloyds TSB Bank*, 2007 WL 9711433, at *4 (C.D. Cal. May 2, 2007); *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090, at *11 (D. Nev. Mar. 21, 2016); *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 2006762, at *6 (S.D. Fla. Mar. 21, 2018); *Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684, 698 (S.D. Fla. 2008); *Rilley v. MoneyMutual, LLC*, 329 F.R.D. 211, 219 (D. Minn. 2019). Comerica fails even to mention, let alone distinguish, *any* of these aiding and abetting cases and presents no evidence undermining Plaintiffs' evidentiary showing that common question predominate.

### 1.   Comerica Has Not Met its Burden of Showing That Foreign Law Governs These Investor Claims.

   The Court can apply California law to the claims of non-California investors based

---

[1] Plaintiffs are separately moving to strike Professor James's expert declaration that asserts legal conclusions within the province of the Court.

2

on California's "significant" interest in deterring tortious conduct within its borders, no matter who is harmed. *See Flack v. Nutribullet, L.L.C.*, 2019 WL 1596652, at *4 (C.D. Cal. Apr. 12, 2019). Comerica does not dispute that Plaintiffs have met their burden of showing that California has sufficient contacts with the claims of each class member such that due process is not offended by subjecting Comerica to California law. *See Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 920-21 (2001); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). For this reason, under California's governmental interest test, Comerica bears the burden of establishing that foreign law should apply. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 657 (C.D. Cal. 2014). Comerica has not met that burden.

As an initial matter, Comerica overreads *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), in arguing against a nationwide class. In *Mazza*, the relevant contacts with California were less extensive and the Ninth Circuit limited its holding to the situation at hand. *Id.* at 594 ("Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."). Hence "*Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis." *Bohn v. Pharmavite, LLC*, 2012 WL 8898669, at *2 (C.D. Cal. May 16, 2012). Before and after *Mazza*, courts have held that California law may properly govern all claims arising from wrongful conduct within the state. *See, e.g.*, *Clay v. CytoSport, Inc.*, 2018 WL 4283032, at *17 (S.D. Cal. Sept. 7, 2018); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

Moreover, the false advertising laws that supplied the basis for the decision in *Mazza* are not at issue here. Comerica has not demonstrated how or why any jurisdiction would have an "interest in denying full recovery to its residents" for the tort claims in this case. *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 581 (1974). Comerica merely asserts that applying California law would impair the ability of other states to "foster commerce" within their borders. Opp'n at 6 (quoting *Mazza*, 666 F.3d at 593). That is implausible. In contrast to

3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

*Mazza*, where the panel majority found that applying California's more stringent false advertising laws would have undermined other states' ability to set the "optimal balance between protecting consumers and attracting foreign businesses," 666 F.3d at 592-93, applying California law in this case will not "thwart" any state's public policy. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 127 (2006). No state condones fraud against investors, and "California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery." *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 615 (1987); *see Martinez v. Knight Transp., Inc.*, 2018 WL 6308110, at *9 (E.D. Cal. Dec. 3, 2018) (defendant failed to meet its burden on choice of law by failing to demonstrate "policies that would be advanced by applying one state's law over another").

Setting aside Comerica's reflexive arguments against application of California law to the claims of all investors nationwide, Comerica offers no persuasive opposition to Plaintiffs' alternative proposal that the Court apply California law to the claims of investors in the other 43 jurisdictions that recognize the substantially similar elements for aiding and abetting. Mot. at 19-20. Comerica does not dispute that the Court can certify a multistate class to which California law applies because the relevant state laws are "the same in functional content." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011)); *see, e.g.*, *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *22 (N.D. Cal. Jan. 19, 2017). Instead, Comerica contends that the elements of the underlying torts differ between some states and criticizes Plaintiffs for not attempting to show "uniformity in [those] elements." Opp'n at 9. But it is Comerica rather than any Plaintiff that bears the burden of establishing the existence of material conflicts of law. *See Allen*, 300 F.R.D. at 658 (defendant wrongly suggested that plaintiff had the burden of showing similarities); *Korean Ramen*, 2017 WL 235052, at *22 (stressing that defendants bear the burden of identifying material conflicts).

Comerica's argument fails the first step of California's governmental interest test by omitting a comprehensive state-law analysis, and the cases cited in Comerica's brief

---

4

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

reveal no *material* conflict in states' aiding-and-abetting law. *See Sawyer v. Bill Me Later, Inc.*, 2010 WL 11492736, at *6 (C.D. Cal. Dec. 14, 2010) (applying California law to aiding-and-abetting claims based on finding no material conflict between California and Utah law); *see also Allen*, 300 F.R.D. at 658 (applying California law class-wide where defendant did not show how "the laws of the 50 states are markedly different" and "failed to provide case-specific analysis as to the second and third prongs of the governmental interest test") (quotation marks and citation omitted). Instead of identifying any material difference, Comerica cites *Shahinian v. Kimberly-Clark Corporation*, a case that highlights the inadequacy of Comerica's choice-of-law analysis. The defendant there submitted a "50-state survey describing variations" in state law. 2016 WL 11722907, at *18 (C.D. Cal. Nov. 14, 2016). Comerica offers no comprehensive survey and fails to explain how, under the facts of this case, any of the state-law differences it asserts would preclude a finding that it is liable for aiding and abetting.

Other than a brief and misguided standing challenge,[2] Comerica suggests that several states in Plaintiffs' Appendix do not recognize the tort of aiding and abetting. Opp'n at 7. But the bank has identified no error in Plaintiffs' state-law appendix setting out the 44 jurisdictions that have recognized the actual knowledge and substantial assistance elements.

Comerica is correct that South Carolina appears to recognize aiding and abetting only

---

[2] Comerica's "focus on standing to assert that Plaintiffs cannot represent putative class members from other states is misplaced." *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 130 (D.D.C. 2018) *aff'd*, 952 F.3d 293 (D.C. Cir. 2020). Comerica's out-of-circuit case holding that the named plaintiffs lacked standing to pursue claims under other states' laws is against the weight of authority. Opp'n at 10. As this Court recognized, "any issues regarding the relationship between the class representative and the passive class members . . . are relevant only to class certification, *not* to standing." *Robinson v. Unilever United States, Inc.*, 2018 WL 6136139, at *4 (C.D. Cal. June 25, 2018) (emphasis added) (quoting *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015); *see also Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 705054, at *5 (E.D. Mo. Feb. 5, 2018) ("The Court finds persuasive the majority of the authorities that follow the class certification approach"). Plaintiffs here are both typical and adequate for the reasons set forth in their Motion and in Section II.B below.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

of breach of fiduciary duty, but that just means South Carolina investors would need to be excluded if the Court limits its certification to a multistate class with regard to Plaintiffs' claim of aiding and abetting fraud. For North Carolina, Comerica identifies at most a split in authority,[3] and Nevada law recognizes liability for aiding and abetting. *See Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1490, 970 P.2d 98, 112 (1998) (recognizing aiding and abetting "fraudulent misrepresentation" claim but concluding that the evidence did not support the jury's verdict), *abrogated on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001); *see also Dow Chem. Co. v. Mahlum*, 115 Nev. 13, 15, 973 P.2d 842, 842 (1999). In Comerica's Nevada case, the court construed the plaintiff's "aiding and abetting fiduciary fraud" claim as a claim for aiding and abetting breach of fiduciary duty while outlining substantially similar elements as under California law. *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, 2019 WL 489095, at *3 (D. Nev. Feb. 7, 2019). Wisconsin law also recognizes aiding and abetting. *See Pro-Pac, Inc. v. WOW Logistics Co.*, 721 F.3d 781, 786 (7th Cir. 2013). The Wisconsin Supreme Court case cited by Comerica, however, does not even address aiding and abetting liability. *Koss Corp. v. Park Bank*, 385 Wis. 2d 261 (2019).

Among the states that recognize the aiding and abetting tort, Comerica asserts "substantial variation" (Opp'n at 8-9) yet purports to identify differences in only two states, Florida and Michigan. These states' laws will apply identically to the facts connected with Comerica's assistance of the Woodbridge fraud. Comerica argues that its liability under Florida law will differ because its receipt of "red flags" will not give rise to liability for

---

[3] *See Lee v. Certainteed Corp.*, 123 F. Supp. 3d 780, 796-99 (E.D.N.C. 2015) (discussing several "authorities [that] support that Section 876 has indeed been recognized as North Carolina law by the state's intermediate court, but that court is reluctant to extend it to factual scenarios outside of those specifically provided in the Restatement or in established case law."); *McMillan By & Through McMillan v. Mahoney*, 99 N.C. App. 448, 451, 393 S.E.2d 298, 300 (1990) (citing Restatement (Second) of Torts § 876); *cf. Branch Banking & Tr. Co. v. Lighthouse Fin. Corp.*, 2005 WL 1995410, at *8 (N.C. Super. July 13, 2005) (trial court arguing that an aiding and abetting claim is redundant and should not exist).

6

furthering Shapiro's fraud. But Florida's courts have recognized that aiding-and-abetting law is substantially identical across jurisdictions. *See ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005). Moreover, in this case, Comerica did far more than ignore warnings, and "[t]he fact that the plaintiffs in that case adduced more evidence than just the 'ignored' red flags does not diminish the Ninth Circuit's clear statement that unheeded red flags 'are enough to establish actual knowledge.'" *In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020). The bank's receipt of each Woodbridge-related regulatory subpoena ███████ ████████████████████████████████████████████████████████████ ███████████████████████████████████. *See* Supplemental Declaration of Daniel C. Girard, Ex. K (Deposition of ████████ at 52-53); Girard Decl., Ex. 9; Suppl. Girard Decl., Exs. 27, 28 (COM0236632; COM0236415 ██████ ███████████ Comerica's receipt of subpoena from the Florida Bureau of Financial Investigations, ████████████████████████████████████████ ████████████████████████████████████████████████████.

In *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087 (11th Cir. 2017), the court relied in part on the Ninth Circuit's decision in *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006), to conclude that the plaintiff sufficiently stated a claim for aiding and abetting under Florida law, noting that carrying out ordinary business transactions may give rise to liability. *Id.* at 1098. Relying on *Chang*, Comerica argues that "mere inaction"—by which it apparently means its acceptance of investor money and carrying out instructions to commingle the funds or pay them to Shapiro—cannot constitute substantial assistance unless it owed a fiduciary duty. Opp'n at 8. But Comerica acted affirmatively in other ways to further this fraud, including by ████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████. *E.g.*, Girard Decl., Ex. 6 (COM0229119); Exs. 8, G (WGC IM_0720311; ████████ Dep. at 80-83). Comerica also routinely processed transactions involving attorney trust accounts, including several transfers of tens of

7

millions of dollars, despite the suspicious activity. Goldberg Decl., Ex. B (Kapila Decl., ¶ 78); Girard Decl., Ex. 4 (COM0233012 at -23-25); *id*., Ex. 11 (COM0234042 at -53-54). Comerica's activities exceeded "mere inaction." *Chang*, 845 F.3d at 1098.

Comerica also claims that while California applies a "substantial factor" standard of causation, Michigan requires a plaintiff to establish that the injury was the "direct and reasonably foreseeable result" of the defendant's illegal conduct. Opp'n at 9 (citation omitted). Comerica's facilitation of investor losses satisfies any causation standard, and the case Comerica cites makes clear that the "direct and reasonably foreseeable result" requirement is simply a different articulation of the same "substantial factor" requirement for aiding and abetting. *See El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 910 (W.D. Mich. 2010) (explaining that the assistance must have been "a substantial factor in causing the tort") (citation omitted); *id.* at 926 ("To establish this element, plaintiffs must show that the Bank proximately caused the violation, or in other words, that *the encouragement or assistance was a substantial factor* in causing the tort.") (emphasis added). Identically under California law, Comerica's "actions may be the proximate cause of a plaintiff's injuries if those actions were a substantial factor in bringing them about." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003) (citing *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052-53 (1991)); CACI No. 430.[4]

Any differences in the statute of limitations will likewise be immaterial if Plaintiffs demonstrate tolling from Woodbridge's and Shapiro's fraudulent concealment. Compl. ¶¶ 229-33. Comerica fails to show any difference in the discovery rule or equitable tolling doctrines of any state, and whether equitable tolling applies will not "raise investor-by-investor issues" because tolling involves "proof common to the defendant[], namely, the act of concealing defendant's wrong." *Alger v. FCA US LLC*, 334 F.R.D. 415, 430 (E.D. Cal. 2020) (quotation marks and citation omitted). Comerica again would "substitute *Mazza*'s holding in lieu of . . . careful analysis of choice-of-law rules as applied to this

---

[4] A substantial factor need not be the only cause of the harm. *Lopez v. The Hillshire Brands Co.*, 41 Cal. App. 5th 679, 688 (2019), *reh'g denied* (Nov. 21, 2019).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

particular case." *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012).

Nor has Comerica shown why, given California's substantial connections to Plaintiffs' claims, any other state would have an interest in applying its law or why its interest would be more impaired if California law applies. All Woodbridge accounts were maintained at Comerica's *Studio City* branch. Goldberg Decl., ¶¶ 5, 8. Shapiro ran the scheme from the Los Angeles area and Comerica accepted investor funds in California. Comerica's attempt to characterize its relevant California contacts as a mere "handful of interactions in a local Comerica branch" is wishful thinking. Opp'n at 6. Comerica employees opened Woodbridge's accounts at the local branch. *See* Suppl. Girard Decl., Ex. M (Deposition of ███████████████ at 53-54) (admitting "the initial vetting of the client would be at the banking center level."). Woodbridge then leveraged Shapiro's personal relationships with the branch manager and assistant branch manager to serve his purposes. Suppl. Girard Decl., Ex. N (██████ Dep. at 35-37, 43, 53-54). Comerica's choice-of-law argument further ignores evidence that Plaintiffs sent wires to Comerica with an address listed in California and received Woodbridge "interest" checks drawn on "Comerica Bank-California." Beynon Decl., Ex. A; Hull Decl., Exs. D & E. California is the center of gravity of both the fraud and its abetting, and there are more class members in California than any other jurisdiction. Goldberg Decl., Ex. E. Thus, although headquartered in Texas, Comerica's place of domicile for present purposes is California, where the fraud it assisted occurred. *See* Draft Restatement (Third) of Conflict of Laws § 2.08(1) (defendant's place of domicile "for conflict-of-laws purposes depends on the center of its activities relevant to the particular conflict-of-laws matter to be resolved"). Domicile is a critical factor in choosing the law that applies. *See* Restatement (Second) of Conflict of Laws §§ 188(2)(e), 11 cmt. c. As to these Woodbridge-based claims, therefore, the case-specific domicile and conduct factors strongly favor application of California law.

Comerica argues that ordinarily, the place of the wrong has the predominant interest for claims "based on deception." Opp'n at 5. While this argument concedes that California law governs the claims of the California investors, courts need not defer to the place of

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

injury for choice of law, particularly under the modern approach that centers on where the injurious conduct occurred. *See* Symeon Symeonides, *The Third Conflicts Restatement's First Draft on Tort Conflicts*, 92 Tulane L. Rev. 1, 17, 41 (2017). Here, Plaintiffs' claims for secondary liability focus on Comerica's relationship with the primary tortfeasor—a common issue. Applying California law is reasonable where the underlying fraud originated and was materially aided by Comerica's employees in the L.A. area. *See, e.g.*, *CadleRock Joint Venture, L.P. v. Royal Indem. Co.*, 2012 WL 511570, at *4-5 (N.D. Ohio Feb. 15, 2012) (applying aiding-and-abetting law of the state where the primary acts giving rise to the claim against the secondary tortfeasor occurred). Comerica points out that some of its analysts were in Michigan when they failed to act and that it has a Texas headquarters (Opp'n at 6), but those factors do not overcome the significant California nexus to this litigation. *See* Draft Restatement (Third) of Conflict of Law § 2.08(1) cmt. g ("Indeed, a corporation's activities may amount to it having more than one principal place of business, depending on the issue to be decided.").

Accordingly, the Court should apply California law in this case.

### 2.     Reliance and Causation Present Common Issues.

#### a.     Reliance Can Be Presumed Under the Circumstances.

In a "common law fraud claim, reliance may be presumed if the defendant's misrepresentations or omissions were material." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) (citation omitted). Plaintiffs will establish materiality because, regardless of their level of sophistication, no investor would have invested had they been known what Comerica knew about Woodbridge. Comerica's own Vice President of Special AML Investigations admitted that before investing in Woodbridge, *he* would have wanted to know of the existence of the Texas cease-and-desist order—alleging Woodbridge and Shapiro "intentionally fail[ed] to disclose . . . material facts" (Girard Decl., Ex. 15 (COM0236558)). Suppl. Girard Decl., Ex. L (Deposition of ███████ at 119-121).

Woodbridge's promotional material failed to disclose that the promised high returns

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

would be paid from money provided by other investors and that Woodbridge was raising money in violation of securities laws. *See Cole v. Asurion Corp.*, 267 F.R.D. 322, 329 (C.D. Cal. 2010) (explaining that the plaintiff's fraud claims were primarily omissions-based because "to the extent Plaintiff alleges misleading affirmative statements by Defendants," they were misleading and incomplete because of information Defendants failed to disclose). The misrepresentations and failure to disclose the truth about Woodbridge's operations were material. *See, e.g.*, *SEC v. Riel*, 282 F. Supp. 3d 499, 520 (N.D.N.Y. 2017) (reasonable minds could not differ on materiality because "[n]o reasonable investor would have invested with REinvest had he or she known that REinvest did not invest in real estate or any other business, that Defendant Riel and REinvest did not intend to invest most of the funds for a return, or that Defendant Riel would use most of the investment funds for personal expenses."). Reliance is, therefore, presumed, and it presents no individual issue. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997) ("[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material.").

Woodbridge's failure to disclose the actual nature of the investment was no different for any class member. Similarly, in *In re Heritage Bond Litigation*, the court credited the plaintiffs' evidence showing "a common nucleus of operative facts pertaining to the Heritage Entities' alleged Ponzi scheme": "This Court agrees with Plaintiffs in that the existence and nature of the material omissions/false and misleading statements in the Official Statements and the question of whether these bonds could have been marketed at all if the truth was known present nearly identical issues." 2004 WL 1638201, at *4 (C.D. Cal. July 12, 2004); *see also Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 327 (S.D. Fla. 1996) (certifying class and explaining "[t]his unified scheme is alleged to have been made possible primarily because of the material omissions regarding [the Ponzi perpetrators'] shady and checkered financial backgrounds.").

Comerica's attempt to identify individualized issues falls short when the same core misstatements and omissions were communicated to all class members—*e.g.*, that

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

Woodbridge would deliver "a high rate of return" on their investments (from interest payments on real-estate loans) "whereas the truth was that their return, if any, would come from the contributions of others." *Jenson*, 256 F. App'x at 926; *see Gonzales*, 2007 WL 9711433, at *9 (rejecting argument that "Plaintiffs did not receive a common set of misrepresentations and explaining that "[a]ll Plaintiffs have alleged that they invested in reliance on the basic representation that the Midland Entities were a legitimate investment, and not a Ponzi scheme."); *Getty v. Harmon*, 1998 WL 919368, at *2 (W.D. Wash. Oct. 23, 1998) (certifying class where the plaintiffs "contend[ed] that there were some uniform written representations, and that the oral misrepresentations were substantially identical in all material respects" and "that 'superimposed over these uniform written and oral misrepresentations is a single constant omission': the putative class members were not informed they were investing in a Ponzi scheme. This material omission creates a presumption of reliance.").

Choosing to ignore these aiding-and-abetting cases, Comerica instead cites *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004), and *Mazza*. But *Poulos* addressed the issue of reliance specifically as pertaining to RICO. *See McArdle v. AT&T Mobility LLC*, 2018 WL 6803743, at *12 (N.D. Cal. Aug. 13, 2018) ("*Poulos* does not control. That case involved the causation requirement for a putative class alleging civil violations of [RICO]; the Ninth Circuit was careful to note that its holding was both narrow and case-specific."). In *Mazza*, reliance could not be presumed because the evidence in the record suggested that most class members were not exposed to the defendant's advertising campaign. 666 F.3d at 595-96. By comparison, all class members in this case were exposed to the misleading statements and omissions regarding Woodbridge before they invested.

Woodbridge had a duty to disclose the material facts because it made partial representations while suppressing material facts, possessed exclusive knowledge of the fraud, and actively concealed it. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (numbers omitted). All of these circumstances exist; Comerica does not deny that

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

Woodbridge defrauded its investors. *See, e.g.*, *Stokes v. Henson*, 217 Cal. App. 3d 187, 192 (1990) (managing partner of venture held liable because he "breached his duty as a fiduciary by failing to make the fullest disclosure of all material facts concerning the transactions that might have affected Plaintiffs' investment decisions.").[5]

Comerica contends Plaintiffs made their investments based on different materials and information (Opp'n at 11-12), but Woodbridge made the same deceptive statements while concealing key facts about the business. Woodbridge's written materials, for example, consistently stated that its First Position Commercial Mortgage (FPCM) investment were secured by commercial real estate, that Woodbridge would pay monthly interest payments of 5-7%, and that it would only lend up to approximately 60% of the value of the real estate for a maximum loan term of only a few years. Each Plaintiff *understood* their money would be invested in real estate and that the interest rate would be between 5 and 6.5 percent paid monthly for one year. Woodbridge also consistently (falsely) claimed that the "properties that secure the mortgages are worth considerably more than the loans themselves at closing." Girard Decl., Exs. 1, 2 (WGC IM_0368701; WBPLAINTIFF_GORDON_000001 at -10). Each Plaintiff understood and relied on the claims in Woodbridge's promotional material, regardless of how the information about the Woodbridge opportunity was delivered or who delivered it. *See* Suppl. Girard Decl., Exs. O, P, Q, R, S, T, U, V (Shirley Dep. at 69:3-70:1, 73:16-74:8; Hull Dep. at 83:16-84:11, 89:4-90:3; Beynon Dep. at 232:17-25, 233:19-234:2, 250:10-25, 251:3-11; M. Gordon Dep. at 114:7-14; A. Gordon Dep. at 64:6-14; Baker Dep. at 69:3-20, 76:9-77:13, 81:6-8, 95:4-21; N. Landman Dep. at 29:4-17, L. Landman Dep. at 64:2-21). Each Plaintiff was told the same false facts about the Woodbridge investment prior to investing, and purchased units or notes under the mistaken belief that Woodbridge was a legitimate enterprise. Baker Decl., ¶ 2, Beynon Decl., ¶ 2, Gordon Decl., ¶ 2, Hull Decl., ¶ 2, Landman Decl., ¶ 2; Shirley Decl., ¶ 2.

---

[5] *Pierce-Nunes v. Toshiba Am. Info. Sys.*, Inc., 2016 WL 5920345 (C.D. Cal. June 23, 2016), is distinguishable based on Toshiba's presentation there of contrary evidence showing that "90%" of its televisions were correctly labeled as "LCD TVs" or had other accurate disclosures. *Id.* at *7-8. No similar evidence has been presented here.

13

Comerica argues there was no standardized Woodbridge sales script, but such a script is not required to establish the degree of uniformity needed to give rise to the reliance presumption. *See Gonzales*, 2007 WL 9711433, at *9 ("The Ninth Circuit stated that a 'script' was not required") (citing *First Alliance*, 471 F.3d at 990). Nor does the involvement of third-party sales agents change the predominance of questions related to the investment fraud and its abetting. *See Takiguchi*, 2016 WL 1091090, at *7-8 & n.2 (use of sales agents did not present individual issues of reliance where the misrepresentations "made to all investors" were "substantially similar, if not identical" and the defendant was "at a minimum . . . involved in written materials distributed to all investors"). There is no evidence that any third party Plaintiffs consulted knew of the Ponzi scheme (*cf*. Opp'n at 13), and a misrepresentation or omission may be communicated indirectly through a third party. *See Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1237 (N.D. Cal. 2014) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1096 (1993)).

Comerica's claim of "dramatic differences" (Opp'n at 13) in investor decisions is unpersuasive. Comerica has not shown that any Plaintiff was insufficiently diligent; and even negligent conduct by a plaintiff does not make reliance unjustifiable in a case of intentional fraud. *See Onions Etc., Inc. v. Z & S Fresh, Inc.*, 603 F. App'x 567, 570 (9th Cir. 2015); *Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941) ("Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional"). Comerica nonetheless faults Plaintiffs for not personally uncovering the Woodbridge fraud (Opp'n at 13-14), which is contrary to law, not to mention ironic considering the information known (and suppressed) by Comerica. According to *OCM Opportunities Principal Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007), cited by Comerica, a plaintiff's reliance is justified unless "his conduct is manifestly unreasonable in the light of his own intelligence or information"—i.e., it would be "preposterous" or "irrational" to believe the representation, which is not true of these Plaintiffs. *See also LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp.

14

3d 804, 829 (N.D. Cal. 2019).

### b.  Causation Does Not Present Individualized Issues.

Relying on an economist's "hypothetical examples," Comerica claims the class cannot certified unless Plaintiffs show Comerica had actual knowledge of Woodbridge's fraud and breaches of fiduciary duty before each and every class member invested. Opp'n at 18-19. Comerica argues its knowledge evolved over the class period and cannot be determined on a classwide basis. This argument misconstrues Plaintiffs' allegations and has no basis in law. A reasonable jury could find, based on common proof, that Comerica had actual knowledge of the fraud at all relevant times. *See* Mot. at 5. If the jury so finds, Comerica will be liable to the entire class. The jury could also find Comerica liable only to investors after a certain date or find in Comerica's favor across the board. In all events, the question of when Comerica gained knowledge remains common and only the scope of liability could change. *See, e.g.*, *Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474, at *8 (C.D. Cal. Apr. 5, 2016); *In re MacBook Keyboard Litig.*, 2021 WL 1250378, at *13 (N.D. Cal. Apr. 5, 2021) (defendant's "argument that its knowledge changed as the design changed may be pertinent to the merits of the claim, but does not indicate that individual questions will predominate."); *Daniel v. Ford Motor Co.*, 2016 WL 8077932, at *7 (E.D. Cal. Sept. 23, 2016) ("The court can determine what defendant knew . . . , when it knew what, and at what point that knowledge was no longer exclusive once for all class members."); *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *20 (N.D. Cal. Oct. 27, 2016). Determinations of the date of each class member's investment do not create any burdensome individualized issues, as those dates are found in the Woodbridge records held by the Liquidating Trustee. *See* Suppl. Girard Decl., Ex. X (Declaration of Thomas Jeremiassen ("Jeremiassen Decl.")).

Comerica argues that evidence of its actual knowledge "hinges on a number of alleged 'red flags' that arose at different times during the class period." Opp'n at 19. But Plaintiffs will offer evidence of Comerica's actual knowledge of Shapiro's fraud and fiduciary breaches from the Ponzi's inception. Discovery confirmed that at least a year

15

before the Woodbridge Ponzi scheme began in 2012, Comerica obtained a report on Shapiro noting his involvement in "Dunewood," a 1990s real-estate investment scheme (*see* Suppl. Girard Decl., Ex. 30 (COM0235996)), where he admitted to stealing investor money for personal use. The report further disclosed ***30*** tax liens and judgments against Shapiro, including 24 unresolved liens and judgments totaling several million dollars. *Id.* at -5999-6005. Despite this knowledge, Comerica fostered an unusually close and accommodating business relationship with Shapiro. As approximately $1.6 billion flowed through the Woodbridge accounts in tens of thousands of circular transactions, Comerica treated Shapiro as a "High End Client with a large relationship" (Girard Decl., Ex. 6 (COM0228118 at -19), despite *the express findings of state securities officials that Woodbridge was defrauding investors*. *E.g.*, Girard Decl., Ex. 6, 15 (COM0229119; COM0236558)). Comerica continued to carry out Shapiro's banking activities even after Comerica's compliance staff and Studio City branch managers were confronted with suspicious transfers and communicated with Shapiro about the need to cover payments to investors. *Id.*, Ex. G (██████ Dep. 149-151); Ex. 8 (WGC IM_0720311). Its employees intervened to ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. *Id.*, Ex. 6 (COM0229119); Exs. 8, G (WGC IM_0720311; ██████ Dep. at 80-83). Even after ████████████████████████████ and ████████████████████ ████████████████████, Comerica ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████. Suppl. Girard Decl., Exs. 31, 32 (COM0025835 at -25844; COM0228842). Based on this and other common evidence, the jury can "determine what defendant knew" and "when it knew what" on a class-wide basis. *Daniel*, 2016 WL 8077932, at *7; *see Lenovo*, 2016 WL 6277245, at *20 ("Even if the evidence requires an adjustment to the class definitions in the future, the court is satisfied that the question of Lenovo's knowledge is a common one.").

Comerica points to *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101

16

(C.D. Cal. 2003)—a case the Court relied on when it denied Comerica's motion to dismiss—for the proposition that "Plaintiffs must establish that the substantial assistance that Comerica provided after gaining actual knowledge caused *each and every* putative class member's injury." Opp'n at 20 (emphasis in original; quoting *Nielson*, 290 F. Supp. 2d at 1135). *Neilson* says nothing of the kind. That case arose in the context of a motion to dismiss and sets forth no requirement that actual knowledge and causation be proven on a class member by class member basis. Plaintiffs will prove through common evidence Comerica's knowledge and causation as to every class member.

In assessing predominance, courts consider a fraudulent scheme in its entirety. *See First Alliance*, 471 F.3d at 990. In *First Alliance*, the Ninth Circuit upheld a jury verdict in a class action alleging that Lehman Brothers aided and abetted a mortgage lender's fraudulent scheme, where the jury found that "Lehman had knowledge of [the lender's] alleged fraud and had a role in furthering the fraud during the period between 1998 and 2005." 471 F.3d at 994. The Ninth Circuit did *not* analyze actual knowledge and causation with respect to each class member. Instead, it concluded that Lehman's substantial assistance to the mortgage lender's business was indistinguishable "from providing substantial assistance to fraud." *Id.* at 995 (emphasis omitted). So too here, the central question on causation is whether Comerica's conduct is a legal cause of the investors' losses, not whether Comerica induced class members to invest in the first instance.

Further, investors' losses were ongoing—individual investors did not stop losing money after they transferred their funds to Woodbridge. Therefore, even if an investor bought into the Woodbridge scheme *after* Comerica knew of the fraud, his or her losses continued throughout the duration of the scheme, as funds were indiscriminately commingled and diverted to Shapiro and earlier investors. Had Comerica declined Shapiro's business or insisted he disclose the concealed facts known to the bank, all investors' losses could have been mitigated or avoided, and their investment funds not diverted, regardless of when they invested. *See, e.g.*, *ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.*, 957 F. Supp. 1308, 1325 (S.D.N.Y. 1997) (loss causation could be established

17

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

by defendants' concealment of information which, if disclosed to plaintiffs, would have enabled them to avoid their loss by causing them to redeem or rescind their investments).

If Comerica is found liable for aiding and abetting, it will be jointly liable for the underlying torts. *See Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1287 (2015); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 127 (1985). Ultimately, the factfinder will assess whether the aider-and-abettor "either knew of [the] scheme to defraud and took steps substantially to advance the scheme or it didn't. Either way, its knowledge and assistance (if any) predominates as a common issue." *Jenson*, 256 F. App'x at 926. Otherwise, as the Ninth Circuit noted, "[t]he Ponzi scheme would have to be proved or controverted over and over were the case not to proceed as a class action." *Id.*; *see, e.g.*, *Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *15 (D. Or. Mar. 19, 2019) (finding aiding and abetting amenable to common proof based on need to show defendant's "participation and material aid"), *report & rec. adopted*, 2019 WL 2288432 (D. Or. May 29, 2019); *Coldwell Banker*, 281 F.R.D. at 422 ("questions of assistance and knowledge focus on [the defendant], not the alleged victims."); *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 372 (D. Ariz. 2012) ("Plaintiffs' evidence of defendants' knowledge of and participation in the scheme is not unique to any particular class member"). The bottom line is that "[a]ll Plaintiffs have alleged that they invested in reliance on the basic representation that the [enterprise was] a legitimate investment, and not a Ponzi scheme." *Gonzales*, 2007 WL 9711433, at *9; *see Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 586 (C.D. Cal. 2012) (dismissing challenge to class certification based on "the time of purchase" being "important to an assessment of the merits"); *Falco*, 2016 WL 1327474, at *8 (rejecting defendant's argument that its knowledge had to "be determined on a per-transaction basis.").

### 3. Comerica's Statute of Limitations Defense Does Not Defeat Certification.

Comerica also claims "an individual's knowledge and reasonable diligence" will affect the availability of tolling of the statute of limitations (Opp'n at 14), but "the fact that affirmative defenses may be available against certain prospective class members does not

18

preclude class certification." *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 518 (C.D. Cal. 2017) (citation omitted); *see Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ("[A]ffirmative defenses . . . can yield a common answer that is apt to drive the resolution of the litigation.") (citation omitted); *see, e.g.*, *Coldwell Banker*, 281 F.R.D. at 435-36. Moreover, there is no evidence in the record that any Plaintiff or class member reasonably *could* have known what Comerica knew about Woodbridge. At class certification, courts "do not consider" defenses "for which [the defendant] has presented no evidence." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018).

### 4.    The Claim for Aiding and Abetting Breach of Fiduciary Duty Will Not Require Individualized Inquiries.

Comerica argues incorrectly that individualized inquiries will arise with respect to (1) the existence of a fiduciary duty, (2) whether the fiduciary duty owed to investors was in fact breached, and (3) whether Shapiro owed his investors a duty to disclose. Opp'n at 14-18. The investors are similarly situated as to Shapiro and Woodbridge, and no individualized questions could arise as to whether they were owed a fiduciary duty.

Under California law, "the essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996) (alteration omitted) (quoting *Beery v. State Bar*, 43 Cal. 3d 802, 813 (1987)); *see City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 484 (1998) (if a person "voluntarily accepts or assumes that confidence, he or she may not act so as to take advantage of the others' interest without their knowledge or consent.").

Shapiro held a position of influence over each Woodbridge investor's interests. Having obtained and controlled their investments, he owed the investors a duty to safeguard rather than misappropriate and commingle the funds they entrusted. Such misuse of investor funds constitutes a breach of fiduciary duty. *See, e.g., Evans v. ZB,*

*N.A.*, 779 F. App'x 443, 445-47 (9th Cir. 2019) (misappropriation); *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *7 (N.D. Cal. Apr. 7, 2020) (commingling investor money, misusing and misappropriating investor funds, atypical transactions, and running a "shell" operation); *Giron v. Hong Kong & Shanghai Bank Co.*, 2016 WL 6662726, at *4 (C.D. Cal. June 29, 2016) (transferring investors' funds abroad to avoid government oversight); *Zhang v. Tse*, 2009 WL 702930, at *6 (N.D. Cal. Jan. 14, 2009); *Gonzales*, 2007 WL 9711433, at *1, *10 (misusing investors' funds).

The case Comerica cites in arguing that the breach of fiduciary claim raises individual issues, *Stevens v. Woodstock, Inc.*, 372 F. Supp. 654 (N.D. Ill. 1974), did not involve fiduciary breaches. And *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006), is inapposite. The defendant life insurance company (Allianz) conspired with a network of field marketing organizations to induce class members to buy deferred annuities issued by Allianz. *Id.* at 484. The plaintiffs alleged Allianz breached its fiduciary duties to class members because the insurer and its agents "undert[ook] to act as a [sic] financial planners for class members." *Id.* at 486. A determination whether a fiduciary duty arose in that context, *Negrete* held, would defeat predominance because it would "necessarily require an examination of the in-person oral representations made to each class member." *Id.* at 496. In this case, Plaintiffs do not allege that Shapiro's fiduciary obligations arose because Woodbridge's network of sales agents made certain oral representations. Rather, Shapiro's superior position and control, and the trust and confidence Woodbridge investors placed in him, triggered a duty to act in accordance with his obligations in that role. *See, e.g.*, *Lorenz v. E. W. Bancorp, Inc.*, 2016 WL 199392, at *10 (C.D. Cal. Jan. 14, 2016) (recognizing a company owed a fiduciary duty to use investor funds "as promised"); Consol. Compl. [Doc. # 150, 151], ¶ 252.

Comerica again overreaches when it claims Plaintiffs must show the misuse of each class member's money. Opp'n at 18. That level of exactitude is neither required nor realistic when commingling is occurring. Thus, courts have certified other investor classes without requiring any such showing. *See, e.g., Jenson*, 256 F. App'x at 927; *Gonzales*,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

2007 WL 9711433, at *7-10; *Cabot*, 2018 WL 2006762, at *6; *Bruhl*, 257 F.R.D. at 684. So too have courts certified classes in fraud-by-omission cases without seeking to evaluate whether a duty to disclose existed on an investor-by-investor basis, and doing so is unnecessary. *See First Alliance*, 477 F.3d at 991-92; *Cabot*, 2018 WL 2006762, at *6; *Cole*, 267 F.R.D. at 329; *Bruhl*, 257 F.R.D. at 684.

### 5.    Individual Damage Calculations Do Not Defeat Predominance.

Comerica does not dispute that if Plaintiffs establish the bank's liability, individual class member damages can be determined based on investor records in the Trust's possession. Goldberg Decl., ¶ 30. In contrast to the beliefs of Comerica's expert, a plaintiff "does not have to prove the exact amount of damages that will provide reasonable compensation for the harm." CACI 3900. "Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Meister v. Mensinger*, 230 Cal. App. 4th 381, 396-97 (2014) (emphasis in original) (internal citation omitted).

Professor James also contends "[o]ne would have to review individual investor records and transaction histories to verify an individual's investment total." James Decl., ¶ 54. But these records are readily available (*see* Girard Decl., Ex. X (Jeremiassen Decl.)), and determining individual damages in a claims process is routine and no basis for denying class certification. *See In re Arizona Theranos, Inc., Litig.*, 2020 WL 5435299, at *10 (D. Ariz. Mar. 6, 2020). "Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017).

### 6.    Bankruptcy Court Is Not a Suitable Alternative Forum for Resolving the Investors' Claims Against Comerica, and the Amount of Their Losses Does Not Affect the Superiority of Class Treatment.

Comerica ignores the decisions Plaintiffs cited in their opening brief finding a class action superior when many class members would find it difficult to retain counsel and

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

pursue their own lawsuit or where a defendant demonstrated a willingness to vigorously defend related actions. *See Bentley v. United of Omaha Life Ins. Co.*, 2018 WL 3357458, at *11 (C.D. Cal. May 1, 2018); *Novoa v. GEO Grp., Inc.*, 2019 WL 7195331, at *19 (C.D. Cal. Nov. 26, 2019). Comerica does not dispute that the Class contains many seniors who would find it inconvenient or impossible to retain separate counsel and file their own cases. Instead, Comerica argues that class members could have pursued their own claims against it in the Woodbridge bankruptcy and that the class members have a strong interest in controlling their claims given the size of their investments. Opp'n at 23-24. Neither argument has any merit.

First, Comerica cannot be sued for damages in the Woodbridge bankruptcy. Comerica is not a debtor, its assets are not part of the estate, and the Woodbridge bankruptcy has now run its course. *See In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 615 (B.A.P. 9th Cir. 1990) (bankruptcy court lacks jurisdiction post-plan confirmation to adjudicate and release claims held by creditors against non-debtor guarantors). Woodbridge—not Comerica—filed for bankruptcy and it is undisputed that the distributions by the Liquidating Trust will not make investors whole. Only a class action can resolve the investor claims against Comerica for its role in Woodbridge. *See Gonzales*, 2007 WL 9711433, at *11 (finding bankruptcy claims inferior to a class action). Comerica's case holds only that when a defendant itself is in bankruptcy, a class action may be less necessary insofar as claimants can file an individual proof of claim against the defendant in the bankruptcy case and have the claim adjudicated in the bankruptcy court. *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 3-4 (S.D.N.Y. 2005).

Second, Comerica's argument that the potentially large size of individual claims defeats superiority is incorrect. In fact, "even in large claim situations, class actions will be a superior form of litigation if aggregation serves efficiency goals and/or pretermits inconsistent outcomes." 2 Newberg on Class Actions § 4:67 (5th ed. 2014); *see Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 612 (S.D. Cal. 2010) (finding it "certainly true that each class member's claim may be large enough to pursue individually, but that

doesn't change the Court's view; there are still judicial resources to be conserved and efficiencies to be gained in a single adjudication"). As explained by Judge Carter, "the fact that the claims are high value simply means that the value of the claims does not weigh in favor of certifying the class; it does not necessarily mean that the value of the claims weighs against certifying the class[.]" *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *16 (C.D. Cal. May 27, 2015). A class action can be superior where the claims are quite valuable. *See, e.g.*, *Ladore v. Ecolab, Inc.*, 2012 WL 12861141, at *14 (C.D. Cal. Apr. 11, 2012); *In re Wash. Mut. Mortg.-Backed Sec. Litig.*, 276 F.R.D. 658, 668 (W.D. Wash. 2011) ("The Court is also not convinced that superiority is lacking because some of the absent members may have large claims or are sophisticated investors.").

**B.     The Requirements of Rule 23(a) Are Met.[6]**

**1.     Plaintiffs' Claims Are Typical of the Class and They Will Adequately Protect the Class's Interests.**

Plaintiffs' claims are typical of all Class members because all the claims arise from the same investments in Woodbridge and Comerica's common conduct. *See* Opp'n at 21. Differences in investors' knowledge or sophistication do not defeat typicality or adequacy. *See Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at *12 (M.D. Tenn. Sept. 22, 2014) (citing cases). Nor are differences in the timing of investments suggestive of an intra-class conflict. *See In re Zillow Grp., Inc. Sec. Litig.*, 2020 WL 6318692, at *5 (W.D. Wash. Oct. 28, 2020) ("[T]he substantial majority of courts that have addressed the propriety of class certification based on the timing of the class representative's sale or purchases have found . . . that the timing of the transactions does not necessarily create fundamentally divergent interests with the putative class.") (citation omitted).

Professor James, after presenting his opinions on causation, speculates that "conflicts *may* exist among the approximately 8,000 members in the proposed class" based on "counterfactuals" and "hypotheticals" positing differences in the timing of

---

[6] Comerica does not dispute that Plaintiffs' evidence satisfies the numerosity requirement.

23

investments (see discussion above at page 15). James Decl., ¶¶ 67-76. Nevertheless, "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation" can render a plaintiff inadequate. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting Newberg on Class Actions § 3.58 (5th ed. 2011)). Speculative and "potential future conflicts are insufficient to deny class certification." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at \*5 (C.D. Cal. June 15, 2017).

All class members share an identical interest "in maximizing the recovery" against Comerica. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 2015 WL 4610874, at \*6 (S.D.N.Y. July 20, 2015). Comerica argues without any supporting law that Mr. Goldberg is not a class member (Opp'n at 22), but he plainly is: As assignee, he has stepped into the shoes of all investors who assigned their claims to the Trust. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) (assignee has standing to maintain suit based on assignor's injury). Mr. Goldberg is therefore an "assimilated class member[] by virtue of the assignments" from investors and "possess[es] the same interest and thus may continue to assert a claim for the same injury shared by all members of the class." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101-02 (2d Cir. 2007). In short, Mr. Goldberg as assignee has the same rights and interests as all class members. *See In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 481 (N.D. Cal. 2020) (named plaintiffs acting as assignees were typical of the class because "an assignee stands in the shoes of his assignor") (citation omitted); *Meijer, Inc. v. Abbott Lab'ys*, 2008 WL 4065839, at \*4 (N.D. Cal. Aug. 27, 2008) (similar).[7]

---

[7] Cases questioning the propriety of a bankruptcy trustee serving as class representative due to conflicting interests between the estate and the class are irrelevant (Opp'n at 23) because the Liquidating Trustee is not a putative class representative in this case. Additionally, the court in *Dechert v. Cadle Co.*, 333 F.3d 801, 803-04 (7th Cir. 2003), declined to "lay down a flat rule" that a bankruptcy trustee can never represent a class. *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 461 (N.D. Cal. 2012).

24

### 2. Class Membership Can Be Readily Determined Based on the Liquidation Trust's Records.

Comerica's claim that the Class members are not reasonably identifiable (Opp'n at 24) is wrong on both the law and the facts. There is no requirement to show that class members can be feasibly identified. *See Sevilla v. Aaron's, Inc.*, 2019 WL 2879874, at *2 (C.D. Cal. Mar. 25, 2019) (citing *Briseno*, 844 F.3d at 1124 n.4).[8] The Liquidation Trustee attested that investor records in his possession will suffice to establish class membership and calculate damage awards. Goldberg Decl., ¶ 30. He testified in accord that he can readily locate the records showing the details of individual class members' transactions related to Woodbridge and the bankruptcy. *E.g.*, Suppl. Girard Decl. Ex. W (Goldberg Dep. at 173-75, 179 ("I can get a letter out to every investor tonight. We have up-to-date contact information for every single investor in the case. . . . It's very organized."). That Mr. Goldberg could not recall the exact number of investors in response to a question from Comerica's counsel on the day of his deposition scarcely means class membership cannot be determined from the Trust's records—it can. *See* Girard Decl., Ex. X (Jeremiassen Decl., ¶¶ 4-10).

Nor is there any merit to Comerica's assertion of a conflict from the Trustee's filing of preference actions against financial advisors. Opp'n at 25. Comerica's brief omits citations to the transcript pages recording the Trustee's testimony that he pursued those actions to seek repayment of commissions for selling unregistered securities, *not* for the advisors' involvement in the scheme. Suppl. Girard Decl. Ex. W (Goldberg Dep. at 113-114). There is no indication that any financial advisor knew or should have known of the Ponzi scheme, and in any event, those individuals can be excluded from the Class.

### III. <u>CONCLUSION</u>

For all the foregoing reasons and those set forth in the Motion, the Court should certify the Class and its aiding-and-abetting claims for trial.

---

[8] Rhetoric in Comerica's brief that a class action will be "entirely unmanageable" (Opp'n at 1) is unfounded and unsupported, and disregards that manageability concerns are insufficient in themselves to defeat class certification. *Briseno*, 844 F.3d at 1128.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

1    Respectfully submitted,

2

3   Dated: June 11, 2021                By: /s/ *Daniel C. Girard*

4                                       Daniel C. Girard (State Bar No. 114826)
                                        Jordan Elias (State Bar No. 228731)
5                                       Trevor T. Tan (State Bar No. 281045)
                                        Makenna Cox (State Bar No. 326068)
6
7                                       **GIRARD SHARP LLP**
                                        601 California Street, Suite 1400
8                                       San Francisco, California 94108
9                                       Telephone: (415) 981-4800
                                        Facsimile: (415) 981-4846
10                                      *dgirard@girardsharp.com*
11                                      *jelias@girardsharp.com*
                                        *ttan@girardsharp.com*
12                                      *mcox@girardsharp.com*
13                                      *Interim Lead Class Counsel*
14
15                                      **BERGER MONTAGUE, P.C.**
                                        Michael C. Dell'Angelo
16                                      Barbara A. Podell
17                                      1818 Market Street, Suite 3600
                                        Philadelphia, PA 19103
18                                      Telephone: 215-875-3000
19                                      Email: mdellangelo@bm.net
                                        Email: bpodell@bm.net
20
21                                      **COHEN MILSTEIN SELLERS &**
22                                      **TOLL PLLC**
                                        Steven J. Toll
23                                      1100 New York Avenue N.W., Suite 500
24                                      Washington, DC 20005
                                        Telephone: 202.408.4600
25                                      Email: stoll@cohenmilstein.com
26
27                                      **KOZYAK TROPIN & THROCKMORTON**
                                        Harley S. Tropin
28                                      2525 Ponce de Leon Blvd., 9th Floor

26

Miami, FL 33134
Telephone: 305.372.1800
Email: hst@kttlaw.com

**LEVINE KELLOGG LEHMAN SCHNEIDER & GROSSMAN LLP**
Jeffrey C. Schneider
Lawrence A. Kellogg
Jason Kellogg
201 South Biscayne Boulevard
22nd Floor, Miami Center
Miami, Florida 33131
Telephone: 305.403.8788
Email: jcs@lklsg.com
Email: lak@lklsg.com
Email: jk@lklsg.com

**SONN LAW GROUP P.A.**
Jeffrey R. Sonn
One Turnberry Place
19495 Biscayne Blvd., Suite 607
Aventura, FL 33180
Telephone: 305.912.3000
Email: jsonn@sonnlaw.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Betsy C. Manifold
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619.239.4599
Email: manifold@whafh.com

*Plaintiffs' Executive Committee*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)

1

### <u>CERTIFICATE OF SERVICE</u>

2

   I, Daniel C. Girard, hereby certify that on June 11, 2021, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system, which will serve

4

notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice

5

List. Counsel of record are required by the Court to be registered e-filers, and as such are

6

automatically e-served with a copy of the document upon confirmation of e-filing.

7

   I also certify that I caused the under-seal document to be emailed to counsel for

8

Defendant.

9

10

By: /s/ *Daniel C. Girard*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 2:18-CV-00103-DMG (MRWx)